# No. 2024-1515

# United States Court of Appeals for the Federal Circuit

TELEFONAKTIEBOLAGET LM ERICSSON,
*Plaintiff/Counterclaim Defendant-Appellee,*

ERICSSON AB, ERICSSON, INC.,
*Counterclaim Defendants-Appellees,*

v.

LENOVO (UNITED STATES) INC., MOTOROLA MOBILITY INC.,
*Defendants/Counter-Claimants-Appellants,*

LENOVO (SHANGHAI) ELECTRONICS TECHNOLOGY CO. LTD., LENOVO BEIJING, LTD., LENOVO GROUP LIMITED, MOTOROLA (WUHAN) MOBILITY TECHNOLOGIES COMMUNICATIONS, CO., LTD.,
*Defendants.*

Appeal from the United States District Court for the Eastern District of North Carolina, No. 5:23-cv-00569, Judge Terrence W. Boyle

## NONCONFIDENTIAL APPELLANTS' OPENING BRIEF

Greg S. Arovas
Leslie M. Schmidt
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

John C. O'Quinn
F. Christopher Mizzo
Jason M. Wilcox
William H. Burgess
Diva Hollis
Lucas H. Funk
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, DC 20004
(202) 389-5000

March 22, 2024

# CERTIFICATE OF INTEREST

1. **Represented Entities (Fed. Cir. R. 47.4(a)(1)):**

   Lenovo (United States), Inc.;
   Motorola Mobility LLC

2. **Real Party in Interest (Fed. Cir. R. 47.4(a)(2)):** *N/A*

3. **Parent Corporations and Stockholders (Fed. Cir. R. 47.4(a)(3)):**

   Legend Holdings Corporation

4. **Legal Representatives (Fed. Cir. R. 47.4(a)(4)):**

   <u>Kirkland & Ellis LLP:</u> Greg Arovas, Edward C. Donovan, F. Christopher Mizzo

   <u>Fish & Richardson P.C.:</u> Benjamin Elacqua, Adam R. Shartzer

   <u>Womble Bond Dickinson (US) LLP:</u> Raymond M. Bennett, Jacob Steven Wharton

5. **Related Cases (Fed. Cir. R. 47.5(a)).** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)? **Yes.** A Notice of Related Case Information has been filed.

6. **Organizational Victims and Bankruptcy Cases (Fed. R. App. P. 26.1(b)-(c)):** *N/A*

# TABLE OF CONTENTS

Statement of Related Cases ....................................................... vii

Jurisdictional Statement.......................................................... x

Introduction ........................................................................ 1

Statement of the Issues............................................................ 3

Statement of the Case ............................................................. 4

    A.    Ericsson and Lenovo Pledge to License Their 5G SEPs
         on FRAND Terms........................................................ 4

    B.    Licensing and Negotiations Between Ericsson and
         Lenovo Before this Litigation ................................... 7

    C.    Ericsson Simultaneously Makes its First 5G Offer, and
         Initiates District-Court Litigation Seeking an
         Adjudication of Ericsson's Compliance with its FRAND
         Pledge. ...................................................................... 9

    D.    Lenovo Files Counterclaims in District Court
         Concerning Ericsson's FRAND Pledge, and a UK Action
         Concerning Ericsson's FRAND Pledge............................... 10

    E.    To Pressure Lenovo to Accept Ericsson's Demands
         Before Any Court Can Adjudicate Ericsson's FRAND
         Pledge, Ericsson Seeks and Obtains *Ex Parte*, Secret,
         Expedited Injunctions Against Lenovo in Other
         Countries by Asserting Infringement of 5G SEPs............... 13

    F.    Ericsson Rejects Lenovo's Attempts at Resolution
         without Injunctions, Including Lenovo's Offers of
         Interim Payments and Security. ......................................... 15

    G.    The District Court Denies Lenovo's Request for an
         Antisuit Injunction to Prevent Ericsson's Campaign of
         Foreign Injunctions from Interfering with the District
         Court's Adjudication of the Parties' FRAND Dispute. ......... 16

Summary of Argument............................................................ 19

Standard of Review ............................................................... 24

Argument ............................................................................ 24

I.   The District Court's Analysis Misapprehended the Parties' Dispute, and Conflicts with Precedent........................................... 26

     A.   In Comparing the Parties and Issues, the District Court Correctly Recognized that the First-Step Inquiry is Functional, Not Formal or Technical. ................................... 26

     B.   By Ruling that this Action Would Not Be "Dispositive" of the Other Actions, the District Court Misapprehended Ericsson's FRAND Commitment and the Dispute Here. ...... 27

          1.   A Ruling that Ericsson Has Not Complied with its FRAND Commitment Would be Dispositive of Ericsson's Injunctive Actions. ..................................... 28

          2.   A Ruling on the Balance of Ericsson's Contract Claim or Lenovo's Counterclaim Would Also be Dispositive of Ericsson's Injunctive Actions. ............... 33

II.  This Court Should Reverse, and Order Entry of Lenovo's Requested Antisuit Injunction.......................................................... 38

     A.   Multiple Factors Favor an Antisuit Injunction. ................... 39

          1.   Ericsson's Foreign Injunctions Threaten the District Court's Jurisdiction.......................................... 40

          2.   Ericsson's Foreign Injunctions Offend Domestic Policy and Other Equitable Considerations. ............... 42

          3.   Ericsson's Foreign Injunctions are Vexatious and Oppressive.................................................................. 47

     B.   The Antisuit Injunction Would Not Have an Intolerable Effect on Comity.................................................................. 49

Conclusion.............................................................................................. 54

---

**<u>Note re: confidential material</u>.**

Material redacted at p. 7 of the non-confidential version of this brief is a term of a cross-license.

Material at p. 14 (first redaction) is a number concerning sales figures.

Material at pp. 13, 14 (second redaction) concerns details of proceedings in Brazil.

Material at pp. 49 and 52 concerns a detail of negotiations between the parties.

---

***Note: All emphasis is added unless otherwise indicated.***

# TABLE OF AUTHORITIES

## Cases

*Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,*
   10 F.3d 425 (7th Cir. 1993) ............................................................ 53, 54

*Apple Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178,
   2012 WL 5416931 (W.D. Wis. Nov. 2, 2012) ................................. 36, 37
   2012 WL 5416941 (W.D. Wis. Oct. 29, 2012) ..................................... 44

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014) ........... 31, 45

*Applied Med. Distrib. Corp. v. Surgical Co,*
   587 F.3d 909 (9th Cir. 2009) ................................................................ 26

*BAE Sys. Tech. v. Rep. of Korea's Def. Acquisition Prog.*
   *Admin.*, 884 F.3d 463 (4th Cir. 2018) .............................. 17, 24, 25, 49

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) .......................... 24

*E.&J. Gallo Winery v. Andina Licores S.A.,*
   446 F.3d 984 (9th Cir. 2006) .................................................. 24, 25, 51

*Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201 (Fed. Cir. 2014) .............. 5, 6

*Ganpat v. E. Pac. Shipping PTE, Ltd.,*
   66 F.4th 578 (5th Cir. 2023) ............................................ 25, 48, 49, 51

*Goss Int'l Corp. v. Man Roland Druckmaschinen*
   *Aktiengesellschaft*, 491 F.3d 355 (8th Cir. 2007) ............................... 50

*HTC Corp. v. Telefonaktiebolaget LM Ericsson,*
   12 F.4th 476 (5th Cir. 2021) ......................................................... 32, 36

*Huawei Techs. v. Samsung Elecs. Co.*, No. 3:16-cv-02787,
   2018 WL 1784065 (N.D. Cal. Apr. 13, 2018) ........................... 16, 40-42

*Interdigital Commc'ns Inc. v. ZTE Corp.,*
   2014 WL 2206218 (D. Del. May 28, 2014) ..................................... 36, 37

*Laker Airways Ltd. v. Sabena, Belgian World Airlines,*
    731 F.2d 909 (D.C. Cir. 1984) ............................................................. 53

*Microsoft Corp. v. Motorola, Inc.,*
    795 F.3d 1024 (9th Cir. 2015) ............................................................ 43

*Microsoft Corp. v. Motorola, Inc.,*
    696 F.3d 872 (9th Cir. 2012) ............ 2, 16, 17, 24-26, 29, 30, 33, 39, 40,
                                42, 44, 46-53

*Microsoft Corp. v. Motorola, Inc.,* No. C10-1823,
    2012 WL 4827743 (W.D. Wash. Oct. 10, 2012) ................................... 35
    2013 WL 2111217 (W.D. Wash. Apr. 25, 2013) ................................. 11

*Nomadix, Inc. v. Guest-Tek Interactive Ent. Ltd.,*
    No. 20-55439, 2021 WL 4027807 (9th Cir. Sept. 3, 2021) ................. 39

*Quaak v. Klynveld Peat Marwick Goerdeler*
    *Bedrijfsrevisoren,* 361 F.3d 11 (1st Cir. 2004) .............................. 25, 41

*Realtek Semiconductor v. LSI Corp.,*
    946 F.Supp.2d 998 (N.D. Cal. 2013) ...................... 17, 30, 31, 43, 45, 46

*Sanofi-Aventis Deutschland GmbH v. Genentech, Inc.,*
    716 F.3d 586 (Fed. Cir. 2013) ........................................................ 24-26

*TCL Commc'n Tech. Holdings v. Telefonaktiebolaget LM
Ericsson,* 943 F.3d 1360 (Fed. Cir. 2019) ......................................... 5, 6

*TCL Commc'n Tech. Holdings v. Telefonaktiebolaget LM
Ericsson,* No. 8:14-cv-00341,
    2015 WL 13954417 (C.D. Cal. June 29, 2015) ................................... 16
    2016 WL 6562075 (C.D. Cal. Aug. 9, 2016) ................................. 43, 44

*The Salvore,* 36 F.2d 712 (2d Cir. 1929) ................................................ 24

*TQ Delta, LLC v. ZyXEL Commc'ns, Inc.,* No. 1:13-cv-02013,
    2018 WL 2932728 (D. Del. June 12, 2018) ................................... 32, 36

*Unwired Planet Int'l Ltd. v. Huawei Tech. (UK) Co. Ltd*
    [2020] UKSC 37 (Eng.) ...................................................................... 12

*Unwired Planet Int'l Ltd. v. Huawei Tech. Co.*,
  [2017] EWHC (Pat) 2988 (Eng.) ........................... 12

*Westar Energy, Inc. v. Lake*, 552 F.3d 1215 (10th Cir. 2009) ................ 39

*Zynga, Inc. v. Vostu USA, Inc.*, No. 11-CV-02959,
  2011 WL 3516164 (N.D. Cal. Aug. 11, 2011) ...................................... 40

## Statutes

28 U.S.C. §1292(a)(1) ................................................................... x

28 U.S.C. §1292(c)(1) ................................................................... x

28 U.S.C. §1331 ............................................................................ x

28 U.S.C. §1338(a) ....................................................................... x

28 U.S.C. §1367(c) ....................................................................... x

28 U.S.C. §2107 ............................................................................ x

## Rule

Fed. R. App. P. 4(a)(1)(A) ........................................................... x

## Other Authorities

C. Shapiro & M. Lemley, *The Role of Antitrust in Preventing
  Patent Holdup*, 168 U. PA. L. REV. 2019 (2020) ..................................... 5

FTC Amicus Br., *Apple Inc. v. Motorola, Inc.*, Fed. Cir. No.
  12-1548, 2012 WL 6655899 (filed Dec. 14, 2012) ................................ 45

J.L. Contreras et al., *Litigation of Standards-Essential
  Patents in Europe: A Comparative Analysis*,
  32 BERKELEY TECH. L.J. 1457 (2017) .................................................. 44

J.R. Bartlett & J. Contreras, *Rationalizing FRAND
  Royalties: Can Interpleader Save the Internet of Things?*,
  36 REV. LITIG. 285 (2017) ................................................................. 5

# STATEMENT OF RELATED CASES

No other appeal from the proceedings below was previously before this or any other appellate court. The following cases may directly affect or be directly affected by the Court's decision in this appeal:

- *Telefonaktiebolaget LM Ericsson v. Motorola Mobility Comercio De Productos Electronicos LTDA., et al.*, Case No. 0953148-87.2023.8.19.0001 (Judiciary of the State of Rio De Janeiro) (filed Nov. 21, 2023)

- *Telefonaktiebolaget LM Ericsson v. Motorola Mobility Comercio De Productos Electronicos LTDA., et al.*, Interlocutory Appeal no. 0101529-57.2023.8.19.0000 - 20th Civil Chamber of Court of Appeals of Rio de Janeiro (filed Dec. 10, 2023)

- *Telefonaktiebolaget LM Ericsson v. Lenovo Asia Pacific Sucursal Colombia*, Juzgado 010 Civil Del Circuito De Bogotá, Conventional Court Num. 10 (filed Nov. 24, 2023)

- *Telefonaktiebolaget LM Ericsson v. Lenovo Asia Pacific Sucursal Colombia*, Juzgado 022 Civil Del Circuito De Bogotá, Conventional Court Num. 22 (filed Nov. 24, 2023)

- *Telefonaktiebolaget LM Ericsson v. Lenovo Asia Pacific Sucursal Colombia*, Juzgado 037 Civil Del Circuito De Bogotá, Conventional Court Num. 37 (filed Nov. 24, 2023)

- *Telefonaktiebolaget LM Ericsson v. Lenovo Asia Pacific Sucursal Colombia*, Juzgado 056 Civil Del Circuito De Bogotá, Conventional Court Num. 56 (filed Nov. 24, 2023)

- *Telefonaktiebolaget LM Ericsson v. Lenovo Asia Pacific Limited with branch named Lenovo Asia Pacific Limited Sucursal Colombia*, Juzgado 008 Civil Del Circuito De Bogotá, Conventional Court Num. 08 (filed Nov. 24, 2023)

- *Telefonaktiebolaget LM Ericsson v. Lenovo Asia Pacific Limited with branch named Lenovo Asia Pacific Limited Sucursal Colombia*, Superintendencia de Industria y Comercio (filed Nov. 24, 2023)

- *Telefonaktiebolaget LM Ericsson v. Lenovo Asia Pacific Sucursal*, Juzgado 005 Civil Del Circuito De Bogotá, Conventional Court Num. 05 (filed Nov. 29, 2023)

- *Telefonaktiebolaget LM Ericsson v. Lenovo Asia Pacific Sucursal Colombia*, Juzgado 21 Civil Del Circuito De Bogotá, Conventional Court Num. 21 (filed Nov. 28, 2023)

- *Telefonaktiebolaget LM Ericsson v. Motorola Mobility Colombia S.A.S.*, Juzgado 003 Civil Del Circuito De Bogotá, Conventional Court Num. 03 (filed Nov. 28, 2023)

- *Telefonaktiebolaget LM Ericsson v. Motorola Mobility Colombia S.A.S.*, Juzgado 012 Civil Del Circuito De Bogotá, Conventional Court Num. 12 (filed Nov. 27, 2023)

- *Telefonaktiebolaget LM Ericsson v. Motorola Mobility Colombia S.A.S.*, Juzgado 026 Civil Del Circuito De Bogotá, Conventional Court Num. 26 (filed Nov. 28, 2023)

- *Telefonaktiebolaget LM Ericsson v. Motorola Mobility Colombia S.A.S.*, Juzgado 029 Civil Del Circuito De Bogotá, Conventional Court Num. 29 (filed Nov. 24, 2023)

- *Telefonaktiebolaget LM Ericsson v. Motorola Mobility Colombia S.A.S.*, Juzgado 054 Civil Del Circuito De Bogotá, Conventional Court Num. 54 (filed Nov. 24, 2023)

- *Telefonaktiebolaget LM Ericsson v. Motorola Mobility Colombia S.A.S.*, Juzgado 053 Civil Del Circuito De Bogotá, Conventional Court Num. 53 (filed Nov. 24, 2023)

- *Telefonaktiebolaget LM Ericsson v. Motorola Mobility Colombia S.A.S.*, Juzgado 040 Civil Del Circuito De Bogotá, Conventional Court Num. 40 (filed Nov. 24, 2023)

- *Telefonaktiebolaget LM Ericsson v. Motorola Mobility Colombia S.A.S.*, Superintendencia de Industria y Comercio, SIC / 23-520580, P051568 CO1, and subsequent litigation (filed Nov. 20, 2023)

- *Telefonaktiebolaget LM Ericsson v. Motorola Mobility Colombia S.A.S.*, Juzgado 017 Civil Del Circuito De Bogotá, Conventional Court Num. 17 (filed Nov. 20, 2023)

- *Telefonaktiebolaget LM Ericsson v. MPS Mayorista De Colombia S.A.*, Juzgado 45 Civil Del Circuito De Bogota Court (filed Nov. 28, 2023)

- *Telefonaktiebolaget LM Ericsson v. MPS Mayorista De Colombia S.A.*, Juzgado 20 Civil Del Circuito De Bogota Court (filed Nov. 28, 2023)

- *Telefonaktiebolaget LM Ericsson v. MPS Mayorista De Colombia S.A.*, Juzgado 49 Civil Del Circuito De Bogota Court (filed Nov. 24, 2023)

- *Telefonaktiebolaget LM Ericsson v. Colombiana De Comercio S.A. Y/O Corbeta S.A. Y/O Alkosto S.A.*, Juzgado 44 Civil Del Circuito De Bogota Court (filed Nov. 30, 2023)

- *Telefonaktiebolaget LM Ericsson v. Colombiana De Comercio S.A. Y/O Corbeta S.A. Y/O Alkosto S.A.*, Juzgado 52 Civil Del Circuito De Bogota Court (filed Nov. 24, 2023)

- *Telefonaktiebolaget LM Ericsson v. Colombiana De Comercio S.A. Y/O Corbeta S.A.*, Juzgado 4 Civil Del Circuito De Bogota Court (filed Nov. 24, 2023)

- *Telefonaktiebolaget LM Ericsson v. Colombiana De Comercio S.A. Y/O Corbeta S.A. Y/O Alkosto S.A.*, Juzgado 9 Civil Del Circuito De Bogota Court (filed Nov. 30, 2023)

- *Telefonaktiebolaget LM Ericsson v. Ingram Micro S.A.S.*, Juzgado 14 Civil Del Circuito De Bogota Court (filed Nov. 24, 2023)

- *Telefonaktiebolaget LM Ericsson v. Ingram Micro S.A.S.*, Juzgado 6 Civil Del Circuito De Bogota Court (filed Nov. 28, 2023)

- *Telefonaktiebolaget LM Ericsson v. Ingram Micro S.A.S.*, Juzgado 40 Civil Del Circuito De Bogota Court (filed Nov. 24, 2023)

- *Telefonaktiebolaget LM Ericsson v. Ingram Micro S.A.S.*, Juzgado 45 Civil Del Circuito De Bogota Court (filed Dec. 1, 2023)

- *Telefonaktiebolaget LM Ericsson v. Ingram Micro S.A.S.*, SIC / 23-520592, PO51555 CO1 (filed Nov. 24, 2023)

- *Telefonaktiebolaget LM Ericsson v. MPS Mayorista De Colombia S.A.*, SIC / 23-518825, P073308 CO1 (filed Nov. 24, 2023)

- *Telefonaktiebolaget LM Ericsson v. Lenovo Asia Pacific Ltd. Sucursal*, SIC / 23-519034, P051555 CO1 (filed Nov. 20, 2023)

- *Lenovo Group Limited and Ors v Telefonaktieblaget LM Ericsson and Ericsson Limited*, Case number HP-2023-000036 (High Court of England and Wales) (filed Oct. 13, 2023)

- *Motorola Mobility, LLC and Anor v Ericsson Limited and Anor*, Case number HP-2024-000005 (High Court of England & Wales) (filed Feb. 12, 2024)

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. §§1331, 1338(a), and 1367(c), because the complaint includes claims alleging infringement of U.S. patents. Appx1042-1053 (Counts I-V). This Court has jurisdiction under 28 U.S.C. §1292(a)(1), (c)(1).

The district court denied Appellants' motion for an antisuit injunction on February 14, 2024. Appx1-18. Appellants timely appealed on February 23, 2024. Appx3443-3444. *See* 28 U.S.C. §2107; Fed. R. App. P. 4(a)(1)(A).

## INTRODUCTION

This appeal arises from the district court's order denying Lenovo's motion for an anti-suit injunction. Ericsson and Lenovo each pledged to license their 5G standard-essential patents (SEPs) on fair, reasonable, and non-discriminatory (FRAND) terms. FRAND pledges are critical to the development of technological standards. Like any contract, a FRAND pledge is only meaningful if it can be enforced. Here, Ericsson asked the district court to decide whether Ericsson has complied with its obligation to negotiate in good faith, and Lenovo asked the district court to determine a FRAND rate for a global cross-license to the parties' 5G SEPs.

But after filing its FRAND claims in the district court, Ericsson launched a worldwide campaign of interfering litigations designed to prevent the district-court action from proceeding to conclusion, and thereby escape its FRAND pledge. In *dozens* of filings abroad—many secret, *ex parte*, and expedited—Ericsson has asserted its 5G SEPs to demand injunctions against Lenovo's global smartphone business. Ericsson has successfully enjoined Lenovo and its customers in Brazil and Colombia, and threatened Lenovo with fines and other punishment in multiple

jurisdictions. The goal is to pressure Lenovo into signing a license on unfair terms, before any court can enforce Ericsson's FRAND pledge.

Ericsson's strategy is not new. U.S. and foreign courts have seen this tactic before in the standards context, and have issued antisuit injunctions to protect their proceedings from precisely this kind of foreign interference. The antisuit injunctions in cases like *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872 (9th Cir. 2012) are tailored to the threat: they prevent the patentee only from pursuing *injunctive* relief, only based on SEPs, and only while the district-court FRAND claims are pending. Without antisuit injunctions, SEP holders like Ericsson can game the standards-setting process by accepting the benefits of having their technology incorporated into a standard, while evading the burdens of complying with their FRAND pledges.

The facts of this case are nearly identical to *Microsoft v. Motorola*, where the court of appeals affirmed an antisuit injunction. The district court's contrary ruling conflates distinct concepts, and misapprehends the nature of the parties' dispute and Ericsson's FRAND commitments. The district court's reasoning either creates a conflict with *Microsoft v.*

*Motorola*, or provides a template for SEP holders like Ericsson to evade precedent and their FRAND obligations through artful pleading.

This Court should correct the district court's errors, at a minimum. But it should reverse outright. A simple remand would play into Ericsson's strategy of manipulating court schedules for strategic advantage, and give a roadmap for future abuse. Ericsson has been expediting its foreign injunctive proceedings to pressure Lenovo, while delaying this appeal to prevent Lenovo from obtaining anything other than Pyrrhic relief—even to the point of fighting Lenovo's scheduling motion. The second and third steps of the antisuit injunction inquiry are fully briefed on the record, turn on undisputed facts, and point overwhelmingly toward an antisuit injunction. The Court should reverse and order the district court to issue the antisuit injunction.

## STATEMENT OF THE ISSUES

1.     Whether the district court's order denying an antisuit injunction should be reversed because the court erred as a matter of law in finding, as a threshold matter, that resolving the underlying FRAND contract issues would not determine the propriety of Ericsson's enforcement of injunctive relief in foreign countries.

**2.** If so, whether this Court should order entry of an antisuit injunction against Ericsson because the antisuit injunction factors support an injunction and because the impact on comity would be tolerable.

## STATEMENT OF THE CASE

### A. Ericsson and Lenovo Pledge to License Their 5G SEPs on FRAND Terms.

Lenovo[1] appeals from the district court's order denying its motion for an antisuit injunction. Appx1-18. This case concerns the 5G standard, and Ericsson and Lenovo's global dispute over their respective 5G standard-essential patents (SEPs). Standard-setting organizations (SSOs) like the European Telecommunications Standards Institute (ETSI) develop standards so that different companies' products will be interoperable. For example, American electrical devices can plug into almost every wall outlet in the country, because industry adopted a standard two- or three-prong, 120-Volt outlet. The Wi-Fi standard similarly permits Wi-Fi-compliant phones, laptops, and base stations to communicate with each other

---

[1] Except where differences among them matter, "*Ericsson*" refers collectively to all appellees—Telefonaktiebolaget LM Ericsson, Ericsson AB, and Ericsson, Inc., and "*Lenovo*" refers collectively to both appellants—Lenovo (United States) Inc. and Motorola Mobility Inc.

regardless of manufacturer. *See Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1208-09 (Fed. Cir. 2014); Appx2558(¶¶12-14).

SEPs (patents that would be necessarily infringed by implementing the standard) present a major concern to standard setting. A standard like 5G may implicate tens of thousands of families of patents, or more. After an SSO finalizes a standard, every owner of even a single SEP gains holdup leverage over the entire industry, based on the value of the entire standard. Appx2559-2560(¶¶17-18, 22); *Ericsson*, 773 F.3d at 1209. Any company that makes standard-compliant products and refuses to pay whatever a SEP holder demands, would risk lawsuits and injunctions excluding it from the entire market of standard-compliant products. *Ericsson*, 773 F.3d at 1209; *see also TCL Commc'n Tech. Holdings v. Telefonaktiebolaget LM Ericsson*, 943 F.3d 1360, 1364 (Fed. Cir. 2019); C. Shapiro & M. Lemley, *The Role of Antitrust in Preventing Patent Holdup*, 168 U. PA. L. REV. 2019, 2043-46 (2020). That holdup risk is acute in the electronics industry, because of the number of patents involved, and the ever-increasing number and type of products with connectivity. *See* J.R. Bartlett & J. Contreras, *Rationalizing FRAND Royalties: Can Interpleader Save the Internet of Things?*, 36 REV. LITIG. 285, 287-90 (2017).

To alleviate the holdup risk, SSOs usually require participants to declare any patents they own that are or may be SEPs, and commit to license those SEPs on FRAND terms.[2] *See TCL*, 943 F.3d at 1364; *Ericsson*, 773 F.3d at 1208; Appx2559-2561(¶¶18, 21, 24-25). That happened here. Ericsson and Lenovo participated in developing the 5G standard through ETSI. Appx3340:15-23; Appx3365:21-3366:4. Both committed to license their 5G SEPs on FRAND terms, under the ETSI Intellectual Property Rights policy and annexed form IPR Licensing Declaration. Appx1009-1010(¶¶33-36); Appx2138-2139(¶¶27-28). The ETSI policy does not specify numerical FRAND rates. It includes the following provision, §6.1, regarding FRAND commitments:

> When an ESSENTIAL IPR [intellectual property right] relating to a particular STANDARD or TECHNICAL SPECIFICATION is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an irrevocable undertaking in writing that it is prepared to grant irrevocable licences on fair, reasonable and non-discriminatory ("FRAND") terms and conditions under such IPR:
>
> - MANUFACTURE, including the right to make or have made customized components and sub-systems to the licensee's own design for use in MANUFACTURE;

---

[2] References in the record to "RAND," "FRAND," and "F/RAND" all refer to the same concept.

- sell, lease, or otherwise dispose of EQUIPMENT so MANU-FACTURED;

- repair, use, or operate EQUIPMENT; and

- use METHODS.

The above undertaking may be made subject to the condition that those who seek licences agree to reciprocate.

Appx2137(¶24).

All agree that the ETSI policy is a binding contract, governed by French law, that Ericsson and Lenovo can each enforce against the other as third-party beneficiaries. Appx1052(¶191); Appx2138(¶26); Appx2561(¶24). All likewise agree that the ETSI FRAND commitment includes a duty to negotiate in good faith. Appx1052(¶191); Appx2151-2153(¶¶73, 79-80).

## B. Licensing and Negotiations Between Ericsson and Lenovo Before this Litigation

In 2011—before Lenovo acquired Motorola—Motorola and Ericsson entered a worldwide, **term** cross-license to all of each other's de-clared cellular SEPs with a priority date before 2016. Appx3173 (citing Appx3179-3184). The cross-license covered SEPs for standards such as 3G and 4G. Lenovo acquired Motorola in 2014. Appx2451(¶5). Motorola

**Confidential Material Redacted**

remains licensed to Ericsson's pre-2016 patents, and granted Lenovo a sublicense. Appx3173.

Lenovo and Ericsson attempted to negotiate a further license between 2015 and 2017, but were unsuccessful due to Ericsson's refusal to license Lenovo to any of its 5G patents—the very patents that Ericsson is now seeking injunctions on around the world. Instead of licensing its 5G patents, as its FRAND commitment requires, Ericsson demanded substantial royalties for products already licensed under Motorola's earlier agreement with Ericsson. Appx2140(¶¶32-34). After an unsuccessful mediation, Ericsson dropped the discussions and seemingly moved on to another target. Appx2140-2141(¶¶35-36). Ericsson and Lenovo had further discussions in September 2021 and July 2023, but those stalled when they could not agree on the terms of an NDA. Appx2141(¶37); Appx2142(¶40). In district court, Ericsson has told a selective version of the foregoing history and cast it as "more than a decade" of "delay" by Lenovo negotiating a license. *E.g.*, Appx1014 (complaint); Appx2799 (Ericsson brief). Among other things, Ericsson's refrain ignores the preexisting cross-license, and that Lenovo launched its first 5G phone in 2021. Appx3169-3170.

## C. Ericsson Simultaneously Makes its First 5G Offer, and Initiates District-Court Litigation Seeking an Adjudication of Ericsson's Compliance with its FRAND Pledge.

On October 11, 2023, Ericsson made its first 5G offer to Lenovo, demanding "$5 per 5G smartphone or tablet," with "[d]iscounted rate of 1% of net sales, with a $4 per-unit cap, available." Appx2910; *see also* Appx2803; Appx3173. That is Ericsson's unilaterally chosen price, nothing more. That same day, Ericsson filed two lawsuits against Lenovo, including the district court action here, and a parallel ITC complaint (No. 337-TA-1375) asserting infringement of SEPs and seeking to exclude Lenovo's products from the country.[3]

In the district court case underlying this appeal, Ericsson's complaint included claims for infringement of four declared 5G SEPs, Appx1042-1051 (Counts I-IV), and claims accusing Lenovo of breaching its FRAND commitments under the ETSI policy Appx1051-1056 (Counts V-VI).

---

[3] Ericsson also filed a separate district court action (E.D.N.C. No. 23-CV-570) asserting infringement of *non*-essential patents. The following day, Ericsson filed another ITC complaint (No. 337-TA-1376) asserting those same patents.

Importantly, Ericsson's complaint also asked the court to determine whether *Ericsson* had complied with its FRAND commitment vis-à-vis Lenovo, and included a contingent request to declare FRAND terms for a global cross-license between Ericsson and Lenovo. Ericsson's Count VII is titled "Declaration that Ericsson Has Complied with its F/RAND Commitment and the ETSI IPR Policy With Respect to its Offer to Lenovo USA." Appx1056-1058. The complaint's concluding prayer for relief includes the following items:

> **(j)** Adjudge and declare that Ericsson has complied with its F/RAND commitments and all applicable laws;
>
> **(k)** Adjudge and declare that Ericsson has complied with the ETSI IPR Policy and all other applicable laws that would affect Ericsson's prospective license to Defendants;
>
> **(l)** If Ericsson's offer is determined not to be consistent with its F/RAND commitments, *adjudge and declare a F/RAND rate for a global cross-license* between Ericsson and Defendants covering Essential Patents;

Appx1059-1060.

### D. Lenovo Files Counterclaims in District Court Concerning Ericsson's FRAND Pledge, and a UK Action Concerning Ericsson's FRAND Pledge.

In the district court, Lenovo sought "final resolution" of its global dispute with Ericsson. Appx2131. Lenovo's counterclaims contended that Ericsson breached its FRAND obligations to Lenovo, Appx2150-2153

(Counterclaims I and II). Lenovo's Counterclaim III also directly asked the Court to decide the FRAND terms of a cross-license, "request[ing] a judicial declaration that sets the FRAND terms and conditions for a global patent cross-license between Ericsson LM and Lenovo US that includes the parties' and their related companies' respective declared SEPs." Appx2153-2154.

Seeking a judicial declaration of a FRAND rate is consistent with practice in the standards context. When parties are unable to agree on a license or cross-license to each other's SEPs, they can file contract claims based on the ETSI FRAND pledge. Based on those claims, the parties can ask a court with jurisdiction to declare a FRAND rate for a license between the parties. American courts with jurisdiction over the parties have done just that—setting worldwide FRAND rates, as Lenovo asked the district court to do here. *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, No. C10–1823, 2013 WL 2111217 (W.D. Wash. Apr. 25, 2013).

UK courts have also adjudicated global FRAND disputes under established procedures. Appx2577-2578(¶¶68, 70). In the landmark *Unwired Planet* decision, a UK court ruled that Huawei would be enjoined unless it accepted a worldwide license to Unwired Planet's SEPs, on

FRAND terms the court set. *Unwired Planet Int'l Ltd. v. Huawei Tech. Co.*, [2017] EWHC (Pat) 2988 (Eng.), at ¶¶793, 807(18). Ericsson intervened in Huawei's appeal to the UK Supreme Court in *Unwired Planet*, to endorse the UK court's approach of setting the terms of a worldwide license. *Unwired Planet Int'l Ltd. v. Huawei Tech. (UK) Co. Ltd* [2020] UKSC 37 (Eng.).

After Ericsson filed its complaint here, Lenovo filed an action in the High Court of England and Wales, asking that court to follow the approach of *Unwired Planet* and set a global FRAND rate that would put *all* disputed FRAND and SEP infringement issues to rest worldwide. Appx2576(¶32). Lenovo provided an undertaking that it would enter into the license and pay the FRAND rate set by the court. Appx2577(¶68). Ericsson disputes the UK court has jurisdiction and wants to proceed in the district court on its FRAND-compliance claim. Appx2622; Appx2599; Appx2619(40:10-16). As a protective measure, Lenovo's UK filings included a contingent request for a preliminary injunction. Appx3435. The contingency is that Lenovo only seeks a preliminary injunction if Ericsson does not consent to a FRAND cross-license determination, and does not withdraw its injunction actions elsewhere. Appx3435-3436.

**E. To Pressure Lenovo to Accept Ericsson's Demands Before Any Court Can Adjudicate Ericsson's FRAND Pledge, Ericsson Seeks and Obtains *Ex Parte*, Secret, Expedited Injunctions Against Lenovo in Other Countries by Asserting Infringement of 5G SEPs.**

Despite Ericsson's FRAND claims in the district court, and Ericsson's representations to the UK court, Ericsson has gone to extraordinary lengths to prevent any tribunal from adjudicating Ericsson's FRAND pledge to Lenovo.

Beginning in November 2023, Ericsson started seeking *dozens* of expedited preliminary injunctions against Lenovo in foreign countries, many on an *ex parte* basis, based on alleged infringement of 5G SEPs. The goal is to force Lenovo to accept Ericsson's licensing demands before any tribunal can determine whether Ericsson complied with its FRAND obligations, or what a FRAND rate would be.

In Brazil on November 21, Ericsson filed ░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░, Appx2457(¶4), which the court granted six days later. Appx2457-2458(¶5), Appx2462-2471. To Lenovo's knowledge,[4] Ericsson has also filed over *thirty ex parte* preliminary injunction actions against Lenovo

---

[4] The cases listed here are only the cases Lenovo presently knows about.

**Confidential Material Redacted**

and its customers in Colombia since November 20. Appx2534-2541(¶14); *see supra* pp.vii-x (Statement of Related Cases).

Ericsson sought injunctions in Brazil and Colombia (and against Lenovo's customers) to cause serious damage to Lenovo's business. As Ericsson knows, Brazil is a major market accounting for ███ of Lenovo's smartphone sales. The Brazilian injunction applies to Lenovo and its customers, and prevents Lenovo's Brazilian affiliates from offering 5G products. Although the injunction is based on alleged infringement of two FRAND-encumbered Ericsson patents, the injunction imposes **terms**

**terms of injunction**

**terms of injunction**. *Id.*

In Colombia, Ericsson's injunctions began issuing in December. Each was issued without Lenovo's participation, and enjoins Lenovo's Colombian affiliates from selling or importing 5G-capable smartphones. Appx2542(¶17); Appx2462-2471. As with the Brazilian injunctions, the Colombian injunction is based on a patent that Ericsson has declared to be a 5G SEP and pledged to license on FRAND terms. Appx2542(¶17). Other Colombian injunctions operate directly against Lenovo customers. *Id.* Those injunctions will remain in place until the appeal in Colombia is

**Confidential Material Redacted**

heard, which will likely take 4 to 6 months as of this filing. Appx2533(¶11).

### F. Ericsson Rejects Lenovo's Attempts at Resolution without Injunctions, Including Lenovo's Offers of Interim Payments and Security.

Lenovo has always remained willing to enter a cross-license on FRAND terms, and has continued to seek a negotiated resolution with Ericsson without injunctive relief. Indeed, Lenovo offered to pay into escrow Ericsson's rack rate for 5G products in Brazil and Colombia (the most Ericsson could possible seek for a license), in exchange for Ericsson standing down on its injunctions. Appx2602-2603. Ericsson refused. Lenovo also offered security and interim payments on a global basis while a FRAND cross-license rate was determined, but Ericsson refused because it preferred to exert pressure over Lenovo through its injunctions. Appx2631-2632. Ericsson has also resisted Lenovo's request in the UK court to set an *interim* license rate, with Lenovo to make interim payments until the court finally adjudicates a FRAND rate. Appx2611(¶3(b)) (Lenovo's request); Appx2620(50:3-22) (Ericsson disputing jurisdiction).

**G. The District Court Denies Lenovo's Request for an Antisuit Injunction to Prevent Ericsson's Campaign of Foreign Injunctions from Interfering with the District Court's Adjudication of the Parties' FRAND Dispute.**

Ericsson's actions follow a strategy Ericsson has previously pursued and touted to the press. Appx2593-2594. SEP holders like Ericsson can circumvent their FRAND obligations by suing companies like Lenovo in countries around the word, alleging infringement of SEPs and seeking injunctions. Some jurisdictions grant injunctions quickly, *ex parte*, and in secret proceedings. The defendant learns after the fact that it is enjoined. And if even one judge grants one injunction in a key market, the defendant is locked out of the entire 5G market in that jurisdiction. Few can endure that state of affairs for very long. SEP holders like Ericsson exploit that dynamic by pressuring the defendant into signing a license with exorbitant royalty rates, before any court can adjudicate the SEP holder's compliance with its FRAND obligation.

When courts have jurisdiction over a FRAND dispute, they have responded to tactics like Ericsson's by issuing antisuit injunctions.[5] The

---

[5] *E.g.*, *Microsoft*, 696 F.3d 872, *aff'g* 871 F.Supp.2d 1089 (W.D. Wash. 2012); *Huawei Techs. v. Samsung Elecs. Co.*, No. 3:16-cv-02787, 2018 WL 1784065 (N.D. Cal. Apr. 13, 2018); *TCL Commc'n Tech. Holdings v. Telefonaktiebolaget LM Ericsson*, No. 8:14-cv-00341, 2015 WL 13954417

injunctions protect the court's jurisdiction by preventing the SEP holder from seeking SEP-based injunctions elsewhere that would interfere with the court's ability to adjudicate the FRAND dispute before it.

By the end of December, Ericsson's foreign injunctions were piling up against Lenovo. Ericsson continued to refuse Lenovo's offers of security and interim measures, and continued to press Lenovo to accept its demands. So, Lenovo moved in the district court for an antisuit injunction to prevent Ericsson from seeking or enforcing injunctions against Lenovo on 5G SEPs while this case is pending. Appx2421-2446.

Courts apply a three-part framework in this context. *Microsoft*, 696 F.3d at 881-82; *BAE Sys. Tech. v. Rep. of Korea's Def. Acquisition Prog. Admin.*, 884 F.3d 463, 479 (4th Cir. 2018). Appx11-13. *First*, the court compares the case before it with the case to be enjoined, and asks whether the parties are substantially the same and whether the first action is dispositive of the action to be enjoined. If so, then *second*, the court considers any factors traditionally favoring an antisuit injunction. And *third*, the court weighs those factors against considerations of international comity.

---

(C.D. Cal. June 29, 2015); *Realtek Semiconductor v. LSI Corp.*, 946 F.Supp.2d 998, 1008-10 (N.D. Cal. 2013) (enjoining enforcement of ITC exclusion order).

The district court resolved this case at the threshold first step. The court agreed with Lenovo that the Brazilian and Colombian actions involved substantially the same parties. Appx14-15. But the court denied the antisuit injunction because it believed the result of this action would not be "dispositive" of the Brazilian and Colombian actions. Appx15-17. The court based its ruling on the way Ericsson's complaint phrased a request for relief, Appx15-16, and on its belief that it should not issue an antisuit injunction if its proceedings would not "necessarily result in a global cross-license." Appx15-17.

As noted, *supra* §C, Ericsson's complaint requested declarations that it complied with its FRAND obligations. Appx1059 (items j and k). Further, "[*i*]f *Ericsson's offer* is determined not to be consistent with its F/RAND commitments" then Ericsson asked the court to declare a FRAND rate for a global cross-license. Appx1059-1060 (item *l*). The court appears to have believed that if it determined "Ericsson's October 11 *offer* is FRAND," it would not need to consider the terms of a FRAND *cross-license*. Appx16. The court emphasized that "Ericsson's request" for a rate determination was "contingent." *Id.* Although the court acknowledged that Lenovo's counterclaim was *not* contingent, it seems to have assumed

Lenovo's counterclaim could be disregarded. The court thus concluded that its proceedings were not "dispositive" of the actions in Brazil and Colombia within the meaning of caselaw because its proceedings "will not necessarily result in a global cross-license that resolves the foreign patent actions." Appx17. For that reason alone, the court denied the antisuit injunction. *Id.* Lenovo promptly appealed. Appx3443-3445.

Seemingly emboldened by the district court's ruling, Ericsson responded by expanding its campaign of foreign injunctions, including filing a new petition in Brazil five days later, and seeking to expedite its foreign actions further, all while opposing Lenovo's motion to expedite this appeal. In the meantime, proceedings in district court are ongoing, and Ericsson continues to escalate its attempts to enjoin Lenovo abroad, while pressing Lenovo to accept its supra-FRAND licensing demands.

## SUMMARY OF ARGUMENT

This Court should reverse the district court's order, and remand with instructions to issue the antisuit injunction Lenovo requested.

**I.** The threshold requirements for antisuit relief are present here. The parties and issues are the same, and this action would be dispositive of the action to be enjoined. This action concerns Ericsson's

contractual obligations to negotiate in good faith and license all of its 5G SEPs on FRAND terms. Those contractual FRAND obligations are squarely before the district court here, they apply to all of Ericsson's alleged 5G SEPs, including those it is asserting in Brazil and Colombia, and adjudication of the FRAND claims in this case would necessarily resolve the propriety of Ericsson seeking injunctions abroad.

The district court correctly recognized that the threshold inquiry is "functional," not technical or formal. But it erred in its analysis of whether this action would be "dispositive" of the foreign actions, and its reasoning cannot be squared with the nearly identical facts of *Microsoft v. Motorola*.

*First*, the district court erroneously believed that the "dispositive" prong is not met if there is any reason the case before it might not "result in a global cross-license." Appx15-17. The question of whether Ericsson breached its duty to make *offers* that comply with its FRAND obligations is squarely before the district court. A ruling that Ericsson breached that duty would be dispositive because it would mean Ericsson has no right to seek injunctions on SEPs. *Microsoft* explained that this is inherent in the nature of a FRAND commitment and does *not* depend on whether a global

cross-license automatically follows. The district court's contrary reasoning disregards *Microsoft*, and misapprehends the dispute before it by conflating Ericsson's FRAND negotiating obligation with its FRAND licensing obligation.

*Second*, the district court's analysis disregards that Ericsson's prayer for relief and Lenovo's counterclaim both explicit ask the court to declare a FRAND rate for a global cross-license. The court erred by relying on the contingent nature of Ericsson's request. If Ericsson breached its duty to make FRAND offers, then Ericsson cannot seek injunctions. And regardless of whether Ericsson did or did not breach its FRAND obligations, Lenovo's request for a rate determination is squarely before the court without any issue of contingencies through its counterclaim. Either way, the threshold inquiry is met. The district court's contrary reasoning again conflates distinct aspects of Ericsson's FRAND obligations. It is beside the point whether Lenovo would accept Ericsson's *offer* if the court determines the offer is reasonable. Lenovo has clearly committed to be bound by the district court's declaration of a FRAND *rate*—which is a distinct question.

**II.**    The district court's errors at step one are reason enough to remand. But this court should reach steps two and three and reverse, as other courts have done in similar circumstances. All three steps of the analysis are fully joined on the record, and significant further delay from a remand would only further Ericsson's strategy of using foreign injunctions to pressure Lenovo into to accepting supra-FRAND licensing terms. At steps two and three, the relevant facts are undisputed and overwhelmingly favor an antisuit injunction.

**A.**    Any of the four antisuit injunction factors considered at step two is reason enough to grant an injunction. All four are present here.

The Brazilian and Colombian injunctions threaten the jurisdiction of the district court because Ericsson is deploying them as an anticompetitive cudgel that to try to extract inflated licensing fees before the court can rule on the pending contract issues. The foreign injunctions will also cause inequity and frustrate domestic policies against injunctive relief on SEPs, as well as broader policies against anticompetitive conduct and breaches of contract. Lastly, the foreign injunctions are vexatious and oppressive because they are a procedural maneuver aimed at coercing Lenovo to pay licensing fees for patents that reflect not their fair

market value but Lenovo's need to avoid irreparable damage to its international business.

**B.** At step three, there is no risk that an antisuit injunction would offend international comity. Courts widely agree that private, contractual disputes such as this generally do not raise comity concerns. That is especially true where, as here, the requested injunction is narrowly tailored to the specific threat. The requested injunction would prevent Ericsson only from enforcing foreign injunctive orders against Lenovo, only as to alleged SEPs, and only in advance of a court ruling on the FRAND issues. The requested injunction would not otherwise prevent Ericsson from litigating the foreign cases to completion.

In sum, **(1)** the threshold inquiry for an antisuit injunction is met, **(2)** the antisuit factors point overwhelmingly in favor of an antisuit injunction, and **(3)** those factors are not outweighed by comity concerns, in light of the private nature of the dispute and the narrow tailoring of the injunction sought. Rather than sanction a patent hold-up that leaves Lenovo to choose between monopoly pricing for SEPs, severe penalties, or exclusion from major international markets, this Court should reverse, and order the district court to issue the antisuit injunction.

## STANDARD OF REVIEW

The question "whether an anti-suit injunction should issue … is not unique to patent law." *Sanofi-Aventis Deutschland GmbH v. Genentech, Inc.*, 716 F.3d 586, 590-91 (Fed. Cir. 2013). To the extent intercircuit differences exist, this Court applies regional circuit law—here, the Fourth Circuit. *Id.* An order granting, denying or modifying an antisuit injunction is reviewed for an abuse of discretion. *BAE*, 884 F.3d at 479. A court "necessarily abuse[s] its discretion if it base[s] its ruling on an erroneous view of the law or on a clearly erroneous view of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); *see also E.&J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 989 (9th Cir. 2006) ("[t]he district court's interpretation of the underlying legal principles ... is subject to de novo review and a district court abuses its discretion when it makes an error of law.").

## ARGUMENT

"It is well-settled that U.S. courts have the power to enjoin parties from pursuing litigation before foreign tribunals." *Sanofi-Aventis*, 716 F.3d at 591; *see Microsoft*, 696 F.3d at 881; *The Salvore*, 36 F.2d 712, 714 (2d Cir. 1929). As noted, courts apply a three-part framework to decide

whether to issue an antisuit injunction.[6] *Microsoft*, 696 F.3d at 881-82; *BAE*, 884 F.3d at 479; Appx11-13. *First*, the court makes a threshold inquiry into "'whether or not the parties and the issues are the same' in both the domestic and foreign actions, 'and whether or not the first action is dispositive of the action to be enjoined.'" *Microsoft*, 696 F.3d at 881 (citing cases from three circuits); *see BAE*, 883 F.3d at 479 (citing *Microsoft*); *Sanofi*, 716 F.3d at 591. *Second*, the court considers whether any factors traditionally favoring an antisuit injunction are present. *Microsoft*, 696 F.3d at 881-882. And *third*, it weighs those factors against any impact the injunction would have on international comity, considering whether such "impact on comity is tolerable." *Id.* at 880-881.

---

[6] The parties agreed—and every court to consider the question directly has held—that this three-part framework governs here, as opposed to the more general preliminary-injunction factors. *E.g.*, *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 19 (1st Cir. 2004) ("Because this generic algorithm [the general preliminary-injunction factors] provides an awkward fit in cases involving international antisuit injunctions, district courts have no obligation to employ it in that context."); *E.&J. Gallo*, 446 F.3d at 991 (movant "need not meet our usual test of a likelihood of success on the merits of the underlying claim to obtain an antisuit injunction," but "need only demonstrate that the factors specific to an antisuit injunction weigh in favor of granting the injunction"); *Ganpat v. E. Pac. Shipping PTE, Ltd.*, 66 F.4th 578, 584 (5th Cir. 2023) (similar); *Microsoft* 696 F.3d at 883-84 (similar).

The district court declined to exercise that power here because it erroneously concluded, at the first step of the inquiry, that this case would not be dispositive of Ericsson's actions seeking injunctive relief for SEPs. At a minimum, that requires vacatur. But the Court should reverse, because the relevant issues are fully joined, and an antisuit injunction is compelled on the undisputed facts of this case.

## I. The District Court's Analysis Misapprehended the Parties' Dispute, and Conflicts with Precedent.

### A. In Comparing the Parties and Issues, the District Court Correctly Recognized that the First-Step Inquiry is Functional, Not Formal or Technical.

As the district court correctly recognized—"whether or not the parties and the issues are the same" in both the domestic and foreign actions, "and whether or not the first action is dispositive of the action to be enjoined"— requires a *functional* analysis, not a formal or technical one. Appx14; *see Sanofi*, 716 F.3d at 591; *Microsoft*, 696 F.3d at 882-83 (observing "emphasis on the functional character … We ask 'whether the issues are the same' not in a technical or formal sense, but 'in the sense that all the issues in the foreign action … can be resolved in the local action.'" (quoting *Applied Med. Distrib. Corp. v. Surgical Co*, 587 F.3d 909, 915 (9th Cir. 2009)).

In comparing the parties, the court correctly applied that standard. It recognized Ericsson's filings against Lenovo's Brazilian and Colombian affiliates were not a coincidence or unrelated to this case. Appx15. "It's not a secret that the Brazilian and Colombian actions are a direct result of Lenovo US's negotiations with Ericsson … [a]nd it is undisputed that the Brazilian and Colombian entities are part of the Lenovo family, [which] Ericsson alleges acts as a 'unitary business venture.'" Appx15. The court correctly rejected Ericsson's arguments about whether the specific Lenovo parties in this case exercised formal "control" over the Brazilian and Colombian affiliates, "conclud[ing]," correctly, "that Lenovo US is substantially similar with the foreign defendants in the one way that matters here." Appx15.

**B.    By Ruling that this Action Would Not Be "Dispositive" of the Other Actions, the District Court Misapprehended Ericsson's FRAND Commitment and the Dispute Here.**

The district court's errors began in its analysis of whether this action would be "dispositive" of the injunctions in Brazil and Colombia. The court correctly recognized that the foreign "actions involve claims for patent infringement on 5G [SEPs] covered by Ericsson's FRAND commitment, and Ericsson has included those patents in its global licensing

offer." Appx15-16. The court found that this case would not be dispositive of the foreign actions because Ericsson's request for a FRAND rate determination was "contingent" on "the antecedent issue" of Ericsson's "offer," and because its proceedings would not "necessarily result in a global cross-license." Appx15-17; *see supra* pp.18-19. The district court erred in at least two ways. *First*, it misapprehended the nature of Ericsson's FRAND commitment, and the effect that a ruling on Ericsson's "offer" would have on foreign litigation. *Second*, in part because it disregarded the balance of Ericsson's contract claim and Lenovo's counterclaim, the court misapprehended the nature of the dispute before it. The parties' dispute here is no different from *Microsoft v. Motorola*, and should have led to the same result—an antisuit injunction.

1.　**A Ruling that Ericsson Has Not Complied with its FRAND Commitment Would be Dispositive of Ericsson's Injunctive Actions.**

As discussed, above it is undisputed that **(a)** Ericsson committed to license its 5G SEPs on FRAND terms, **(b)** its FRAND commitment under the ETSI policy is a binding contract that Lenovo may enforce as a third-party beneficiary. *Supra* pp.6-7. Those are also the facts of the *Microsoft* case: **(a)** Motorola made binding contractual commitments with SSOs to

28

license its SEPs on FRAND terms, and **(b)** Microsoft was a third-party beneficiary of those commitments. 696 F.3d at 878. In *Microsoft*, as here, the district court had contract claims before it contesting whether the SEP holder's "proposed royalty terms were unreasonable" and whether its proposals "therefore breached its contractual [F]RAND obligations." *Id*. And in *Microsoft*, as here, the SEP holder (Motorola) obtained foreign injunctions (in Germany) against the defendant based on alleged infringement of declared SEPs. *Id*. at 879.

Under those circumstances, the Ninth Circuit affirmed the district court's finding that the American contract case "would be dispositive of the German patent action, because the European Patents at issue in [Germany] were included in Motorola's … [l]etter offering a worldwide license for Motorola's [SEPs], and because Motorola contracted with the [SSO] to license the European Patents on [F]RAND terms to all applicants on a worldwide basis." *Id*. at 880 (internal quotation omitted); *see id*. at 882-885.

The district court should have reached the same conclusion here. Even accepting the district court's focus on Ericsson's request for a ruling on its program rate *offer* to Lenovo, Appx16, a ruling that Ericsson's offer

was *not* consistent with its FRAND commitment would be dispositive of the actions in Brazil and Colombia.

That is because, at a bare minimum, Ericsson cannot seek injunctions based on its SEPs unless it is at least first making an *offer* consistent with its FRAND commitment. *See Microsoft*, 696 F.3d at 884-85; *Realtek*, 946 F.Supp.2d at 1006-07. As Ericsson has acknowledged from the beginning, its FRAND commitment includes a duty to *negotiate* in good faith. Appx1052(¶191). Whether Ericsson has done so is squarely before the court. Appx16. If it has not done so, then it has no right to seek injunctions against Lenovo on SEPs while the case is pending.

As *Microsoft* recognized on indistinguishable facts, that is reason enough to conclude that the district court contract claims would, if decided in the defendant's favor, be dispositive of the foreign injunction actions. 696 F.3d at 884-85. *Microsoft* explained that the fact of a FRAND commitment is "at least arguably[] a guarantee that the patent-holder will not take steps to keep would-be users from using the patented material, *such as seeking an injunction*, but will instead *proffer licenses consistent with the commitment made*." 696 F.3d at 884.

In *Realtek*, the district court likewise issued an injunction preventing patentees from enforcing ITC exclusion orders, because the patentees had not made FRAND *offers* before seeking injunctive relief. 946 F.Supp.2d at 1006-07. Contrary to Ericsson's suggestions in other briefs in this case, none of this "applie[s] a *per se* rule that injunctions are unavailable for SEPs." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1331 (Fed. Cir. 2014). *Realtek* acknowledged, for example, that "an injunction may be warranted where an accused infringer of a [SEP] outright *refuses* to accept a [F]RAND license." 946 F.Supp.2d at 1007 (citing case and DOJ-PTO joint policy statement). But no such showing has been made here—again, because the question before the district court is whether any "FRAND license" has been offered to Lenovo in the first place.

The district court's contrary ruling appears to misapprehend the nature of Ericsson's obligations and the dispute before it. The court emphasized that Lenovo had not committed to "accept Ericsson's offer if it is declared FRAND," and that its proceedings would not necessarily result in a global cross-license. Appx16-17.

But whether Lenovo would accept the offer is beside the point, for multiple reasons. For one, an *offer* can be consistent with the SEP

holder's obligations without being a "true FRAND rate." *Cf. TQ Delta, LLC v. ZyXEL Commc'ns, Inc.*, No. 1:13-cv-02013, 2018 WL 2932728, at *2 (D. Del. June 12, 2018) (observing UK court's ruling in *Unwired Planet* that "a patent holder does not breach FRAND obligations by offering a license at higher than FRAND rates unless the rate is 'significantly' above the true FRAND rate."); *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 487-88 (5th Cir. 2021) (observing distinction between finding "offers were not a breach of FRAND" and finding "offers actually were FRAND").

More importantly, however, it is enough that there is an undisputedly enforceable contract before the court, and that a finding that Ericsson breached that contract would mean Ericsson cannot pursue SEP-based injunctions against Lenovo abroad. That is true regardless of whether Lenovo would accept Ericsson's offer, or whether proceedings here would result in a cross-license. *Microsoft* explains all of this and rejected arguments from the patentee that match the district court's reasoning here. *Microsoft* explained that it was enough, for the first step of the antisuit injunction inquiry, that the FRAND claims before the district court would resolve the propriety of Motorola seeking injunctions in

Germany—regardless of whether a cross-license ultimately resulted. 696 F.3d at 885.

> [W]hether or not the district court ultimately determines that Motorola breached its contract with the ITU (it may or may not have), it is clear that there *is* a contract, that it is enforceable by Microsoft, and that it encompasses not just U.S. patents but also the patents at issue in the German suit. Moreover, even if Motorola did not breach its contract, then, *however* the RAND rate is to be determined…, injunctive relief against infringement is arguably a remedy inconsistent with the licensing commitment.
>
> That the licensing agreement is not itself a license according to the ITU Policy does not detract from this conclusion. The question is how the commitment to license is to be enforced, not whether the commitment itself is a license.

696 F.3d at 885 (original emphasis, paragraph break added).

Consistent with *Microsoft*, a ruling against Ericsson on its offer alone would be dispositive of the propriety of injunctions in Brazil and Colombia. That is enough to satisfy the threshold inquiry for an antisuit injunction, and enough to reverse the district court's ruling.

### 2. A Ruling on the Balance of Ericsson's Contract Claim or Lenovo's Counterclaim Would Also be Dispositive of Ericsson's Injunctive Actions.

The district court also erred by disregarding the parties' dueling claims requesting a FRAND rate for a global cross-license. Ericsson's complaint requested that the Court "adjudge and declare a F/RAND rate

for a global cross-license between Ericsson and Defendants covering Essential Patents." Appx1059-1060 (item *l*). Lenovo's compulsory counterclaim likewise "request[ed] a judicial declaration that sets the FRAND terms and conditions for a global patent cross-license between Ericsson LM and Lenovo US that includes the parties' and their related companies' respective declared SEPs." Appx2154(¶89).

It does not matter that Ericsson's request was contingent on the court determining that Ericsson's "offer" was not "consistent with its F/RAND commitments." Appx1059-1060 (item *l*); Appx16. Both requests are squarely before the court, and neither party disputes the court's jurisdiction. Moreover, as just explained, *supra* §I.B.1., if Ericsson's contingency arose—*i.e.*, if the court found that Ericsson's offers breached its FRAND commitment—then that *alone* would resolve the propriety of Ericsson seeking injunctions abroad. And then, as requested by both Ericsson and Lenovo, the court would then be tasked with declaring a FRAND rate for a global cross-license.

And if the contingency did not arise, that would mean the court decided that Ericsson's offer *did* comply with its FRAND obligations. In that instance, the court would still have Lenovo's counterclaim asking

the court to decide that very issue, which Lenovo has agreed would be binding. Either way, the inescapable conclusion is that whatever the court decides will be dispositive of the propriety of Ericsson seeking injunctions on its SEPs in Brazil and Colombia.

The district court's contrary reasoning misses the mark. The court states "[i]t is not the business of the federal courts to draft agreements for the parties, and it makes little sense to start now." Appx17. But to declare a FRAND rate and to determine whether an offer complies with FRAND obligations—as both parties have requested here—is not to "draft agreements for the parties." Rather, it is a matter of enforcing the agreements the parties have already made. Again, all agree that Ericsson and Lenovo's FRAND pledges under the ETSI policy are binding contracts that each other may enforce as a third-party beneficiary. Where a contract requires a party to negotiate and license on FRAND terms, a claim for breach will often require the court to evaluate an offer or declare a FRAND rate. *E.g.*, *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823 2012 WL 4827743, at *6 (W.D. Wash. Oct. 10, 2012) ("unless the parties on their own can come to an agreed RAND licensing agreement, the

courthouse acts as an appropriate forum to resolve disputes over legal rights.").

The district court's reliance on *Apple Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178, 2012 WL 5416931 (W.D. Wis. Nov. 2, 2012) and *Interdigital Commc'ns Inc. v. ZTE Corp.*, 2014 WL 2206218 (D. Del. May 28, 2014), *see* Appx17, misreads those cases and conflates Ericsson's *offer* with an actual cross-license. As explained above, the two are distinct. *See supra* pp.30-33; *TQ Delta*, 2018 WL 2932728, at *2; *HTC*, 12 F.4th at 487-88. Lenovo has not committed to accepting Ericsson's *offer* if the court determines that it is consistent with Ericsson's FRAND obligations. But Lenovo *has* committed to be bound by the requested declaration of FRAND terms and conditions for a cross-license, and to post substantial security in the interim. Appx3174-3175 (citing Appx2631-2632; Appx2153-2154 (Countercl. III); Appx2577(¶67); Appx3198-3199).

In *Apple*, the opposite was true—Apple stated it *"will not commit to be bound by any FRAND rate determined by the court* and will not agree to accept any license from Motorola unless the court sets a rate of $1 or less for each Apple phone." 2012 WL 5416931, at *1. Apple also "reserve[d] the right to refuse and proceed to further infringement

litigation." *Id.* In *Interdigital*, the defendants stated only their general "'willingness' to accept a license," but "there ha[d] been no sworn affidavit by either [defendant] that they would sign a license," and they reserved rights to litigate "validity, essentiality, and infringement" before making any payments. 2014 WL 2206218, at *2-3. In *those circumstances*, both courts declined to declare a FRAND rate that would not bind the parties. *Apple*, 2012 WL 5416931, at *1; *Interdigital*, 2014 WL 2206218, at *3. Contrary to the district court's suggestion, neither court acted out of a general concern that declaring a FRAND rate would improperly put federal courts in the "business" of "draft[ing] agreements for the parties." Appx17. Rather, the concern was with parties refusing to be bound by the declaration and merely using it as an advisory negotiating tool. *Apple*, 2012 WL 5416931, at *1 ("Apple's response … did not assuage my concerns about determining a FRAND rate that may be used *solely as a negotiating tool between the parties*."); *Interdigital*, 2014 WL 2206218, at *3 ("All the Court's determination of a FRAND rate would accomplish would be to give a data point from which the parties could continue negotiations.").

This case is unlike *Apple v. Motorola* or *Interdigital v. ZTE*, and it is exactly like *Microsoft*. There is no question of whether a declared FRAND cross-license rate here would bind the parties. Both parties have filed dueling claims asking the court to declare a FRAND cross-license rate. Lenovo has agreed to be bound by the court's determination of FRAND terms and conditions for a cross-license, and Ericsson has even told the UK court that it prefers to proceed in the district court here. The district court's reasoning purports to distinguish *Microsoft*, but cannot be squared with that decision. An affirmance here would either create a direct conflict with *Microsoft*, or it would render that decision meaningless by ruling that it can be evaded through artful pleading. At a minimum, the Court should correct the district court's erroneous analysis of the threshold step of the antisuit injunction inquiry.

## II. This Court Should Reverse, and Order Entry of Lenovo's Requested Antisuit Injunction.

If this Court concludes that the threshold requirements for antisuit relief are met, it should reach the remaining steps in the analysis and order the injunction to issue, rather than remanding for the district court to complete the analysis. That would be appropriate here because "the district court fail[ed] to analyze the factors necessary," and "the record is

sufficiently developed." *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009); *see also Nomadix, Inc. v. Guest-Tek Interactive Ent. Ltd.*, No. 20-55439, 2021 WL 4027807, at *3 n.4 (9th Cir. Sept. 3, 2021) ("Given the circumstances, we may consider in the first instance whether Nomadix has satisfied the federal permanent injunction standard."). Moreover, time is of the essence. Lenovo remains under the threat of severe penalties in Brazil and Colombia. That will remain so until Lenovo obtains relief or buckles from the pressure of foreign injunctions and settles at the supra-FRAND royalty rates Ericsson is demanding.

## A. Multiple Factors Favor an Antisuit Injunction.

At step two of the antisuit injunction analysis, courts consider whether any of the four antisuit injunction factors applies—*i.e.*, whether the foreign proceeding would: "(1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's *in rem* or *quasi in rem* jurisdiction; *or* (4) where the proceedings prejudice other equitable considerations." *Microsoft*, 696 F.3d at 882. Any single factor is reason enough to issue the injunction. *See id.* at 881. All four are present here.

### 1. Ericsson's Foreign Injunctions Threaten the District Court's Jurisdiction.

Ericsson's foreign injunctions threaten the district court's jurisdiction (factor #3 in the *Microsoft* list) by rendering it incapable of issuing a meaningful ruling in this case. The injunctions are likely to—indeed, intended to—pressure Lenovo into accepting Ericsson's supra-FRAND licensing terms before the district court can adjudicate Ericsson's claim about whether it complied with its FRAND obligations in the first place or declare a FRAND rate for a global cross-license between the parties. Any ruling from the district court, then—if it can reach one without the case being mooted—will become a mere formality.

That result is untenable. "[O]ne clear policy that all federal courts recognize—even those which have been loath to interfere with foreign proceedings—is the need to protect the court's own jurisdiction." *Zynga, Inc. v. Vostu USA, Inc.*, No. 11-CV-02959, 2011 WL 3516164, at *3 (N.D. Cal. Aug. 11, 2011). Precedent recognizes a threat to the U.S. court's jurisdiction whenever a foreign injunction "compromise[s] the court's ability to reach a just result in the case before it free of external pressure on [the defendant] to enter into a 'holdup' settlement before the litigation is complete." *Huawei*, 2018 WL 1784065, at *10 (quoting *Microsoft*, 696

F.3d at 886). In that situation, the foreign injunction is likely to undermine the district court's "ability to determine the propriety of injunctive relief in the first instance." *Id.*

Here, there is little value in the district court proceedings regarding whether Ericsson has breached its contractual obligations, or in adjudicating a FRAND rate between the parties, while Ericsson seeks to impose market exclusion and harsh penalties on Lenovo. By the time any ruling issues, it will likely be too late. If Lenovo is forced to succumb to that pressure before the district court can rule, the case will become moot. As explained, that is one of the main reasons why courts have commonly issued antisuit injunctions in the standards context.

To be sure, Ericsson's foreign injunctions "may not constitute a frontal assault on the district court's jurisdiction" in "technical terms," yet "the practical effect is the same"—the district court is ousted from its proper position in adjudicating the private contract rights at issue here. *Quaak*, 361 F.3d at 20. "That is a matter of considerable import: a court has a right—indeed, a duty—to preserve its ability to do justice between the parties in cases that are legitimately before it." *Id.* The district court can do no such justice with Lenovo in a vice grip between devastating

financial penalties on one side and Ericsson's monopoly pricing on the other. The Brazilian and Colombian injunctions thus "have frustrated [the district] court's ability to adjudicate issues properly before it" and "[t]he integrity of this action, therefore, will be lessened without an antisuit injunction." *Huawei*, 2018 WL 1784065, at *10 (quoting *Microsoft*, 871 F. Supp. 2d at 1100).

### 2. Ericsson's Foreign Injunctions Offend Domestic Policy and Other Equitable Considerations.

Ericsson's foreign injunctions frustrate domestic policy and other equitable considerations (factors #1 and #4). The "bulk of precedent" provides that an antisuit injunction is appropriate where the foreign injunction "would frustrate specific domestic policies against [1] injunctive relief on SEPs and general public policies against [2] anticompetitive conduct and [3] breaches of contract." *Huawei*, 2018 WL 1784065, at *9. The weight of precedent from domestic and foreign courts and government agencies, all recognizes the public good that FRAND pledges serve, the extreme tension between a SEP holder's FRAND pledge and the SEP holder's pursuit of injunctions, and the undesirability of permitting a SEP holder to use injunctions as a pressure tactic to evade its FRAND pledge.

In *Microsoft*, in affirming the district court's antisuit injunction, the Ninth Circuit observed that pursuing injunctions while a suit to determine FRAND rates is pending suggests that "the real motivation was to induce" the implementer "to agree to a license at a higher-than-[F]RAND rate." *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1046 (9th Cir. 2015).

In *Realtek*, the district court granted an antisuit injunction, observing that "the act of seeking injunctive relief" on standard essential patents "is inherently inconsistent" with a FRAND commitment, which "implies a promise not to seek injunctive relief either domestically … or abroad." 946 F.Supp.2d at 1009.

In *TCL*, the district court granted an antisuit injunction against Ericsson for similar reasons, observing "[a] reasonable fact-finder could reasonably infer that [Ericsson's] campaign of litigation was [] initiated … *to effectively force* [the implementer] to actually submit to terms that a reasonable fact-finder could find were not FRAND." *TCL Commc'n Tech. Holdings v. Telefonaktiebolaget LM Ericsson*, No. 8:14-cv-341, 2016 WL 6562075, at *4 (C.D. Cal. Aug. 9, 2016). That court explained that the "conduct of initiating infringement lawsuits and pursuing injunctive

relief can constitute something more than the more innocent conduct of merely making offers that are not, themselves, FRAND." *Id.*

The district court in *Apple Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178, 2012 WL 5416941, at *15 (W.D. Wis. Oct. 29, 2012) explained that injunctive relief and FRAND licensing commitments are in tension "from a policy and economic standpoint." *Id.* One of the fundamental purposes of a FRAND commitment is that a holder of a standard-essential patent does not "extract unreasonably high royalties from suppliers of standard-compliant products and services." *Microsoft*, 696 F.3d at 876. But an injunction excluding an implementer of the patents from major markets enables the holder to do just that.

And not just American courts, but European courts and agencies, have likewise recognized that injunctions are in sharp tension—if not outright irreconcilable—with FRAND commitments. *Id.* at 885; J.L. Contreras et al., *Litigation of Standards-Essential Patents in Europe: A Comparative Analysis*, 32 BERKELEY TECH. L.J. 1457, 1465 & nn. 40-45 (2017) (citing U.S. and Europe court decisions limiting FRAND-encumbered SEP holders' recourse to injunctions; and competition enforcement agencies acting against such requests for injunctions). The FTC, for example,

has observed the danger that a SEP holder may use "injunctive relief as 'undue leverage in negotiations' to obtain compensation in excess of the actual value of the patented technology." FTC Amicus Br., *Apple Inc. v. Motorola, Inc.*, Fed. Cir. No. 12-1548, 2012 WL 6655899, at *3 (filed Dec. 14, 2012). The FTC explained "[A] royalty negotiation that occurs under the threat of an injunction may be heavily weighted in favor of the patentee in a way that is in tension with the [F]RAND commitment. High switching costs combined with the threat of an injunction could allow the patentee to obtain unreasonable licensing terms … because implementers are locked into practicing the standard." *Id.* at *6. As the FTC's then-chairman put it more bluntly, "[C]ompanies cannot make those [FRAND] commitments when it suits them—that is, to have their patents included in a standard and then behave opportunistically later, once the standard is in place and those relying on it are vulnerable to extortion." *Realtek*, 946 F.Supp.2d at 1007 (quoting remarks of FTC Chairman Jon Leibowits).

In other words, courts and agencies around the world have recognized that Ericsson's tactics are contrary to public policy. None of this is to suggest "a *per se* rule that injunctions are unavailable for SEPs." *Apple*,

757 F.3d at 1331. If, for example, an accused infringer "outright refuses to accept a [F]RAND license," *Realtek*, 946 F.Supp.2d at 1007, or refuses to negotiate at all, that may justify an injunction in appropriate cases. But no such finding has been made in this case (nor could it.). In the mine run of cases—and especially here—injunctions for SEPs contravene public policy.

Ericsson has Lenovo in the stranglehold of a patent holdup (trying to extract rates that do not reflect the value of the patents) and, in so doing, is breaching its contractual promise to license its standard essential patents on FRAND terms. As Ericsson itself has agreed in other litigation (when it was on the other side of a holdup)—implicit in the promise Ericsson made during the standard development process is that it would "not take steps to keep would-be users from using the patented material, such as seeking an injunction, but will instead proffer licenses consistent with the commitment made." *Microsoft*, 696 F.3d at 884; Appx2590(¶148) (Ericsson arguing in other litigation that seeking injunctive relief "is contrary to and in violation of [the patent holder's] commitment to adhere to the FRAND policy which assures that no patent owner can exclude competitors from the marketplace[.]"). Ericsson's

position is particularly bizarre considering it does not contest that the ETSI policy is a binding contract or that Lenovo is an intended third-party beneficiary. Appx1053-1054(¶¶201-02).

Declining to issue an antisuit injunction here would let live Ericsson's foreign exclusion orders which offend U.S. public policies against anticompetitive conduct, breaches of contract, and injunctive relief against standard essential patents. The injunctions are anticompetitive because they enable Ericsson to extract inflated licensing terms under the threat of harsh penalties or market exclusion; they breach Ericsson's contractual commitments because Ericsson is not making its standard essential patents available on FRAND terms; and they offend the fundamental policy that injunctive relief is not appropriate in the context of standard essential patents.

### 3. Ericsson's Foreign Injunctions are Vexatious and Oppressive.

Litigation is vexatious when it is "without reasonable or probable cause or excuse; harassing; [or] annoying." *Microsoft*, 696 F.3d at 886 (quoting *Black's Law Dictionary*). Importantly, litigation may have some merit yet still be vexatious. *Id.* "'[U]nwarranted inconvenience and

expense' can suffice to constitute hardship meriting an antisuit injunction." *Ganpat*, 66 F.4th at 582 (citation omitted).

Again, *Microsoft* is instructive. There, Motorola initiated separate foreign proceedings seeking injunctive relief while the federal district court was adjudicating the contract claims at issue. *Microsoft*, 696 F.3d at 886. That "procedural maneuver," the court explained, appeared to be "designed to harass Microsoft with the threat of an injunction removing its products from a significant European market and so to interfere with the court's ability to decide the contractual questions already properly before it." *Id.*

This case is on all fours with *Microsoft*. After the district court's adjudication of the contract dispute that *Ericsson* filed was underway, Ericsson sought and obtained foreign injunctions to exclude Lenovo from significant international markets and threaten it with substantial penalties. The practical result is that Lenovo suffers significant financial pressure to submit to an inflated rate for Ericsson's patents, in order to avert irreparable losses to its operations in Brazil, Colombia, and beyond. That pressure encumbers Lenovo's ability to litigate this case on the merits.

In turn, it obstructs the district court's ability to decide the contractual question already properly before it.

The vexatious and harassing nature of Ericsson's foreign injunctions is further confirmed by the fact that Ericsson's behavior gains it nothing commercially. Lenovo and Ericsson do not compete. And whatever injury (if any) Ericsson suffers while the licensing dispute is resolved could easily be compensated with money damages. Indeed, Lenovo proposed steps to proactively address any such injury—including offering a **offer terms**—but Ericsson did not accept. Appx2611(¶3(b)).

Because Ericsson's foreign exclusion orders serve no purpose other than to harass Lenovo and cause it unnecessary expense, they are vexatious and oppressive. *Microsoft*, 696 F.3d at 886; *Ganpat*, 66 F.4th at 582.

## B. The Antisuit Injunction Would Not Have an Intolerable Effect on Comity.

The final consideration in the antisuit injunction calculus is whether the requested injunction's impact on international comity would be "tolerable." *Microsoft*, 696 F.3d at 887. At the third step, different circuits have stated different tests of weighing comity considerations. The Fourth Circuit has not taken a definitive position. *See BAE*, 884 F.3d at 479.

**Confidential Material Redacted**

Courts following what is sometimes called the "conservative approach" give relatively more weight to comity, requiring that "(1) an action in a foreign jurisdiction would prevent United States jurisdiction or threaten a vital United States policy, and (2) the domestic interests outweigh concerns of international comity" before an antisuit injunction will issue. *Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*, 491 F.3d 355, 359 (8th Cir. 2007). Courts following the so-called "liberal" approach are relatively more willing to issue antisuit injunctions—stating that they are appropriate whenever "necessary to prevent duplicative and vexatious foreign litigation and to avoid inconsistent judgments." *Id.* at 360.

Those different locutions may produce different results in close or marginal cases. But in this case, the antisuit factors are overwhelming, §II.A, *supra*, and there are no substantial comity concerns weighing against an antisuit injunction. That is so for three reasons.

*First*, this case concerns a private, contractual dispute. And in the "context of a private contractual dispute" like this one, "comity is less likely to be threatened … than in a dispute implicating public international law or government litigants." *Microsoft*, 696 F.3d at 887. The

fundamental issue for the district court to decide is whether Ericsson has violated its contractual commitment under ETSI's Intellectual Property Rights policy requiring it to license its patents on FRAND terms—and, if it has, to declare terms for a cross-license between the parties. Appx1056 (Count VII); Appx2095-2096 (Countercl. III). No matter how described, this is a "private dispute" concerning FRAND commitments that "does not raise any 'public international issues." *Microsoft*, 696 F.3d at 888. Ericsson does not dispute that fact—nor could it. Lenovo is a "private party in a contractual dispute with" Ericsson, "another private party," and this case "deals with enforcing a contract and giving effect to substantive rights." *E.&J. Gallo Winery*, 446 F.3d at 994.

Courts widely agree that "an anti-suit injunction in the service of 'enforcing a contract' between private parties does not 'breach norms of comity.'" *Microsoft*, 696 F.3d at 888 (quoting *E.&J. Gallo Winery*, 446 F.3d at 994). Ericsson and Lenovo are not government entities, nor are any government entities implicated by the requested injunction. It thus "has no obvious consequences for international relations." *Ganpat*, 66 F.4th at 583. As such, "comity concerns are at a minimum." *Id.*

*Second*, Ericsson only sought expedited foreign injunctive relief after the case that it filed was underway. "The order in which the domestic and foreign suits were filed, although not dispositive, may be relevant to this determination depending on the particular circumstances." *Microsoft*, 696 F.3d at 887. In particular, "enjoining [a] foreign action" where it was subsequently filed does "not 'intolerably impact comity'" because the later filed suit "raises the concern that [the] party is attempting to evade the rightful authority of the district court." *See id.* (simplified)).

More than a month after it filed suit against Lenovo in the U.S., Ericsson sought and obtained injunctions in Brazil and Colombia. Its reason for doing so is not that the district court cannot provide complete relief (it can) or that Ericsson will be irreparably harmed by Lenovo's operations in those countries (money damages, if any, would be sufficient and Lenovo offered to ██offer terms██ toward licenses terms to be sorted out by the district court, Appx2611(¶3(b)). Rather, it was to exert pressure on Lenovo—sandwiched between exclusion from key markets or massive financial penalties—to accept supra-FRAND licensing terms before the district court had the chance to declare proper terms.

It would thus not be an affront to comity for this court to enjoin Ericsson's attempt to evade the rightful authority of the district court.

*Third*, Lenovo seeks only to prevent Ericsson from enforcing the Brazilian and Colombian injunctions while this suit is pending—not from litigating the foreign cases on the merits. The scope of the antisuit injunction sought is "another factor relevant to the comity inquiry" because "[c]omity teaches that the sweep of the injunction should be no broader than necessary to avoid the harm on which the injunction is predicated." *Microsoft*, 696 F.3d at 887 (citing *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 933 n.81 (D.C. Cir. 1984)).

The proposed injunction leaves Ericsson free to continue litigating "its [foreign] patent claims against [Lenovo] as to damages or other non-injunctive remedies to which it may be entitled." *Id.* at 889. Further, it would not "run against a foreign official or agency" and plainly would not "ruffle the smooth surface of our relations with [Colombia and Brazil]." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 432 (7th Cir. 1993). "Indeed, depending on the outcome of the district court litigation, [Ericsson] may well ultimately be able to enforce the [foreign] injunction[s]." *Microsoft*, 696 F.3d at 889.

Ultimately, the "only concern with international comity is a purely theoretical one that ought not trump a concrete and persuasive demonstration of harm" to Lenovo "if it is denied, not offset by any harm to [Ericsson] if it is granted." *Allendale Mut. Ins. Co.*, 10 F.3d at 432-433. There is no conceivable threat to international comity from the injunction Lenovo requested here.

## CONCLUSION

For the foregoing reasons, the Court should reverse the decision below, and order the district court to enter Lenovo's requested antisuit injunction.

March 22, 2024                              Respectfully submitted,

                                          */s/ John C. O'Quinn*

Greg S. Arovas                            John C. O'Quinn
Leslie M. Schmidt                         F. Christopher Mizzo
KIRKLAND & ELLIS LLP                      Jason M. Wilcox
601 Lexington Avenue                      William H. Burgess
New York, NY 10022                        Diva Hollis
(212) 446-4800                            Lucas H. Funk
                                          KIRKLAND & ELLIS LLP
                                          1301 Pennsylvania Avenue N.W.
                                          Washington, DC 20004
                                          (202) 389-5000

# ADDENDUM

Order denying appellants' motion for antisuit injunction
(Dkt. 71, Feb. 14, 2024) ...................................................... Appx1-18

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-00569-BO

| | |
|---|---|
| TELEFONAKTIEBOLAGET LM ERICSSON | ) ) ) |
| Plaintiff, | ) |
| v. | ) ) |
| LENOVO (UNITED STATES), INC.; LENOVO (SHANGHAI) ELECTRONICS TECHNOLOGY CO. LTD.; LENOVO BEIJING, LTD.; LENOVO GROUP, LTD.; MOTOROLA (WUHAN) MOBILITY TECHNOLOGIES COMMUNICATION CO., LTD; and MOTOROLA MOBILITY, LLC, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |
| LENOVO (UNITED STATES), INC., and MOTOROLA MOBILITY, LLC, | ) ) ) |
| Counterclaim-Plaintiffs, | ) ) |
| v. | ) ) |
| TELEFONAKTIEBOLAGET LM ERICSSON, ERICSSON AB, and ERICSSON INC. | ) ) ) ) |
| Counterclaim-Defendants. | ) |

O R D E R

This matter is before the Court on Defendants and Counterclaim-Plaintiffs Lenovo (United States), Inc. ("Lenovo US") and Motorola Mobility LLC's motion for temporary restraining order and anti-suit injunction. [DE 35]. Lenovo US and Motorola Mobility seek an anti-suit injunction

prohibiting Plaintiff and Counterclaim-Defendant Telefonaktiebolaget LM Ericsson from enforcing injunction orders issued in foreign jurisdictions.

The motion for TRO and anti-suit injunction has been fully briefed. The Court held a hearing on 11 January 2024 in Elizabeth City, NC, where Ericsson, Lenovo US and Motorola Mobility were represented by counsel. The motion is ripe for decision. For the following reasons, the Court denies Lenovo's motion for an anti-suit injunction.

## BACKGROUND

Lenovo and Ericsson are major players in the mobile telecommunications industry.[1] Their patent portfolios comprise domestic and international patents implemented into cellphones and other cellular network applications. For over a decade, the parties have negotiated towards a global cross-licensing agreement that would allow Lenovo and Ericsson to implement the other's essential patents into their devices. Recent negotiations have focused on patents essential to the 5G network. They have not proved fruitful, and the parties have taken their dispute to the courts. And not only in the Eastern District of North Carolina but also Brazil, Colombia, and the United Kingdom.

Now, Lenovo moves for an anti-suit injunction to prevent Ericsson from enforcing injunction orders it obtained against the sale of Lenovo products in foreign jurisdictions, particularly Colombia and Brazil. Because the parties are bound together by a common commitment to industry practices, understanding those commitments and their implications is essential to resolving the instant motion.

---

[1] As the caption makes clear, Lenovo and Ericsson are multinational corporations comprising domestic and international subsidiaries and affiliates. Throughout this Order, the Court will refer to Lenovo and Ericsson collectively deviating only where there is a meaningful distinction between the various subsidiaries and affiliates.

Appx00002

The Court ventures to say that most consumers are unaware, perhaps blissfully so, of the inner workings of cellular networks. One of the features that most take for granted is the ability to send and receive text messages, e-mails, and phone calls regardless of who manufactured the device, who designed its operating system, and which carrier facilitates their network connection. This seamless interconnectivity has a technical term: interoperability.

Interoperability is the result of technical standards set by private organizations, organizations known, aptly, as standard development organizations ("SDOs"). The standards govern how cellular devices access the cellular network by setting forth the technical specifications that act like a blueprint for manufacturers and network operators. The European Telecommunications Standards Institute, a foremost SDO in the telecommunications industry, helped promulgate the 3G, 4G, and 5G standards through its participation in the 3rd Generation Partnership Project ("3GPP"). Both Lenovo and Ericsson are members of the ETSI. When the ETSI and other members of the 3GPP set standards, they often incorporate patented technology created by members of the SDO. A patent that is selected to be part of the standard is known as a standard essential patent. What makes the patent essential is the impossibility of complying with the standard without infringing on that patent.

Standards do more than just facilitate interoperability. Standards are good for the consumer because they also lower costs and increase price competition. *Microsoft*, 696 F.3d 876. Standards are great for patent holder because they contain the seeds of disproportionate market power. Once a standard has been accepted by the market, the patent holder is positioned to extract high royalties from those who wish to implement the SEPs. If the implementer wants to offer products connected the latest and best technology, they have a choice: The implementer can license the essential patent from the patent holder at the terms set by the patent holder, or the implementer can infringe on the

3

Appx00003

essential patent and risk a patent infringement lawsuit. *See HTC Corp. v. Telefonaktiebolget LM Ericsson*, 12 F.4th 476, 481 (5th Cir. 2021).

To combat such an imbalance, known as "patent holdup," many SDOs tip the scales towards equipoise by imposing conditions on essential patents. *Id.* The ETSI's IP rights policy checks anti-competitive behavior by securing voluntary commitments from the owners of would-be essential patents to license their patents on fair, reasonable, and non-discriminatory terms ("FRAND"). Specifically, Clause 6.1 of the IP rights policy requires the patent holder to commit to "an irrevocable undertaking in writing that it is prepared to grant irrevocable licenses on fair, reasonable, and non-discriminatory ("FRAND") terms and conditions . . . [which] may be made subject to the condition that those who seek licenses agree to reciprocate." Comp. ¶34. [DE 1]; Countercls. ¶24, [DE 29]. This commitment undercuts the patent holder's ability to engage in anti-competitive behavior. Companies seeking to license the essential patents become third-party beneficiaries of the contract between the essential patent holder and the ETSI, ensuring that they will be able to license the essential patent at a FRAND rate. *HTC*, 12 F.4th at 481.

This commitment to offer a FRAND rate, powerful as it may be, binds ETSI members to a goal while leaving how to get there up to the patent holders and implementers. That is, the patent holder is required only to offer license terms that are FRAND. How the parties arrive at those terms and what it takes to hammer out a deal is left for the parties to determine. *See* Adam Mossoff, *Patent Injunctions and the FRAND Commitment: A Case Study in the ETSI Intellectual Property Rights Policy*, 38 Berkeley Tech. L.J. 487, 498 (2023).

Ericsson and Lenovo hold essential patents (either directly or through their related entities) incorporated in the 5G cellular standard. Both are members of the ETSI. Both have agreed that they are prepared to grant licenses to implementers on FRAND terms. And both agree that they

4

Appx00004

are beneficiaries of the other's commitment. What they haven't been able to agree on is the terms of a global cross-license, and not for a lack of trying.

Ericsson and Lenovo have negotiated over a global cross-license for various essential patents for over a decade. During these negotiations Lenovo purchased Motorola, which entered into a licensing agreement with Ericsson in 2011. What started as a negotiation for 2G and 3G essential patents has evolved, as technology does, into a dispute over 4G and 5G essential patents. The most recent phase of those negotiations—the phase over 5G essential patents—is what matters for the motion currently before the Court.

In 2017 Ericsson publicly announced its 5G royalty rates in advance of the 3GPP's announcement of the 5G standard. Ericsson states that it was prepared to grant licenses at a rate of $5 per 5G device with a floor of $2.5 per device. Around that same time, Lenovo and Ericsson's negotiations began to include discussion over the 5G patents. In 2018, Lenovo and Ericsson mediated with both exchanging offers the other considered not FRAND. Since then, the parties seem to have spent much of their time negotiating non-disclosure agreements that would facilitate the sharing of confidential information about the essential patents. Compl. 80–81, [DE 1]; Countercls. ¶¶32–40, [DE 29].

On 11 October 2023, Ericsson made an offer to cross-license its portfolio of 5G standard essential patents at a rate of 1% per 5G device with a $4 cap. Mem. in Opp'n, Ex. 5, [DE 47-7]. An offer, Ericsson highlights that is below its publicly announced FRAND rate of $5 per device. Additionally, Ericsson maintains that rate for its 5G patent portfolio is FRAND because the Fifth Circuit recently affirmed a jury verdict declaring that same rate to be FRAND for Ericsson's 4G patents. *HTC Corp. Telefonaktiebolaget LM Ericsson*, 407 F.Supp.3d 631, 633–641 *aff'd*, 12 F.4th 476 (5th Cir. 2021).

The day Ericsson offered a global cross-license at a rate of 1% per 5G device capped at $4 per device, it filed its complaint before the Court:

- Count 1 through Count 4 allege that Lenovo infringes on four of Ericsson's domestic 5G essential patents.

- In Count 5, Ericsson alleges that Lenovo breach obligations created by the ETSI IP rights policy. Specifically, that once Lenovo began negotiations for FRAND terms it was obligated under French law to negotiate in good faith;

- In Count 6, Ericsson alleges that Lenovo breached its contractual commitments under the ETSI IP rights policy which Lenovo is entitled to rely on as a third-party beneficiary of Ericsson's commitments to the ETSI;

- Count 7 asks for a declaration that Ericsson's 11 October 2023, offer complied with its FRAND commitment. And, if the Court declares that offer was not FRAND, Ericsson requests the Court declare a FRAND rate for a global-cross license.

Compl. ¶¶ 146–222, [DE 1]. In December, Lenovo US and Motorola Mobility asserted counterclaims that largely mirror Ericsson's complaint:

- Count 1 alleges that Ericsson breached its obligations under the ETSI IP rights policy;

- Count 2 claims that Ericsson breached its obligation under the ETSI IP rights policy to negotiate in good faith when it refused to offer its essential patents on FRAND terms;

- Count 3 seeks a declaration setting FRAND royalty rates for a global patent cross-license between Ericsson and Lenovo US;

- Count 4 through Count 7 allege that Ericsson infringes on four of Motorola Mobility's essential 5G patents.

Countercls. ¶¶ 42, 50, 55, 60, 90–125, [DE 29].

In addition to their claims and counterclaims before this Court, Lenovo and Ericsson have filed parallel complaints with the United States International Trade Commission:

- On 11 October 2023, Ericsson filed an ITC complain covering the four 5G SEPs that are the subject of its patent infringement claims here. On 12 December

6

2023, Ericsson filed another complaint covering four patents that it claims are essential to the HEvCH/H.265 Video Standard. Opp'n 9–10, [DE 47].

- On 16 December 2023. Motorola Mobility filed an ITC complaint against Ericsson LM, Ericsson AB, and Ericsson Inc. alleging unlawful importation, sale for importation, and sale within the Untied States after of 5G New Radio antenna units that incorporate the Four SEPs asserted in its counterclaims before this Court. Opp'n, Ex. 14, [DE 48-5].

The Eastern District is just one front in the parties' dispute. Since Ericsson filed its complaint in October, the parties have been busy litigating in foreign jurisdictions. On 13 October 2023, two days after Ericsson filed its complaint here, Lenovo filed an action in the High Court of England and Wales:

- Lenovo US and Motorola Mobility's action seeks, among other things, a determination of FRAND terms for a global cross-license agreement between Lenovo and Ericsson, and Lenovo provided an undertaking to the UK court that it will enter into a license agreement determined FRAND as a result of the UK proceedings.

- On 15 December 2023, Lenovo amended its complaint to include a request for injunctive relief against infringement of its UK patents. Specifically, Lenovo seeks an injunction preventing Ericsson from infringing on its UK patent, provided that such an injunction will be lifted if the parties enter a license agreement on FRAND terms.

- For its part, Ericsson contests the UK court's jurisdiction over the FRAND related claims but does not contest that the UK court has jurisdiction to hear Lenovo's UK patent infringement claim.

Mem. in Supp. 11–12, [DE 40]; Opp'n 10, [DE 47]; Opp'n, Ex. 13 ¶¶ 10A, 56, 56A, [DE 48-4].

On 20 November 2023, Ericsson began filing a series of patent infringement actions in Colombia:

- On 20 November 2023, Ericsson filed a patent infringement action against Lenovo's Colombian affiliate, Motorola Mobility Colombia S.A.S. as well as several of Lenovo's customers.

- Under Colombian law, owners of intellectual property can get an injunction from the Superinterdencia de Industria y Comercio ("SIC"), an administrative office with judicial power of trademark and patent infringement.

7

- On 13 December 2023, the SIC enjoined Motorola Mobility Colombia to cease marketing, offering for sale, selling, using or importing certain 5G cell phones.

Supp., Ex. 3 ¶¶ 16, 17, 19, [DE 40-3]; Opp'n, Ex. 2 ¶ 20, [DE 47-4].

The day after Ericsson began its Colombian actions, Ericsson filed an action for patent infringement in Brazil:

- At issue were two of Ericsson's Brazilian patents that it claims are essential to the ETSI's 5G standard. Ericsson alleges that Lenovo's Brazilian affiliates, Lenovo Technologia Brasil LTDA and Motorola Mobility Comercio De Productos LTDA infringed on those essential patents.

- Ericsson requested a preliminary injunction enjoining Lenovo from infringing on its Brazilian patents.

- Lenovo responded on 23 November opposing the injunction and moved to seal the case, which the Brazilian court did.

- On 27 November 2023, the Brazilian court entered a preliminary injunction. Lenovo must refrain from implementing the 5G essential patents at issues. The injunction would not take effect until 20 December 2023.

- On 11 December 2023, Lenovo's interlocutory appeal was denied; a week later, its motion for reconsideration was also denied.

Supp., Ex. 2 ¶ 4, [DE 37-1]; Opp'n, Ex. 1 ¶¶ 20, 24, 25, [DE 47-3].

From Lenovo's perspective, the Brazilian and Colombian injunctions pose significant challenges to its global strategy. Brazil and Colombian are growing markets for Lenovo's 5G offerings. Supp., Ex 1 ¶¶ 8, 10, 11, [DE 37]. And it alleges that Ericsson pursued injunctions in those jurisdictions because of their strategic importance to Lenovo and the relative ease, in Lenovo's opinion, of obtaining injunctive relief in those jurisdictions as compared to the United States. Lenovo casts Ericsson's action in Brazil and Colombia as an attempt to coerce Lenovo into accepting supra-FRAND terms. For its part, Ericsson responds that foreign courts have jurisdiction to enforce the rights of patent holders within their territorial bounds according to their procedures.

8

Appx00008

Ericsson views Lenovo actions as a refusal to negotiate in good faith, alleging that Lenovo is implementing Ericsson's essential patents without paying its fair share.

On 29 December 2023, Lenovo US and Motorola Mobility filed an application for a TRO and anti-suit injunction in this Court. [DE 35]. Lenovo states that the essential patents at the heart of the foreign injunctions are subject to Ericsson's commitment to the ETSI to license on FRAND terms, an issue that is squarely before this Court and the UK court. Thus, according to Ericsson, the foreign injunctions will be resolved through a payment of money damages and that issue should be resolved without the pressure of the Brazilian and Colombian injunctions.

On 2 January 2024, Ericsson responded to Lenovo's motion. Ericsson contends that the Brazilian and Colombian actions involve foreign patent rights enforceable in the courts of the foreign sovereigns. Any attempt to collaterally attack the foreign injunctions, Ericsson argues, offends norms of international comity and thus amounts to nothing more than a delay tactic.

On 11 January 2024, the Court held a hearing on Lenovo's motion for anti-suit injunction. Ericsson and Lenovo US and Motorola Mobility were represented by counsel. The motion is ripe for decision.

## DISCUSSION

Before the Court can address whether an anti-suit injunction is warranted, it must first address the form such equitable relief would take. Lenovo styled its motion as a request for a temporary restraining order yet asked the Court to preliminary enjoin Ericsson from enforcing the Brazilian and Colombian injunctions until the FRAND licensing dispute is resolved. One of the key distinctions between a TRO and the preliminary injunction is that the former is inherently limited in duration while the latter has no inherent constraints. *Compare* Fed. R. Civ. P. 65(a) *with*

Appx00009

65(b). Thus, Lenovo's motion has the procedural trappings of a TRO but the substance of as motion a preliminary injunction.

Federal Rule of Civil Procedure 65 governs both TROs and preliminary injunctions in a fluid interplay. *See Ciena Corp. v. Jarrad*, 203 F.3d 312, 319–20 (4th Cir. 2000). Because of this fluidity, district courts may properly treat a motion for a TRO as a motion for a preliminary injunction provided the non-moving party has a fair opportunity to oppose the motion. *See U.S. Dep't of Lab. v. Wolf Run Mining Co., Inc.*, 452 F.3d 275, 283 (4th Cir. 2006).

This fair opportunity comes down to notice. How much notice must be given before the Court can enter the preliminary injunction? Rule 65 doesn't say. *Ciena Corp.* 203 F.3d at 319. Instead, Rule 65's notice requirement is "more substantive than technical, requiring a defendant be given a fair opportunity to oppose the application, as distinct from a specified number of hours or days." *Wolf Run Mining*, 452 F.3d at 283 (internal quotation marks and citations omitted).

The Court has little trouble concluding that Rule 65's substantive requirement has been met here. Lenovo moved for a TRO on 29 December 2023. [DE 35]. Ericsson filed a memorandum in opposition on 2 January 2024. [DE 47]. That same day, the Court set a date for the hearing on 11 January 2024, 13 days after Lenovo filed its motion for a TRO. A duration more than sufficient to give Ericsson a fair opportunity to oppose Lenovo's motion for injunctive relief. *See Wolf Run*, 452 F.3d at 281–84 (holding that notice within 24 hours of the hearing provided fair opportunity to oppose preliminary injunction); *Cienna*, 203 F.3d at 320 (concluding that 2 days' written notice of hearing on TRO converted into a preliminary injunction did not deny fair opportunity to oppose). What's more, not only does Ericsson not object to converting Lenovo's request for a TRO into a preliminary injunction but it expressly asked the Court to do so. Opp'n 29, [DE 47]. Accordingly, the Court treats Lenovo's motion for a TRO as a motion for a preliminary injunction.

An "extraordinary remedy never awarded as of right[,]" a preliminary injunction forces courts of equity to balance the parties competing claims of injury with the effect that granting the injunction would have on each party as well as the consequences to the public. *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 24 (2008). The competing concerns animating the extraordinary nature of preliminary injunctions are heightened when the equitable powers of the federal courts are sought to enjoin parties from litigating in foreign courts. Although an anti-suit injunction ostensibly operates only against the parties not the foreign court, "such an order effectively restricts the jurisdiction of the court of a foreign sovereign." *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987). Thus, while a district court with jurisdiction over the parties has the power to enjoin them from proceeding with a parallel lawsuit in a foreign country, that power should be exercised "sparingly." *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 479 (4th Cir. 2018) (internal quotations marks and citation omitted).

The anti-suit injunction has consequences not present in a run-of-the mill preliminary injunction. As a result, the standard test for a four-part test preliminary injunction is inapposite. *See Ganpat v. E. Pac. Shipping PTE, Ltd.*, 66 F.4th 578, 584–85 (5th Cir. 2023) (explaining that the traditional four-part test has never been a part of the circuit's analysis for an anti-suit injunction); *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 991 (9th Cir. 2006) (holding that the movant "need only demonstrate that the factors specific to an anti-suit injunction weigh in favor of granting the injunction."); *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 19 (1st Cir. 2004) (counseling district court that they "have no obligation to employ [the traditional four-part test]" when dealing with international antisuit injunctions). Instead, the propriety of an anti-suit injunction is assessed in three-steps. *See, e.g.*,

*BAE Sys. Tech. Sol. & Servs., Inc. v. Rep. of Korea's Def. Acquisition Program Admin.*, 195 F.Supp.3d 776, 786 (D. Md. 2016).

First, the movant must satisfy two threshold requirements: (1) that the parties and issues are the same in both matters and (2) that resolution of the case before the enjoining court is dispositive of the action to be enjoined. *E.g., Microsoft*, 696 F.3d at 882. And, because the threshold requirements must be satisfied before the factors in the second step can be considered, this first step might be the only step. *See Canon Lat. Am., Inc. v. Lantech (CR), S.A.*, 508 F.3d 597 (11th Cir. 2007); *Quaak*, 361 F.3d at 18 ("The gatekeeping inquiry is, of course, whether parallel suits involve the same parties and issues."); *Sanofi-Aventis Deutschland GmbH v. Genetech, Inc.*, 716 F.3d 588, 595 (Fed. Cir. 2013) (Dyk, J., concurring) (stating that the majority opinion was wrong to consider additional factors when the threshold considerations were not met).

Second, the movant must show that at least one of the anti-suit injunction factors applies. *Microsoft*, 696 F.3d at 881. These factors include "whether the foreign litigation would (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's *in rem* or *quasi in rem* jurisdiction; or (4) where the proceedings prejudice other equitable consideration." *Id.* at 882 (cleaned up) (quoting *E & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 989 (9th Cir. 2006)). In addition, the Second Circuit considers a fifth factor—whether the parallel litigation would result in delay, inconvenience, expense, inconsistency, or race to judgment. *See Karaha Bodas Co. L.L.C. v. Perusahaan Pertambanagan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 119 (2d Cir. 2007).

Third, if the threshold requirements are met and at least one of anti-suit injunction factors applies, the court assesses the injunction's effect on international comity. " 'Comity' summarizes in a brief word a complex and elusive concept—the degree of deference that a domestic forum

must pay to the act of foreign government not otherwise binding on the forum." *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984). In practice, comity serves as the mortar that cements the brick house of the international system. *Id.* Care must be taken to preserve this mortar even where litigation involves private parties because enjoining a party from proceeding in a foreign court effectively restricts the jurisdiction of a foreign sovereign's courts. *See China Trade*, 837 F.3d at 35.

Almost all of the circuit courts have adopted one of two approaches to weighing the effect of an anti-suit injunction on international comity—the restrictive "conservative approach" or the permissive "liberal approach."[2] These labels come from how much weight each approach accords to international comity: The liberal approach places less weight on international comity whereas the conservative test places greater emphasis on international comity. *See Quaak*, 361 F.3d at 17–19 (outlining the two approaches and adopting the conservative approach because "the liberal approach assigns too low a priority to [international comity]"); *BAE Sys.*, 884 F.3d at 479 ("The principal different is that the liberal approach accords less weight to international comity concerns."). Although the liberal approach places a modest emphasis on international comity, an injunction will issue "whenever there is a duplication of parties and issues and the court determines that the prosecution of simultaneous proceedings would frustrate the speedy and efficient determination of the case." *Quaak*, 361 F.3d at 17. Under the conservative approach, however, an

---

[2] The liberal approach has been adopted by the Fifth and Ninth Circuits. *See Ganpat*, 66 F.4th 578 (5th Cir.); *Gallo*, 446 F.3d 984 (9th Cir). The conservative approach has been adopted by the First, Second, Third, Sixth, Eight, and District of Columbia Circuits. *See Quaak*, 361 F.3d 11 (1st Cir.); *China Trade*, 837 F.3d 33 (2d Cir.); *GE v. Deutz AG*, 270 F.3d 144, 161 (3d Cir. 2001); *Gau Shan Co., Ltd. v. Bankers Tr. Co.*, 956 F.3d 1349, 1352–54 (6th Cir. 1992); *Goss Int'l Corp v. Man Rolan Druckmaschinen Aktiengelsellschaft*, 491 F.3d 355, 359–61 (8th Cir. 2007); *Laker Airways,* 713 F.2d 909 (D.C. Cir). The Seventh Circuit hasn't committed to either approach but has signaled that it is "inclined towards the laxer standard." *1st Source Bank v. Neto*, 861 F.3d 607, 613 n.2 (7th Cir. 2017). The Federal Circuit has employed the liberal test because it applies the law of the regional circuit when dealing it handles issue not unique to patent law. *Sanofi-Aventis*, 716 F.3d at 591–92.

13

"antisuit injunction will issue only if the movant demonstrates (1) an action in a foreign jurisdiction would prevent United States jurisdiction or threaten a vital United States policy, and (2) the domestic interests outweigh concerns of international comity." *Goss Int'l*, 491 F.3d at 359.

The Fourth Circuit has not weighed in on the proper test to apply. *BAE Systems*, 884 F.3d at 479. Without clear guidance from the circuit, some district courts have resorted to using both approaches. *See, e.g.*, *Custom Polymers PETs, LLC v. Gamma Meccanica SPA*, 185 F.Supp.3d 741, 757–61 (D.S.C. 2016). The Court does not need to commit itself to an approach at this time. Deciding which approach to apply is a consideration that comes only after the first two steps are resolved in favor of the anti-suit injunction. So the Court will address the steps in order reaching the third-step only if necessary.

Again, the first step is "whether or not the parties and the issues are the same, and whether or not the first action is dispositive of the action to be enjoined." *Sanofi-Aventis*, 716 F.3d at 591. The parties need not be identical. It is enough that they are "substantially similar." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Information Tech., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004); *Quaak*, 361 F.3d at 20. On this Lenovo and Ericsson agree. Supp. 14, [DE 40]; Opp'n 19, [DE 47].

Ericsson argues that Lenovo cannot show substantial similarity because the Lenovo entities seeking the anti-suit injunction—Lenovo US and Motorola Mobility—are not the Lenovo entities enjoined in Brazil and Colombia. What's more, the Lenovo entities here can neither show that they are the controlling shareholders of Lenovo' Brazilian and Colombian entities nor that they can otherwise control them. Ericsson also points out that the parent company that controls all Lenovo entities, Lenovo China, has neither appeared nor accepted service in this case.

The decisive point is that the Brazilian and Colombian entities—Lenovo Tecnologia Brasil, Motorola Mobility Comercio De Produtos Electronicos LTDA, and Motorola Mobility Colombia S.A.S—are named in the Brazilian and Colombian actions because of their identity with Lenovo US. *See Paramedics*, 369 F.3d at 652. It's not a secret that the Brazilian and Colombian actions are a direct result of Lenovo US's negotiations with Ericsson. Although Ericsson stresses that Lenovo US does not control the foreign entities, the record supports that Lenovo US has the authority to negotiate with Ericsson to reach a global patent cross-license comprising both Lenovo US's and its related entities essential patents. Answer ¶ 215, [DE 29]. And it is undisputed that the Brazilian and Colombian entities are part of the Lenovo family, a family that Ericsson alleges acts as a "unitary business venture." Compl. ¶18, [DE 1]. Thus, the Court concludes that Lenovo US is substantially similar with the foreign defendants in the one way that really matters here.

Although stated as two components of the threshold inquiry, whether the issues in the domestic and foreign actions are the same and whether the first action is dispositive of the foreign action to be enjoined operate as one requirement. *Microsoft*, 696 F.3d at 882–83; *see also Sanofi-Aventis*, 716 F.3d at 591 ("[T]he issues need not be identical; it is enough they are functionally the same such that the result in one action is dispositive of the other." (citing *Applied Med. Distrib. Corp. v. Surgical Co. BV*, 587 F.3d 909, 915 (9th Cir. 2009))). The Court reads "dispositive" based on its ordinary usage as being outcome determinative. *See Canon*, 508 F.3d at 601 n.8 (concluding, "in the interest of international comity and judicial restraint," that dispositive means to settle or finish a dispute).

Lenovo argues that the underlying licensing dispute before the court will be dispositive of the Brazilian and Colombia actions. Because those actions involve claims for patent infringement on 5G essential patents covered by Ericsson's FRAND commitment and Ericsson has included

Appx00015

those patents in its global licensing offer, Lenovo reasons that resolving the FRAND rate in either this Court or the UK court will necessarily moot the foreign actions. What's more, Lenovo highlights that its counterclaim for declaratory relief asks the Court to set FRAND terms for a global-cross license covering those SEPs in the foreign proceedings. So even if it won't accept Ericsson's offer if it is declared FRAND, Lenovo contends that it will accept the FRAND rate set by the Court.

Lenovo's arguments are unpersuasive. The rub is that Lenovo conflates two separate issues arising from the parties' ETSI commitments and glosses over the nuances of Ericsson's position. Regarding the ETSI commitments, there are two issues: was Ericsson's 11 October offer FRAND? And what is FRAND rate for a global cross-license? Lenovo represents that the issue of setting a global rate is squarely before the Court. But it is more complicated than Lenovo leads on. On the one hand, Lenovo US requests a declaration of a FRAND rate for a global cross-license. Countercls. ¶89, [DE 29]. Ericsson, on the other hand, first requests a declaration that it's 11 October offer is FRAND, and should the Court conclude it wasn't, for the Court to declare a FRAND royalty rate for a global cross-license on essential patents. Compl. 59–60, [DE 1]. So unlike Lenovo request for declaratory judgment on a FRAND rate, Ericsson's request is contingent on the Court resolving the antecedent issue of the FRAND offer.

So, what happens if Ericsson's 11 October offer is FRAND? Lenovo has neither committed to accepting Ericsson's offer if its FRAND nor would it be forced to. Instead, Lenovo would be presented with the choice between (1) accepting the FRAND offer, (2) rejecting it and not implementing Ericsson's essential patents, or (3) rejecting it, implementing the essential patents, and exposing itself and its related entities to actions for infringement. *See Ericsson Inc. v. Apple Inc.*, No. 2:21-cv-00376-JRG, (E.D. Tex. May 2, 2022) (explaining the options available after an

Appx00016

offer is adjudicated FRAND). It is not the business of the federal courts to draft agreements for the parties, and it makes little sense to start now. *See Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178, 2012 WL 5416931, at *1 (W.D. Wis. Nov. 2, 2012) (reasoning that it would be inappropriate to determine "a FRAND rate that may be used solely as a negotiating tool between the parties"); *InterDigital Commc'ns, Inc. v. ZTE Corp.*, 1:13-cv-00009, 2014 WL 2206218, at *3 (D. Del. May 28, 2014) (same).

Lenovo maintains that the Ninth Circuit's decision in *Microsoft* should control the outcome here. 696 F.3d 872. In *Microsoft*, the Ninth Circuit concluded that the district court had not abused its discretion in granting an anti-suit injunction because of the character of the underlying contract dispute. 696 F.3d at 882–85. So too here is the underlying contract dispute controlling. The meaningful distinction is that holding the parties to their obligations in the ETSI IP rights policy will not necessarily result in a global cross-license that resolves the foreign patent actions. This conclusion does not rest on the territorial nature of the Brazilian and Colombian essential patents. Only the courts of those sovereigns can resolve claims for infringement on their respective patents. *Id.* at 882; *see also Canon*, 508 F.3d at 602 (collecting cases where injunctions were vacated because foreign suits involved foreign rights enforceable in courts of the sovereign). Instead, the Court, like the Ninth Circuit in *Microsoft*, reasons from the effect that resolving the underlying contract claims under the ETSI IP rights policy would have on the foreign infringement actions.

In sum, the Court is not persuaded that resolving the underlying contract issues will force either Lenovo or Ericsson into a global licensing agreement that would resolve the patent infringement claims at the core of the Brazilian and Colombian actions. Thus, Lenovo has failed to satisfy that the threshold requirements. Its motion for an anti-suit injunction is, therefore, denied.

<u>CONCLUSION</u>

For these reasons, the Court **DENIES** Lenovo US and Motorola Mobility's motion for a temporary restraining order and anti-suit injunction. [DE 35].

SO ORDERED, this _13_ day of February 2024.


TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

## RULE 25.1(e)(2) CERTIFICATE OF CONFIDENTIAL MATERIAL

In this brief, **34** unique words are marked confidential. A motion to waive the 15-word limit has been filed under Fed. Cir. R. 25.1(d)(3).

*/s/ John C. O'Quinn*

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATIONS

This brief complies with the type-volume limitations of the Federal Rules of Appellate Procedure and the Rules of this Court. The brief contains **10,280** words.

*/s/ John C. O'Quinn*

## CERTIFICATE OF SERVICE

On March 22, 2024, the non-confidential version of this brief was filed by CM/ECF, and the non-confidential and confidential versions were served by e-mail to the following counsel for appellees, under the parties' agreement to accept electronic service:

Jeffrey A. Lamken, principal counsel for appellees
(jlamken@mololamken.com)
Blake H. Bailey (bbailey@mckoolsmith.com)
Alexander J. Chern (achern@mckoolsmith.com)
Kayvon Ghayoumi (kghayoumi@mololamken.com)
Rayiner Hashem (rhashem@mololamken.com)
Caleb Hayes-Deats (chayes-deats@mololamken.com)
Catherine Martinez (cmartinez@mololamken.com)
Nicholas M. Mathews (nmathews@mckoolsmith.com)
Theodore Stevenson (ted.stevenson@alston.com)
Lucas M. Walker (lwalker@mololamken.com)

*/s/ John C. O'Quinn*