No. 2024-1515

IN THE

# United States Court of Appeals

## FOR THE FEDERAL CIRCUIT

TELEFONAKTIEBOLAGET LM ERICSSON,

*Plaintiff/Counterclaim Defendant-Appellee*,

ERICSSON AB, ERICSSON, INC.,

*Counterclaim Defendants-Appellees*,

v.

LENOVO (UNITED STATES), INC., MOTOROLA MOBILITY LLC,

*Defendants/Counter-Claimants-Appellants*,

LENOVO (SHANGHAI) ELECTRONICS TECHNOLOGY CO. LTD., LENOVO BEIJING, LTD., LENOVO GROUP LIMITED, MOTOROLA (WUHAN) MOBILITY TECHNOLOGIES COMMUNICATION CO., LTD.,

*Defendants*.

On Appeal from the United States District Court
for the Eastern District of North Carolina
No. 5:23-cv-00569, Judge Terrence W. Boyle

---

### APPELLEES' NON-CONFIDENTIAL
### RESPONSE BRIEF

---

Theodore Stevenson, III
ALSTON & BIRD LLP
Chase Tower, Suite 2300
2200 Ross Avenue
Dallas, TX  75201
(214) 922-3400 (telephone)
ted.stevenson@alston.com

Jeffrey A. Lamken
  *Counsel of Record*
MOLOLAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
(202) 556-2000 (telephone)
jlamken@mololamken.com

*Counsel for Appellees*
*(Additional Counsel Listed on Next Page)*

Blake H. Bailey
McKool Smith, P.C.
600 Travis Street, Suite 7000
Houston, TX 77002
(713) 485-7300 (telephone)
bbailey@mckoolsmith.com

Nicholas M. Mathews
Alexander J. Chern
McKool Smith, P.C.
300 Crescent Court, Suite 1200
Dallas, TX 75201

Lucas M. Walker
Rayiner Hashem
Caleb Hayes-Deats
Kayvon Ghayoumi
MoloLamken LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037

Catherine Martinez
MoloLamken LLP
430 Park Avenue
New York, NY 10022

*Counsel for Appellees*

**FORM 9. Certificate of Interest**

**Form 9 (p. 1)**
**March 2023**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 2024-1515

**Short Case Caption** Telefonaktiebolaget LM Ericsson v. Lenovo (United States), Inc.

**Filing Party/Entity** Telefonaktiebolaget LM Ericsson; Ericsson AB; Ericsson, Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/01/2024

Signature: /s/ Jeffrey A. Lamken

Name: Jeffrey A. Lamken

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| Telefonaktiebolaget LM Ericsson | | N/A. |
| Ericsson AB | | Telefonaktiebolaget LM Ericsson |
| Ericsson, Inc. | | Telefonaktiebolaget LM Ericsson |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

FORM 9. Certificate of Interest

Form 9 (p. 3)
March 2023

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable     ☐   Additional pages attached

| | | |
|---|---|---|
| Alston & Bird LLP: | Thomas G. Walker; John Daniel Haynes | Katherine Donald; Matthew Patrick McGuire |
| McKool Smith, P.C.: | Kevin Hess | Raymond Mitchell Verboncoeur |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below)   ☐   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable     ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................1

COUNTERSTATEMENT OF ISSUES ...................................................4

STATEMENT ...........................................................................................5

I.   Ericsson Spends Decades Contributing Enhanced Communications
     Technology to ETSI's Standards.................................................................5

     A.   Ericsson's Contributions to ETSI's 2G, 3G, 4G, and 5G
          Wireless Communications Standards.......................................................5

     B.   The "FRAND Commitment" Under ETSI's Intellectual
          Property Rights Policy .............................................................................6

II.  Lenovo Profits from Infringing Ericsson's SEPs for Over a Decade
     While Refusing To License Them................................................................8

     A.   Lenovo Holds Out from Taking a License to Ericsson's SEPs,
          Despite Ericsson's Efforts To Negotiate Since 2008...........................8

     B.   Lenovo Refuses To License Ericsson's 5G SEPs for Half a
          Decade ........................................................................................................10

III. Ericsson and Lenovo Initiate Litigation as Lenovo Spurns Ericsson's
     FRAND Offer ................................................................................................11

     A.   Ericsson's FRAND Offer .......................................................................11

     B.   Ericsson's U.S. Proceeding ....................................................................12

     C.   Lenovo's U.K. Proceedings and Request for Injunctive Relief..........13

     D.   Ericsson's Brazil Proceedings................................................................13

     E.   Ericsson's Colombia Proceedings..........................................................15

     F.   Lenovo's "Offer" of Security and Interim Payments............................16

G.     Lenovo's Counterclaims Below ..........................................17

IV.   The District Court Rejects Lenovo's Motion for an Antisuit Injunction ......18

A.     Lenovo Demands an Antisuit Injunction Interfering with Foreign Suits Involving Foreign Patents...............................18

B.     The District Court Denies an Antisuit Injunction .............................20

SUMMARY OF ARGUMENT ...........................................................21

ARGUMENT ...............................................................................24

I.    The District Court Properly Found That Lenovo's Antisuit Injunction Request Fails at the Threshold.........................................................25

A.     The District Court Correctly Found the U.S. Action Will Not Necessarily Dispose of the Foreign Injunctive Suits ........................26

B.     The Possibility That the U.S. Court *Might* Find Ericsson Breached Its FRAND Commitment Cannot Support an Antisuit Injunction ...............................................................31

1.     Lenovo Waived Any Argument That the U.S. Case Need Not Be Necessarily Dispositive of Foreign Actions.................32

2.     A Mere Possible Effect on Foreign Actions Is Insufficient .................................................................34

C.     Lenovo Never Shows That a Hypothetical Finding That Ericsson Breached Its FRAND Obligations Would Dispose of the Foreign Actions .............................................................38

D.     Neither "the Balance of Ericsson's Contract Claim" Nor "Lenovo's Counterclaim" Supports Lenovo's Position.....................45

II.   Additional Considerations Preclude an Antisuit Injunction.........................48

A.     No Considerations Favor an Antisuit Injunction ...............................49

1.     The Prospect of Voluntary Settlement Does Not Constitute a Threat to the District Court's Jurisdiction............49

2.      The Foreign Injunctions Do Not Threaten U.S. Domestic
        Policy...........................................................................................53

3.      The Brazilian and Colombian Suits Are Not Vexatious...........55

4.      Lenovo's Appeal to "Equitable Considerations"
        Backfires ......................................................................................58

B.  Lenovo Fails To Justify Its Proposed Injunction's Intolerable
    Effect on Comity ................................................................................59

C.  Lenovo's Request That This Court Direct Issuance of an
    Injunction Lacks Merit .......................................................................62

CONCLUSION ........................................................................................................63

## <u>CONFIDENTIAL MATERIAL OMITTED</u>

The material omitted on pages 8, 10, 12, 33, and 55 describes confidential business information regarding licensing.

# TABLE OF AUTHORITIES

Page(s)

### CASES

*1st Source Bank v. Neto*,
  861 F.3d 607 (7th Cir. 2017) ...............................................................26

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
  600 U.S. 412 (2023)....................................................................48, 53

*Apple Inc. v. Motorola, Inc.*,
  757 F.3d 1286 (Fed. Cir. 2014) ...........................................42, 43, 54

*Apple, Inc. v. Motorola, Inc.*,
  869 F. Supp. 2d 901 (N.D. Ill. 2012)..................................................42

*Ashby v. McKenna*,
  331 F.3d 1148 (10th Cir. 2003) ..........................................................62

*BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def.*
  *Acquisition Program Admin.*, 884 F.3d 463 (4th Cir. 2018)......................*passim*

*Canadian Filters (Harwich) Ltd. v. Lear-Siegler, Inc.*,
  412 F.2d 577 (1st Cir. 1969)...............................................................35

*Canon Latin Am., Inc. v. Lantech (CR), S.A.*,
  508 F.3d 597 (11th Cir. 2007) .......................................27, 29, 35, 58

*China Trade & Dev. Corp. v. M.V. Choong Yong*,
  837 F.2d 33 (2d Cir. 1987) .........................................................*passim*

*City of Reno v. Netflix, Inc.*,
  52 F.4th 874 (9th Cir. 2022) ..............................................................46

*Columbian Rope Co. v. West*,
  142 F.3d 1313 (D.C. Cir. 1998)..........................................................46

*Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*,
  651 F.2d 877 (3d Cir. 1981) ...............................................................34

*Donovan v. Dallas*,
  377 U.S. 408 (1964)............................................................................34

*E. & J. Gallo Winery v. Andina Licores S.A.*,
    446 F.3d 984 (9th Cir. 2006) .........................................................26, 59

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006)...........................................................................43

*Ericsson Inc. v. Apple Inc.*,
    No. 2:21-CV-00376-JRG, 2022 WL 19403865
    (E.D. Tex. July 28, 2022)..............................................................51, 57

*Ericsson Inc. v. Samsung Elecs. Co.*,
    No. 2:20-CV-00380-JRG, 2021 WL 89980
    (E.D. Tex. Jan. 11, 2021) ..................................................................60

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014) .........................................................6

*Gau Shan Co. v. Bankers Tr. Co.*,
    956 F.2d 1349 (6th Cir. 1992) ..............................................26, 50, 51

*Hilton v. Guyot*,
    159 U.S. 113 (1895)...........................................................................59

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
    12 F.4th 476 (5th Cir. 2021) ...........................................................6, 12

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak
    Dan Gas Bumi Negara*,
    335 F.3d 357 (5th Cir. 2003) ...........................................38, 53, 56, 59

*Kline v. Burke Constr. Co.*,
    260 U.S. 226 (1922)...........................................................................34

*LAIF X SPRL v. Axtel, S.A. de C.V.*,
    390 F.3d 194 (2d Cir. 2004) ...............................................................61

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
    731 F.2d 909 (D.C. Cir. 1984)....................................................*passim*

*Lam-Yeen Leng v. Pinnacle Performance Ltd.*,
    474 F. App'x 810 (2d Cir. 2012) ........................................................27

*McDermott, Inc. v. AmClyde*,
    511 U.S. 202 (1994)............................................................51, 52

*Microsoft Corp. v. AT&T Corp.*,
    550 U.S. 437 (2007)............................................................53, 60

*Microsoft Corp. v. Motorola, Inc.*,
    696 F.3d 872 (9th Cir. 2012) ..........................................*passim*

*Microsoft Corp. v. Motorola, Inc.*,
    795 F.3d 1024 (9th Cir. 2015) ..................................................36

*Microsoft Corp. v. Motorola, Inc.*,
    871 F. Supp. 2d 1089 (W.D. Wash. 2012) ................................36

*MWK Recruiting Inc. v. Jowers*,
    833 F. App'x 560 (5th Cir. 2020) ......................................26, 27

*Nelson v. Adams USA, Inc.*,
    529 U.S. 460 (2000)..................................................................33

*Paramedics Electromedicina Comercial, Ltda v.
    GE Med. Sys. Info. Techs., Inc.*,
    369 F.3d 645 (2d Cir. 2004) ....................................................27

*Peck v. Jenness*,
    48 U.S. (7 How.) 612 (1849) ........................................34, 35, 37

*Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*,
    361 F.3d 11 (1st Cir. 2004)................................................26, 52

*Rancho Holdings, LLC v. Manzanillo Assocs., Ltd.*,
    435 F. App'x 566 (8th Cir. 2011) .............................................27

*Realtek Semiconductor v. LSI Corp.*,
    946 F. Supp. 2d 998 (N.D. Cal. 2013)................................37, 42

*Sanofi-Aventis Deutschland GmbH v. Genentech, Inc.*,
    716 F.3d 586 (Fed. Cir. 2013) ........................................*passim*

*Schilling v. Rogers*,
    363 U.S. 666 (1960)..................................................................46

*Sea Containers Ltd. v. Stena AB*,
    890 F.2d 1205 (D.C. Cir. 1989) ..................................................27, 51

*Settlers Crossing, LLC v. U.S. Home Corp.*,
    383 F. App'x 286 (4th Cir. 2010) ........................................46

*SmithKline Beecham Corp. v. Apotex Corp.*,
    439 F.3d 1312 (Fed. Cir. 2006) ....................................33, 40

*Stonington Partners, Inc. v. Lernout & Hauspie Speech Prods. N.V.*,
    310 F.3d 118 (3d Cir. 2002) ..................................................26

*TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. 8:14-cv-341, 2015 WL 13954417
    (C.D. Cal. June 29, 2015) ..................................................55

*TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. 8:14-cv-341, 2016 WL 6562075
    (C.D. Cal. Aug. 9, 2016) ..................................................55

*TQ Delta, LLC v. ZyXEL Commc'ns, Inc.*,
    No. 1:13-cv-02013, 2018 WL 2932728 (D. Del. June 12, 2018) .....................54

*United States v. Thompson-Riviere*,
    561 F.3d 345 (4th Cir. 2009) ..................................................62

*Voda v. Cordis Corp.*,
    476 F.3d 887 (Fed. Cir. 2007) ..................................................*passim*

*Winter v. NRDC*,
    555 U.S. 7 (2008) ..................................................24

*Wudi Indus. (Shanghai) Co. v. Wong*,
    70 F.4th 183 (4th Cir. 2023) ..................................................62, 63

*Zynga, Inc. v. Vostu USA, Inc.*,
    No. 11-CV-02959-EJD, 2011 WL 3516164
    (N.D. Cal. Aug. 11, 2011) ..................................................52

### STATUTES AND RULES

28 U.S.C. § 2201 ..................................................46

Fed. Cir. R. 33 ....................................................................................52

Brazil Fed. Law No. 9,279 (May 14, 1996), https://www.gov.br/inpi/
    en/services/patents/laws-and-regulations/laws-and-regulations/
    lpienglish.pdf ...............................................................................61

## OTHER AUTHORITIES

18B Wright & Miller, *Federal Practice and Procedure* (3d ed.)...........................58

ETSI, *Guide on IPRs*, https://www.etsi.org/images/files/IPR/etsi-
    guide-on-ipr.pdf .......................................................................7, 38

*Lenovo Earnings: Q3 2023/2024* (Feb. 22, 2024),
    https://news.lenovo.com/pressroom/press-releases/q3-fy-2023-24 ..................52

U.S. Dep't of Justice and U.S. Patent & Trademark Office, *Policy
    Statement on Remedies for Standard–Essential Patents Subject to
    Voluntary F/RAND Commitments* (Jan. 8, 2013) ...............................................54

## STATEMENT OF RELATED CASES

No other appeal from the proceedings below has previously been before this or any other appellate court.  The following cases may directly affect or be directly affected by this Court's decision in the pending case:

- *Telefonaktiebolaget LM Ericsson v. Motorola Mobility Comercio de Productos Electronicos LTDA., et al.*, Case No. 0953148-87.2023.8.19.0001 (Judiciary of the State of Rio de Janeiro)

- *Telefonaktiebolaget LM Ericsson v. Motorola Mobility Comercio de Productos Electronicos LTDA., et al.*, Interlocutory Appeal No. 0101529-57.2023.8.19.0000 (20th Civil Chamber of Court of Appeals of Rio de Janeiro)

- *Telefonaktiebolaget LM Ericsson v. Lenovo Asia Pacific Sucursal Colombia*, Juzgado 010 Civil del Circuito de Bogotá, Conventional Court Num. 10

- *Telefonaktiebolaget LM Ericsson v. Lenovo Asia Pacific Sucursal Colombia*, Juzgado 022 Civil del Circuito de Bogotá, Conventional Court Num. 22

- *Telefonaktiebolaget LM Ericsson v. Lenovo Asia Pacific Sucursal Colombia*, Juzgado 037 Civil del Circuito de Bogotá, Conventional Court Num. 37

- *Telefonaktiebolaget LM Ericsson v. Lenovo Asia Pacific Sucursal Colombia*, Juzgado 056 Civil del Circuito de Bogotá, Conventional Court Num. 56

- *Telefonaktiebolaget LM Ericsson v. Lenovo Asia Pacific Limited with branch named Lenovo Asia Pacific Limited Sucursal Colombia*, Juzgado 008 Civil del Circuito de Bogotá, Conventional Court Num. 08

- *Telefonaktiebolaget LM Ericsson v. Lenovo Asia Pacific Limited with branch named Lenovo Asia Pacific Limited Sucursal Colombia*, Superintendencia de Industria y Comercio

- *Telefonaktiebolaget LM Ericsson v. Lenovo Asia Pacific Sucursal*, Juzgado 005 Civil del Circuito de Bogotá, Conventional Court Num. 05

- *Telefonaktiebolaget LM Ericsson v. Lenovo Asia Pacific Sucursal Colombia*, Juzgado 21 Civil del Circuito de Bogotá, Conventional Court Num. 21

- *Telefonaktiebolaget LM Ericsson v. Motorola Mobility Colombia S.A.S.*, Juzgado 003 Civil del Circuito de Bogotá, Conventional Court Num. 03

- *Telefonaktiebolaget LM Ericsson v. Motorola Mobility Colombia S.A.S.*, Juzgado 012 Civil del Circuito de Bogotá, Conventional Court Num. 12

- *Telefonaktiebolaget LM Ericsson v. Motorola Mobility Colombia S.A.S.*, Juzgado 026 Civil del Circuito de Bogotá, Conventional Court Num. 26

- *Telefonaktiebolaget LM Ericsson v. Motorola Mobility Colombia S.A.S.*, Juzgado 029 Civil del Circuito de Bogotá, Conventional Court Num. 29

- *Telefonaktiebolaget LM Ericsson v. Motorola Mobility Colombia S.A.S.*, Juzgado 054 Civil del Circuito de Bogotá, Conventional Court Num. 54

- *Telefonaktiebolaget LM Ericsson v. Motorola Mobility Colombia S.A.S.*, Juzgado 053 Civil del Circuito de Bogotá, Conventional Court Num. 53

- *Telefonaktiebolaget LM Ericsson v. Motorola Mobility Colombia S.A.S.*, Juzgado 040 Civil del Circuito de Bogotá, Conventional Court Num. 40

- *Telefonaktiebolaget LM Ericsson v. Motorola Mobility Colombia S.A.S.*, Superintendencia de Industria y Comercio, SIC / 23-520580, P051568 CO1, and subsequent litigation

- *Telefonaktiebolaget LM Ericsson v. Motorola Mobility Colombia S.A.S.*, Juzgado 017 Civil del Circuito de Bogotá, Conventional Court Num. 17

- *Telefonaktiebolaget LM Ericsson v. MPS Mayorista de Colombia S.A.*, Juzgado 45 Civil del Circuito de Bogotá Court

- *Telefonaktiebolaget LM Ericsson v. MPS Mayorista de Colombia S.A.*, Juzgado 20 Civil del Circuito de Bogotá Court

- *Telefonaktiebolaget LM Ericsson v. MPS Mayorista de Colombia S.A.*, Juzgado 49 Civil del Circuito de Bogotá Court

- *Telefonaktiebolaget LM Ericsson v. Colombiana de Comercio S.A. Y/O Corbeta S.A. Y/O Alkosto S.A.*, Juzgado 44 Civil del Circuito de Bogotá Court

- *Telefonaktiebolaget LM Ericsson v. Colombiana de Comercio S.A. Y/O Corbeta S.A. Y/O Alkosto S.A.*, Juzgado 52 Civil del Circuito de Bogotá Court

- *Telefonaktiebolaget LM Ericsson v. Colombiana de Comercio S.A. Y/O Corbeta S.A.*, Juzgado 4 Civil del Circuito de Bogotá Court

- *Telefonaktiebolaget LM Ericsson v. Colombiana de Comercio S.A. Y/O Corbeta S.A. Y/O Alkosto S.A.*, Juzgado 9 Civil del Circuito de Bogotá Court

- *Telefonaktiebolaget LM Ericsson v. Ingram Micro S.A.S.*, Juzgado 14 Civil del Circuito de Bogotá Court

- *Telefonaktiebolaget LM Ericsson v. Ingram Micro S.A.S.*, Juzgado 6 Civil del Circuito de Bogotá Court

- *Telefonaktiebolaget LM Ericsson v. Ingram Micro S.A.S.*, Juzgado 40 Civil del Circuito de Bogotá Court

- *Telefonaktiebolaget LM Ericsson v. Ingram Micro S.A.S.*, Juzgado 45 Civil del Circuito de Bogotá Court

- *Telefonaktiebolaget LM Ericsson v. Ingram Micro S.A.S.*, SIC / 23-520592, PO51555 CO1

- *Telefonaktiebolaget LM Ericsson v. MPS Mayorista de Colombia S.A.*, SIC / 23-518825, P073308 CO1

- *Telefonaktiebolaget LM Ericsson v. Lenovo Asia Pacific Ltd. Sucursal*, SIC / 23-519034, P051555 CO1

- *Lenovo Group Limited and Ors v. Telefonaktiebolaget LM Ericsson and Ericsson Limited*, Case No. HP-2023-000036 (High Court of England and Wales)

- *Motorola Mobility, LLC and Anor v. Ericsson Limited and Anor*, Case No. HP-2024-000005 (High Court of England and Wales)

- *Motorola Mobility LLC v. Telefonaktiebolaget LM Ericsson and Ericsson GmbH*, Case No. ACT_5324/2024 (Unified Patent Court)

- *Motorola Mobility LLC v. Telefonaktiebolaget LM Ericsson and Ericsson GmbH*, Case No. ACT_5326/2024 (Unified Patent Court)

## **INTRODUCTION**

Because antisuit injunctions targeting foreign judicial proceedings raise serious comity concerns and risk international conflict, such decrees may issue "only in the most compelling circumstances." *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984).  The district court committed no abuse of discretion in finding that Lenovo's request here—to enjoin enforcement of ***foreign patents***, in ***foreign courts***, wholly within ***foreign countries***—did not meet that standard.  Lenovo cannot meet a threshold requirement for such an injunction: that the U.S. case will be dispositive of the issues being litigated in the foreign cases.  That requirement is not met because Lenovo refuses to fully commit to U.S. litigation:  It will not commit to accepting Ericsson's license offer even if the U.S. court finds the offer fair, reasonable and non-discriminatory ("FRAND").

Despite arguing that an antisuit injunction is needed to ensure the U.S. district court can resolve the parties' FRAND dispute, Lenovo actually seeks to prevent that result.  After Ericsson sued in the United States, Lenovo filed its own suit in the United Kingdom, asking ***the U.K. court*** to declare FRAND terms.  Lenovo then tried to ***escape*** the U.S. courts—including by conditioning its "offers" of interim payments and security on Ericsson ***abandoning*** the U.S. courts and moving all litigation ***to the U.K.***  Equity does not permit Lenovo to demand that foreign courts stand aside for U.S. courts, while simultaneously seeking to push aside U.S. courts

1

in favor of its own preferred foreign forum. And Lenovo's request is doomed regardless. Lenovo does not come close to justifying the blow to international comity that would be inflicted by a U.S. injunction preventing foreign courts from enforcing foreign patents, against foreign defendants, in foreign territories.

For over a decade, Lenovo has refused to take a license to Ericsson's standard-essential patents on FRAND terms. Ericsson finally sued Lenovo in the United States for infringement of Ericsson U.S. patents that are essential to the 5G cellular communications standard. Ericsson also sought a declaration that its 5G offer to Lenovo—for a global cross-license at the same rate paid by other industry heavy-weights—was FRAND. And when Lenovo continued to spurn Ericsson's offer, Ericsson sought relief on Brazilian patents in Brazil and Colombian patents in Colombia, locations where Lenovo has extensive infringing operations. Upon Ericsson's evidentiary showings, the Brazilian and Colombian courts issued preliminary injunctions against Lenovo's infringement within those countries. That approach was consistent not only with every sovereign's right to provide remedies for infringement of its own patents within its own borders, but also the Brazilian and Colombian patent systems' preference for injunctive relief over damages.

Dissatisfied with the Brazilian and Colombian court decisions, Lenovo asked the U.S. district court for an antisuit injunction barring Ericsson from enforcing its Brazilian and Colombian injunctions. That request was properly denied. A thresh-

old requirement for an antisuit injunction targeting foreign proceedings is that the domestic suit be "dispositive" of the foreign suits, such that the U.S. action will necessarily resolve the foreign actions.  Lenovo urged that requirement was met because, according to Lenovo, the U.S. action will necessarily result in a global license giving Lenovo rights to Ericsson's standard-essential patents worldwide, mooting any basis for injunctive relief in Brazil and Colombia.  But the district court correctly recognized that the U.S. suit will ***not*** necessarily produce a global license— because ***Lenovo*** has refused to commit to accepting Ericsson's license offer ***even if the U.S. court finds the offer is FRAND***.  If the offer is FRAND and Lenovo still refuses it, Lenovo will remain unlicensed and the foreign suits will remain live.

On appeal, Lenovo effectively abandons its theory below—that the U.S. action is dispositive because it will ***necessarily*** produce a global license resolving the foreign suits.  Instead, Lenovo peddles a new theory:  It urges the U.S. action ***might*** produce a finding that Ericsson breached its FRAND obligations, which ***might*** affect the availability of injunctive relief abroad.  But that effort to lower the bar is waived:  Lenovo did not assert a "might-be-dispositive" standard below, and it develops no argument supporting such a standard on appeal.  Such a standard would be irreconcilable with the respect owed to foreign sovereigns' judicial proceedings.  And it would do Lenovo no good regardless.  Lenovo does not even try to show that a (hypothetical) finding that Ericsson breached its FRAND obligations would

3

categorically prevent it from obtaining injunctions *in Brazil and Colombia*. Much less does Lenovo explain why *U.S.* courts should dictate what relief foreign countries may provide in their own courts, for infringement of their own patents, within their own territories.

As a backup argument, Lenovo suggests its counterclaim seeking a declaration of FRAND license terms will necessarily produce a global license covering Ericsson's Brazilian and Colombian patents. But that counterclaim was filed *after* the foreign injunctions issued. It provides no basis for shoving aside *earlier* foreign proceedings. And Lenovo's request for a declaration of FRAND license terms, no less than Ericsson's, is contingent on a finding that Ericsson's offer was not FRAND. If Ericsson did not breach its FRAND obligations, Lenovo is not entitled to have the court declare different license terms as a remedy.

## COUNTERSTATEMENT OF ISSUES

1.    Whether the district court permissibly exercised its discretion to deny Lenovo's request for an antisuit injunction where, given Lenovo's refusal to be bound by any ruling by the U.S. court finding Ericsson's offer FRAND, the U.S. action would not be dispositive of the foreign infringement actions.

2.    Whether Lenovo's antisuit-injunction request should be denied because no relevant factor supports that extraordinary relief and because the interference with foreign proceedings would be an intolerable intrusion on international comity.

4

## STATEMENT

This case arises from Lenovo's persistent refusal to license Ericsson patents essential to the 2G, 3G, 4G, and 5G wireless communications standards.[1]  After Lenovo exploited Ericsson's 5G technology without a license for five years—and stalled out negotiations—Ericsson made Lenovo a final 5G license offer at the same rate paid by other smartphone makers, and filed suit in Lenovo's home district in the United States.  Additional suits in the U.K., Brazil, and Colombia followed.

### I.    ERICSSON SPENDS DECADES CONTRIBUTING ENHANCED COMMUNICATIONS TECHNOLOGY TO ETSI'S STANDARDS

#### A.    Ericsson's Contributions to ETSI's 2G, 3G, 4G, and 5G Wireless Communications Standards

Ericsson is a "major player[] in the mobile telecommunications industry," developing innovative technologies that make cellular communications faster, more reliable, and more secure.  Appx2, Appx1006-08; Appx2905.  Many patented Ericsson technologies have been incorporated into 2G, 3G, 4G, and 5G wireless communications standards established by the European Telecommunications Standards Institute ("ETSI").  Appx3-4; Appx1006-08; Appx3080-81.  ETSI standards specify how cellular phones and networks operate, ensuring interoperability.   Appx3; Appx1006-08; Appx3081.

---

[1] The defendants-appellants are Lenovo US and Motorola Mobility, a subsidiary Lenovo acquired in 2014.  This brief refers to both as Lenovo, except where distinctions between them are relevant.

Lenovo's comparison of those technologies to a standardized outlet "plug," Lenovo.Br.4, is inapt. Taking decades to develop, each generation incorporates advances that can dramatically improve the speed, reliability, security, and energy efficiency of wireless communications—they are why today's cellphones are light-years beyond what existed just 15 years ago. Appx1007-08; Appx1022-23; Appx2990; Appx3063-64; Appx3066.

### B. The "FRAND Commitment" Under ETSI's Intellectual Property Rights Policy

ETSI standards incorporate patented technology. Patents covering such technologies are called "standard essential patents" ("SEPs"), because devices implementing the standards necessarily infringe those patents. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1209 (Fed. Cir. 2014).

ETSI has adopted an Intellectual Property Rights ("IP Rights" or "IPR") policy governing SEPs. Appx4; Appx1009; Appx3085-94. Under the policy, companies holding patents that may be or become standard-essential voluntarily declare that they are "prepared to grant licenses" to those SEPs on "fair, reasonable, and non-discriminatory" ("FRAND") terms and conditions, subject to the condition that those seeking licenses agree to reciprocate. Appx4; Appx1009-10.

That "FRAND commitment" creates a contractual obligation, governed by French law, that can be enforced by third-party equipment manufacturers implementing the standard. Appx6; Appx1009; Appx1052; *HTC Corp. v. Telefonaktie-*

6

*bolaget LM Ericsson*, 12 F.4th 476 (5th Cir. 2021). The French law that governs the FRAND commitment obligates potential licensees to negotiate in good faith. Appx1052. Ericsson and Lenovo are ETSI members, and both have committed to license their SEPs on FRAND terms. Appx4; Appx1007-08; Appx1053-56. Ericsson has licensed its SEPs on FRAND terms to scores of companies. Appx4; Appx1012; Appx2791-92.

ETSI does not restrict the enforcement mechanisms available to SEP owners. ETSI considered a draft policy that would have required SEP owners to commit "'not to seek an injunction'" against those implementing ETSI standards. Appx3089. But it abandoned that proposal in view of concerns that such an "unbalanced" approach would not protect innovators and was "'a major departure from accepted international standard-setting practices.'" Appx3089-92.

ETSI instead leaves infringement remedies to the "national courts of law" of the jurisdictions that issued the patents. ETSI, *Guide on IPRs* § 4.3, https://www.etsi.org/images/files/IPR/etsi-guide-on-ipr.pdf; *see* Appx3092; Appx3094-98. For example, French courts—applying French law, which governs ETSI's FRAND commitment—have resisted efforts by other countries to prevent them from applying French patent remedies for French SEPs. They have even issued protective (***anti-*** antisuit) injunctions to preclude litigants, including Lenovo, from asking U.S. courts

**CONFIDENTIAL MATERIAL OMITTED ON THIS PAGE**

to enjoin patentees from enforcing their French SEPs in French courts. Appx3007.

U.K. courts have issued similar anti-antisuit injunctions. Appx3006-07.

## II. LENOVO PROFITS FROM INFRINGING ERICSSON'S SEPS FOR OVER A DECADE WHILE REFUSING TO LICENSE THEM

The world's "#3 Smartphone Maker," Lenovo is an ETSI member and allegedly holds patents essential to cellular standards. Appx1013. For over a decade, Lenovo has refused to license *any* of Ericsson's cellular SEPs, instead choosing to infringe without paying. Appx1014; Appx2907.

### A. Lenovo Holds Out from Taking a License to Ericsson's SEPs, Despite Ericsson's Efforts To Negotiate Since 2008

While this case concerns Ericsson SEPs for the 5G standard adopted in 2018, the dispute goes further back. For over a decade, Ericsson attempted to negotiate licensing terms with Lenovo for Ericsson's SEPs. To date, Lenovo has never signed a license with Ericsson or paid a penny in royalties, even as other phone makers like Licensee and Licensee pay many millions of dollars under licenses with Ericsson. Appx2791-92.

1. Ericsson initiated licensing discussions with Lenovo in 2008, and again in 2010, for Ericsson's 2G and 3G SEPs. Appx1014. Following execution of an industry-standard nondisclosure agreement, Ericsson sent Lenovo a draft Global Patent License Agreement ("GPLA") in December 2010. Appx1014; *see*

Appx2907.   But Lenovo delayed negotiations, prolonging revisions to the draft GPLA for months.  Appx1015.

Those initial negotiations were with Lenovo US, Lenovo's North Carolina-based subsidiary.  Concerned about continuing delays, Ericsson contacted Lenovo Group, Lenovo's China-based parent.  Appx1014-15.  Ericsson met with representatives of Lenovo Group and Lenovo US in Beijing in November 2011, and sent an updated draft GPLA a week later.  Appx1015.

Lenovo made, and then withdrew, a counteroffer requiring that Ericsson waive royalties for Lenovo's past infringement.  Appx1015.  Months passed.  In May 2012, Lenovo promised another counteroffer was imminent.  Appx1016.  More months passed.  Lenovo eventually sent a revised GPLA in August 2012—but refused to propose royalty terms.  Appx1016.

Negotiations dragged out another two years.  In February 2014—six years after Ericsson first initiated discussions—Lenovo told Ericsson it was not interested in a license because it did not think Ericsson could enforce its patents against Lenovo in China, where Lenovo then made most of its sales.  *See* Appx1017.

2.     In 2014, Lenovo acquired U.S. smartphone maker Motorola Mobility.  Appx1013; Appx2451.   Ericsson attempted to restart negotiations.   Appx1017.  Lenovo refused Ericsson's offer to arbitrate and resisted mediation.  Appx1018-19; Appx2907.

**CONFIDENTIAL MATERIAL OMITTED ON THIS PAGE**

Eventually, in late 2016, Lenovo asserted it did not need a license for Ericsson's SEPs, because Motorola Mobility purportedly had granted it a sublicense for those patents. Appx1018; Appx2907. Lenovo's appeal brief repeats that claim. Lenovo.Br.8. But Lenovo omits that Motorola Mobility's license was limited to ▮License Term▮ products ▮Term▮ in ▮Term▮ and "▮Term▮ ▮Term▮"; it did not include new ▮Term▮ or ▮Term▮ products. Appx3454 (§ 2.4A). And Lenovo ignores the provision stating that any "▮Term▮" would enjoy "▮Term▮ of the ▮Term▮ under" the license. Appx3463-64 (§ 15.1). Lenovo, moreover, does not contend any sublicense absolved pre-acquisition infringement. Nor does it contend that Motorola Mobility's license, or any putative sublicense, covers the 5G SEPs at issue here. *See* Appx3173; Lenovo.Br.7-8.

## B.    Lenovo Refuses To License Ericsson's 5G SEPs for Half a Decade

Further Ericsson innovations were incorporated into the next-generation "5G" wireless standard. Appx4; Appx1008; Appx1013; Appx2905; Appx2910. Before the standard's adoption, Ericsson announced it would license its 5G SEPs for $5/handset (with discounts for certain low-priced devices). Appx5; Appx1008-09; Appx1013; Appx2904. Lenovo, with the rest of the industry, then approved the 5G standard including Ericsson's innovations. Appx1013; Appx3059; Appx3069-70.

After the 5G standard was finalized in June 2018, Ericsson included its 5G SEPs in negotiations with Lenovo. Appx1013; Appx1019; Appx3059. That effort

failed. Lenovo then used Ericsson's 5G innovations without a license for years. Appx1019; Appx2800; Appx2803; Appx3063-64; Appx3066. Lenovo erroneously suggests it has infringed Ericsson's 5G patents only since 2021. Lenovo.Br.8. Lenovo (through its subsidiary, defendant Motorola Mobility) launched its first 5G-capable phone in April *2019*. Appx1019; Appx2800; Appx2803. Lenovo thus has infringed Ericsson's 5G SEPs for over five years, while refusing to license them.

By 2021, the parties' NDA had expired. Appx1019; Appx2907. Negotiations *over the NDA* then dragged on for over two years. Refusing to sign an industry-standard NDA, Lenovo demanded extensive revisions that would allow Lenovo to share Ericsson's confidential information and limit Ericsson's ability to enforce its patents against Lenovo—while allowing *Lenovo* to sue Ericsson in China at any time. Appx1018-19; Appx1021-22; Appx2907; Appx2917; Appx2920.

## III. ERICSSON AND LENOVO INITIATE LITIGATION AS LENOVO SPURNS ERICSSON'S FRAND OFFER

After years of failed negotiations and Lenovo's willful infringement, Ericsson made Lenovo a final licensing offer on October 11, 2023, and filed this suit in the Eastern District of North Carolina, where Lenovo has its U.S. headquarters. Additional litigation in the U.K., Brazil, and Colombia followed.

### A. Ericsson's FRAND Offer

Ericsson offered Lenovo a global cross-license, with royalties for Ericsson's 5G SEPs set at 1% per 5G device, subject to a $4 cap. Appx5; Appx2910. While

**CONFIDENTIAL MATERIAL OMITTED ON THIS PAGE**

Lenovo dismisses that as "nothing more" than "Ericsson's unilaterally chosen price," Lenovo.Br.9, Lenovo overlooks that it is equivalent to the rate other phone makers—including ██Licensee██ and ██Licen-see██—have agreed to pay for Ericsson's 5G SEPs. Appx5; Appx2907; Appx2791-92. It is also the rate a jury previously found, and the Fifth Circuit affirmed, as FRAND for Ericsson's less-advanced *4G* technology. *See HTC*, 12 F.4th at 488.

Ericsson also gave Lenovo 30 days to agree to arbitration over any other disputed license terms. Appx2907; Appx2911-14. Lenovo let Ericsson's arbitration proposal expire without engaging. Appx2907; Appx2926. Ericsson's license offer (1% with a $4 cap) remains open.

### B.    Ericsson's U.S. Proceeding

Filed October 11, 2023, Ericsson's U.S. lawsuit alleges that Lenovo infringes four Ericsson 5G SEPs and has failed to negotiate in good faith. Appx1042-56. Ericsson seeks a declaration that it "has fully complied with its F/RAND Commitment" under ETSI's IP Rights policy. Appx1058. Ericsson's complaint alternatively asks the court to determine "a F/RAND rate for a global cross-license"—but *only* "[i]f Ericsson's offer is determined not to be consistent with its F/RAND commitments." Appx1059; *see* Appx16.

### C.     Lenovo's U.K. Proceedings and Request for Injunctive Relief

Two days after Ericsson filed its U.S. action, Lenovo sued Ericsson in the United Kingdom. Appx6-7. Lenovo asked the U.K. court to determine FRAND terms for a global cross-license between the parties. Appx6-7; Appx2575-78.

Lenovo later demanded that Ericsson be enjoined from using one of Lenovo's alleged U.K. SEPs, Appx6-7; Appx2945-46, and filed another U.K. suit seeking a preliminary injunction, Appx3435. While Lenovo frames the injunction request as "contingent" and "protective," Lenovo.Br.12, its U.K. pleading unconditionally demands an injunction that would expire only upon Ericsson "enter[ing] into a license," Appx2945.

### D.     Ericsson's Brazil Proceedings

After its offer to arbitrate expired, on November 21, 2023, Ericsson sued Lenovo in Brazil for infringement of Ericsson's Brazilian 5G SEPs. Appx2883 (¶¶20-22).[2] Lenovo's infringing sales in Brazil are extensive, and it manufactures infringing 5G devices there. Appx8; Appx2451-53.

Brazilian law makes injunctions the primary remedy for infringement. Appx2879-80 (¶¶6-8). Damages are available only for infringement that "could not be prevented with a preliminary injunction." Appx2879 (¶6). Ericsson thus sought

---

[2] Ericsson's Brazilian and Colombian actions were brought against Lenovo's and Motorola Mobility's Brazilian and Colombian affiliates. Appx2462; Appx2534-41. For simplicity, this brief refers to them as Lenovo.

a preliminary injunction against Lenovo's infringement of Ericsson's Brazilian patents in Brazil, supported by multiple expert reports. Appx2883 (¶20); Appx3357-58 (50:24-51:2).

While Lenovo calls the Brazilian proceedings "secret," Lenovo.Br.1, they were *public* until *Lenovo* requested they be sealed, Appx3357-58 (50:17-51:12); Appx2884 (¶¶23, 25). Nor were the Brazilian proceedings "*ex parte*." Lenovo.Br.1. Lenovo appeared and opposed Ericsson's injunction request. Appx2884-86 (¶¶24-27, 30); Appx3107-21. Asserting that Ericsson had failed to make a FRAND offer and that the suit was "coerc[ive]," Lenovo urged that no injunction should issue because it had asked the "*UK* [High] Court to determine the FRAND terms for a global cross-license." Appx3108-14 (emphasis added). The Brazilian court rejected Lenovo's arguments. Appx2886 (¶30). Finding Ericsson had made a sufficient showing of infringement, the court preliminarily enjoined Lenovo's use of Ericsson's Brazilian 5G SEPs in Brazil. Appx2885 (¶¶28-29).

On December 10, 2023, Lenovo appealed and sought a stay. Appx2886-87 (¶¶32-34); Appx3124-59. Lenovo again insisted that Ericsson breached its FRAND obligations; that *U.K. courts* would determine FRAND rates; and that an injunction was inappropriate under Brazilian law. Appx3128-45 (¶¶5, 6, 21-25, 59). The appellate court denied Lenovo's stay request and denied reconsideration. Appx2887 (¶¶36-38). The panel assigned to Lenovo's appeal typically resolves

appeals within 75 days of filing, Appx2887-88 (¶39), which here would have been late February 2024.  Lenovo, however, has repeatedly sought delay—most recently in an April 9 brief where it asked the appellate court to postpone any hearing or decision.

### E.     Ericsson's Colombia Proceedings

On November 20, 2023, Ericsson sued Lenovo in Colombia for infringement of Ericsson's Colombian 5G SEPs.  Appx7.  In Colombia, as in Brazil, injunctions are the "primary remedy" for patent infringement.  Appx2895 (¶6).  Ericsson accordingly requested a preliminary injunction against infringement of its Colombian patents in Colombia.  Appx2894-98 (¶¶3-12); Appx2534.[3]

Lenovo again incorrectly labels the proceedings "secret."  Lenovo.Br.1, 16. While preliminary-injunction requests in Colombia are typically filed *ex parte*, the cases are listed on public judicial databases that defense counsel—including Lenovo's—actively monitor.  Appx2895-98 (¶7-8, 11), Appx2899-2900 (¶16).  A defendant may intervene and present arguments and evidence even before being served official notice of the action—as Lenovo ***actually did*** in several of Ericsson's Colombian cases.  Appx2895-97 (¶¶7-8).  Moreover, no injunction may issue unless

---

[3] Consistent with typical practice in Colombia, Ericsson filed separate actions for each asserted patent and each defendant.  Appx2898-99 (¶¶14-15).  The Colombian actions were brought against Lenovo and Motorola Mobility's Colombian affiliates. *See* p. 13, n.2, *supra*.

the plaintiff shows a likelihood of infringement and posts a bond "to cover the potential damages to the defendant should the plaintiff fail on the merits." Appx2895-96 (¶7), Appx2898 (¶¶11-12).    A defendant who has not intervened before an injunction is granted may do so afterward and seek reconsideration or appeal to a higher court.  Appx2895-96 (¶7).

Here, the Colombian Superintendence of Industry and Commerce ("SIC")— a Colombian court responsible for adjudicating patent infringement—found an injunction warranted and, after Ericsson posted a bond, issued the injunction on December 13, 2023.  Appx2898-900 (¶¶13, 15, 17); Appx2541(¶16).  Despite knowing of those proceedings, Lenovo never intervened or sought reconsideration before the SIC and instead pursued an appeal.   Appx3360-61 (53:18-54:2); Appx2896-97 (¶8).  That appeal is expected to be resolved within six to eight months, *i.e.*, around July 2024.  Appx3326 (19:22-24).

### F.    Lenovo's "Offer" of Security and Interim Payments

Lenovo contends it has offered security and interim payments "in exchange for Ericsson standing down on its injunctions."  Lenovo.Br.15.  Lenovo omits much about that "offer":  Lenovo offered to make payments into escrow ***on the condition*** that Ericsson (1) agree ***to proceed in Lenovo's preferred U.K. forum***, (2) ***drop this U.S. action*** and all other litigation, (3) consent to the U.K. court establishing a FRAND rate without deciding whether Ericsson's offer was FRAND, and

(4) include in any license non-SEP "implementation" patents not subject to FRAND obligations. *See* Appx2611(¶3) (conditioning bond offer on Ericsson's agreement that no "other relief will be sought or enforced . . . in any jurisdiction covered by the finally determined licence"); Appx2631-32; Appx2926.

Lenovo thus asks U.S. courts to enjoin enforcement of Ericsson's South American injunctions, but not the injunction ***Lenovo*** seeks in ***the U.K***. Lenovo also asks U.S. courts to enjoin foreign actions, even as it demands that Ericsson abandon U.S. courts—including for infringement of U.S. patents—in favor of Lenovo's preferred ***U.K.*** forum.

### G.    Lenovo's Counterclaims Below

On December 14, 2023—after the Brazilian and Colombian courts issued their injunctions—Lenovo asserted counterclaims in the U.S. action. *See* Appx2092-96; Appx2150-54. Those counterclaims allege that Ericsson's offer is not FRAND; as a remedy, they ask the court to declare "FRAND terms and conditions for a global patent cross-license" for the parties' SEPs. Appx2096(¶58); Appx2154(¶89). Lenovo also asserted infringement of its own alleged U.S. SEPs and requested injunctions against Ericsson's use of those patents. Appx2156-62.

IV. **THE DISTRICT COURT REJECTS LENOVO'S MOTION FOR AN ANTISUIT INJUNCTION**

A. **Lenovo Demands an Antisuit Injunction Interfering with Foreign Suits Involving Foreign Patents**

1. On December 29, 2023, Lenovo moved the U.S. district court for an antisuit injunction barring Ericsson from enforcing the Brazilian and Colombian injunctions. Appx2409-11. Lenovo acknowledged the "threshold requirement" for such an injunction: that the U.S. and foreign suits must present the same issue, such that the U.S. suit "***will be*** dispositive of the foreign suits." Appx 2434-35 (emphasis added). Thus, all agreed, the U.S. action must "necessarily be dispositive of the foreign infringement actions." Appx2813; *compare* Appx2813-17 (Ericsson opposition) *with* Appx3170-71 (Lenovo reply). Lenovo urged that requirement was met because, in its view, the U.S. action "will be resolved" with a "global" license giving Lenovo "rights to" Ericsson's SEPs, "thus mooting any basis for injunctive relief" in the Brazilian and Colombian suits. Appx2435-36.

Lenovo declined, however, to commit to accepting the U.S. court's resolution of a key part of that dispute. Ericsson had sought a declaration that its October 11 offer was FRAND. Appx1058(¶222); Appx2805; Appx16; p. 12, *supra*. Lenovo refused to commit to accepting that offer even if the district court finds the offer FRAND. Appx16; Appx3174-75; Appx2631-32.

18

2.    Lenovo acknowledged that, even if the threshold requirement is met, U.S. courts should not interfere with foreign proceedings unless those proceedings "'would "(1) frustrate a policy in the enjoining forum; (2) be vexatious; (3) threaten the issuing court's . . . jurisdiction; [or] (4) prejudice other equitable considerations."'" Appx2436-37.  Lenovo urged that the South American suits threatened the U.S. court's "jurisdiction," because Lenovo might take a license from Ericsson and settle the U.S. suit to resolve the foreign injunctions.  Appx2438-39.  Lenovo did not allege that it faced financial distress from the injunctions that would force it to capitulate.  And it omitted having demanded that Ericsson forswear U.S. courts in favor of another foreign jurisdiction (the U.K.).  *See* pp. 16-17, *supra*.

Lenovo also argued that Ericsson's South American suits frustrate a supposed U.S. policy against foreign injunctions barring infringement of foreign FRAND-encumbered patents.  Appx2437-38.  Lenovo did not mention that it was seeking injunctions in the U.K. concerning its own alleged SEPs.

Lenovo also urged that Ericsson's Brazilian and Colombian injunctions were "vexatious."  Appx2438-40.  Lenovo did not mention that injunctions are the primary remedy for infringement in those countries and a prerequisite to damages in Brazil.  *See* pp. 13-16, *supra*.

## B.     The District Court Denies an Antisuit Injunction

The district court denied Lenovo's antisuit-injunction motion.  Appx1-18.
While any injunction is an "'extraordinary remedy never awarded as of right,'"
injunctions against foreign proceedings are more "extraordinary" still, as "'such an
order effectively restricts the jurisdiction of the court of a foreign sovereign.'"
Appx11.  Here, Lenovo sought to negate Brazilian and Colombian injunctions, under
Brazilian and Colombian law, enforcing Brazilian and Colombian patents, against
Brazilian and Colombian companies, solely within the territorial boundaries of
Brazil and Colombia.  Appx2409-10; Appx2883-87.

Lenovo's request for an antisuit injunction, the district court held, failed the
"threshold" requirement that "resolution of the case before the enjoining court [be]
dispositive of the action to be enjoined."  Appx12, Appx16-17.  In this action,
Ericsson had asked the district court to decide whether its October 11 offer (1% with
a $4 cap) was FRAND.  Appx16.  But "Lenovo has neither committed to accepting
Ericsson's offer if [it is] FRAND nor would it be forced to."  Appx16.  Instead,
Lenovo would have options: "(1) accepting the FRAND offer, (2) rejecting it and
not implementing Ericsson's essential patents, or (3) rejecting it, implementing the
essential patents, and exposing itself" to infringement suits.  Appx16.  Consequent-
ly, this suit would "not necessarily result" in a "global licensing agreement that
would resolve . . . the Brazilian and Colombian actions."  Appx17.

Having found that Lenovo's antisuit injunction request failed at the threshold, the court did not address international comity or other relevant factors.  Appx12-13.

## SUMMARY OF ARGUMENT

Antisuit injunctions may be granted only in the most compelling circumstances.  The district court did not abuse its discretion in denying an injunction here.

**I.A.**  The district court properly found that Lenovo's request for an antisuit injunction fails at the threshold because the U.S. action is not dispositive of the foreign actions.  Lenovo posited below that this case will necessarily result in a global license that moots the foreign actions.  The district court correctly found that was not true, because Lenovo has refused to commit to accepting Ericsson's license offer even if that offer is found to be FRAND.  Consequently, if Ericsson's offer is adjudicated FRAND and Lenovo still refuses it, Lenovo will remain unlicensed and the foreign actions will remain unresolved.  Nor would the district court have occasion to declare different license terms.  The district court did not abuse its discretion in refusing an antisuit injunction where this U.S. action will not necessarily resolve the foreign injunctive suits.  Lenovo cannot demand that U.S. courts enjoin foreign proceedings while refusing to commit itself to the results of the U.S. action and, indeed, attempting to shut down the U.S. action in favor of another foreign proceeding in the U.K.

21

**I.B.**  On appeal, Lenovo *sub silentio* tries to lower the bar.  It now contends the U.S. court **might** rule that Ericsson **breached** its FRAND obligations, which **might** dispose of the foreign injunctions.  But any "might-be-dispositive" standard is waived:  Lenovo did not raise it below and develops no argument supporting it on appeal.  Nor could a "might-be-dispositive" standard be sustained.  Respect for foreign sovereigns and basic principles of concurrent jurisdiction militate against allowing U.S. courts to halt foreign judicial proceedings based on the **possibility** that the U.S. suit **might** affect the outcome of the foreign actions.

**I.C.**  Lenovo's newly minted theory fails for another reason:  Lenovo never shows that a (hypothetical) finding that Ericsson breached its FRAND commitment would automatically dispose of the Brazilian and Colombian injunctions.  The ETSI FRAND commitment leaves remedies to each country's laws.  And Lenovo nowhere tries to show that, under Brazilian and Colombian law, any breach of FRAND obligations would categorically foreclose injunctions.  Indeed, the Brazilian courts considered and rejected Lenovo's argument that Ericsson's purported FRAND breach precludes injunctive relief.

Lenovo invokes *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872 (9th Cir. 2012).  But *Microsoft* did not address the ETSI commitment at issue here.  The language Lenovo invokes from *Microsoft* suggests that a **FRAND commitment itself** forecloses injunctive relief—a proposition this Court has since squarely rejected.

And whatever the relevance of hypothetical FRAND breaches under U.S. injunctive standards, that says nothing about their relevance under Brazilian and Colombian law—much less justifies dictating what remedies foreign courts may provide for infringement of foreign patents in foreign countries.

**I.D.**    Lenovo's backup argument—that adjudication of "the balance of Ericsson's contract claim" or "Lenovo's counterclaim" will produce a global license that resolves the foreign injunctions—likewise fails.  Ericsson's claim is contingent: It seeks a determination of FRAND terms *only if* the court *first* finds Ericsson's offer is not FRAND.  Lenovo's counterclaim is likewise contingent.  It is predicated on Ericsson's alleged breach, and Lenovo cannot demand a declaration of FRAND terms as a *remedy* if Ericsson did not *breach* its FRAND contract.

**II.**    Lenovo fails to show any factor that could overcome the blow to international comity an antisuit injunction would inflict.  There is no threat to the U.S. district court's "jurisdiction"; the Brazilian and Colombian courts have taken no action directed to the U.S., and Lenovo's complaint about settlement pressure is commonplace to any litigation.  U.S. public policy nowhere dictates how Brazil and Colombia enforce their patents within their borders.  Ericsson's efforts to protect its Brazilian and Colombian patent rights through those countries' preferred remedy is not remotely vexatious.  Equitable considerations, including Lenovo's attempts to *deny* U.S. courts authority over this case, undermine Lenovo's cause.  And prevent-

ing Brazilian and Colombian courts from enforcing Brazilian and Colombian patent rights, against Brazilian and Colombian companies, entirely within Brazil and Colombia, would be an affront to comity that Lenovo does not come close to justifying.

All of the above reasons support affirmance. Lenovo's suggestion that this Court step into the district court's shoes and order an antisuit injunction itself should be rejected out-of-hand.

## ARGUMENT

It is well established that the courts of different sovereigns should refrain from intruding on each other's proceedings. Even where cases in different jurisdictions nominally involve the "same . . . claim," those "parallel proceedings" "ordinarily [are] allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other." *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 926-27 (D.C. Cir. 1984). An antisuit injunction against foreign proceedings thus is doubly "'extraordinary.'" Appx11 (citing *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987); *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 479 (4th Cir. 2018)). Any injunction is an "extraordinary remedy." *Winter v. NRDC*, 555 U.S. 7, 24 (2008). And parties must show especially "compelling circumstances," *Laker Airways*, 731 F.2d at 927, to justify intrusion into "the jurisdiction of the court of a foreign sovereign," *China Trade*, 837 F.2d at 35.

The district court did not abuse its discretion in denying Lenovo's extraordinary demand for an antisuit injunction here. Lenovo does not come close to making the compelling showing necessary to justify interfering with other countries' enforcement of their own patents, under their own laws, within their own borders.

Standard of Review. The denial of a preliminary injunction is reviewed for abuse of discretion, and factual findings for clear error. *BAE*, 884 F.3d at 479.

## I. THE DISTRICT COURT PROPERLY FOUND THAT LENOVO'S ANTISUIT INJUNCTION REQUEST FAILS AT THE THRESHOLD

Lenovo nowhere denies that the district court properly identified the relevant "threshold" requirement for an antisuit injunction—that the "issues in the domestic and foreign actions [be] the same" or "'functionally the same *such that the result in one action is dispositive of the other*.'" Appx15 (quoting *Sanofi-Aventis Deutschland GmbH v. Genentech, Inc.*, 716 F.3d 586, 591 (Fed. Cir. 2013)) (emphasis added). The court did not abuse its discretion in finding that requirement not met.

In the U.S. action, Ericsson alleges infringement of its U.S. patents and seeks a declaration that it complied with its French-law contractual FRAND commitment. Appx6-7. In the Brazilian and Colombian actions, Ericsson seeks injunctive relief for infringement of its Brazilian and Colombian patents within those countries. Appx7-8. Lenovo argued below that the U.S. action is dispositive of the foreign suits because it will necessarily lead to a global license covering Ericsson's Brazilian and Colombian patents. Appx2436. But Lenovo refuses to be bound by the outcome

of the U.S. proceeding in the event the U.S. court finds Ericsson's October 11 offer was FRAND. The district court thus correctly found the U.S. action will ***not*** necessarily result in a license that moots the foreign injunctive actions. Appx16.

Recognizing as much, Lenovo all but abandons that argument on appeal. Instead, it attempts to alter the standard *sub silentio* by arguing that the U.S. lawsuit ***might*** be dispositive of the foreign actions ***if*** the district court finds Ericsson breached its FRAND commitment. But Lenovo never argued below that an antisuit injunction could be issued if a U.S. suit merely has the ***potential*** to be dispositive of foreign proceedings. Even now, it never justifies such a standard. To warrant the extreme relief of an antisuit injunction, the U.S. case must ***necessarily***, not just ***potentially***, dispose of the foreign suit.

### A.    The District Court Correctly Found the U.S. Action Will Not Necessarily Dispose of the Foreign Injunctive Suits

While articulations vary, courts agree that antisuit injunctions against foreign proceedings may issue only where there are "'parallel local and foreign actions between the same parties over the same claim.'" *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 991 (9th Cir. 2006); *see BAE*, 884 F.3d at 479 n.15.[4]

---

[4] *See also Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 18 (1st Cir. 2004); *China Trade*, 837 F.2d at 36; *Stonington Partners, Inc. v. Lernout & Hauspie Speech Prods. N.V.*, 310 F.3d 118, 127 (3d Cir. 2002); *MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 562-63 (5th Cir. 2020); *Gau Shan Co. v. Bankers Tr. Co.*, 956 F.2d 1349, 1355 (6th Cir. 1992); *1st Source Bank v. Neto*,

Although the issues in the domestic and foreign cases need not be "identical," they must at least be "functionally the same such that the result in one action *is dispositive of the other.*" *Sanofi*, 716 F.3d at 591 (emphasis added); *see* Appx15.

As Ericsson explained below without contradiction, the U.S. action thus must "*necessarily* be dispositive of the foreign actions." Appx2813 (emphasis added); *compare* Appx2813-16 (Ericsson opposition) *with* Appx3170-71 (Lenovo reply). Court after court agrees. *See China Trade*, 837 F.2d at 36 (movant must show U.S. action "would be dispositive"); *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 653 (2d Cir. 2004) ("would be dispositive"); *MWK*, 833 F. App'x at 564 n.2 ("'would be dispositive'"); *Lam-Yeen Leng v. Pinnacle Performance Ltd.*, 474 F. App'x 810, 813 (2d Cir. 2012) ("'[will] be dispositive'" (brackets in original)).

1.    That rule controls here. Appx15-17. Below, Lenovo theorized that the U.S. suit would produce a global license covering Ericsson's Brazilian and Colombian SEPs, thereby extinguishing any basis for foreign injunctions: This dispute, Lenovo declared, "will be resolved with a payment of money for rights to [Ericsson's] . . . patents" that will "dispos[e] of . . . Ericsson's foreign actions" by

---

861 F.3d 607, 613-14 (7th Cir. 2017); *Rancho Holdings, LLC v. Manzanillo Assocs., Ltd.*, 435 F. App'x 566 (8th Cir. 2011); *Canon Latin Am., Inc. v. Lantech (CR), S.A.*, 508 F.3d 597, 601 (11th Cir. 2007); *Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1213 (D.C. Cir. 1989).

"mooting any basis for injunctive relief." Appx2435-36. But the district court properly found the U.S. case "will ***not*** necessarily result in a global cross-license that resolves the foreign patent actions," because of Lenovo's own choices. Appx17 (emphasis added).

As the court explained, Ericsson seeks a determination whether its October 11 offer for a global cross-license was FRAND. Appx16; Appx2805; Appx3345; Appx3348-51. But Lenovo refuses to "commit[] to accepting Ericsson's offer if [the offer is] FRAND." Appx16; *see* Lenovo.Br.36. Nor would the district court "force[]" Lenovo to accept Ericsson's offer, or "draft [license] agreements for the parties." Appx16-17. Instead, if Ericsson's offer is found to be FRAND, Lenovo could choose between accepting the offer; rejecting the offer and not using Ericsson's SEPs; or rejecting the offer, continuing to use Ericsson's SEPs, and facing the consequences. Appx16.

Consequently, Lenovo cannot meet its burden of showing the U.S. action "will be," "would be," or "is dispositive" of the foreign suits, because it will not necessarily produce a license covering Ericsson's Brazilian and Colombian patents. If Ericsson's offer is found to be FRAND, and Lenovo continues spurning that offer, the parties would be left where they started. Appx15-17. Lenovo's use of Ericsson's Brazilian and Colombian patents would remain unlicensed, and the South American injunctive proceedings would not be "moot." Appx16. The district court properly

exercised its discretion in declining to interfere with foreign court proceedings that the U.S. action may not resolve.

2.      That result accords with the principles of "'international comity and judicial restraint'" that pervade antisuit-injunction analysis.   Appx15.   Those considerations, the district court explained, militate that an antisuit injunction should issue only if a U.S. case necessarily will "settle or finish [the] dispute" between the parties.   Appx15 (citing *Canon Latin Am., Inc. v. Lantech (CR), S.A.*, 508 F.3d 597, 601 n.8 (11th Cir. 2007)).   U.S. courts should not interfere in foreign proceedings for potentially years on end—precluding enforcement of foreign patents, in a foreign sovereign's territory, under that foreign sovereign's laws—where the U.S. court ultimately may never resolve the dispute.   Lenovo has no business demanding an intrusive injunction while refusing to commit to the outcome of U.S. proceedings. It cannot demand that the U.S. action control, but ***only*** if the FRAND status of Ericsson's offer is resolved its way.

That is especially true in the patent context.   Patent rights are territorial, reflecting a "legal right granted and recognized by the sovereign within whose territory the right is located."   *Voda v. Cordis Corp*., 476 F.3d 887, 902 (Fed. Cir. 2007).   This Court thus has held that it would risk "'unreasonable interference with the sovereign authority of other nations'" for U.S. courts to adjudicate "foreign patent infringement claims."   *Id.*   But Lenovo seeks even greater interference:   It

would have U.S. courts ***prevent foreign courts*** from adjudicating foreign patent-infringement claims, enjoining preliminary injunctions that are the primary remedy for infringement in those countries. *See* pp. 13-16, *supra*; pp. 39, 43-44, 59-62, *infra*. And Lenovo would do so where its own conduct is what prevents complete resolution here. The district court did not abuse its discretion in denying an antisuit injunction on those facts.

3.    At the same time Lenovo demands that U.S. courts enjoin foreign injunctions, Lenovo is seeking foreign injunctions against Ericsson in U.K. courts for its own SEPs. Appx6-7; Appx2575-78; Appx2944-46; Appx3435.[5] And Lenovo demands an injunction from U.S. courts while demanding that Ericsson ***abandon*** U.S. courts: Lenovo has offered interim payments and security only if Ericsson agrees to ***dismiss this U.S. suit*** and ***litigate exclusively in the U.K.*** *See* pp. 16-17, *supra*. Lenovo cannot justify an injunction against foreign litigation on the theory that the U.S. lawsuit is dispositive, while simultaneously trying to escape the U.S. court and keep it from deciding anything at all.

Lenovo is reduced to arguing that it should not have to accept the district court's ruling because Ericsson's offer might be "consistent with" Ericsson's ETSI

---

[5] Lenovo claims its U.K. injunction requests are "contingent" and "protective." Lenovo.Br.12. But Lenovo's U.K. pleading unconditionally requests a "FRAND injunction" to expire only when Ericsson "enter[s] into a license." Appx2945.

"obligations without being a 'true FRAND rate.'" Lenovo.Br.31-32. But the district court found—and Ericsson has made clear, Appx2805—that Ericsson "request[ed] a declaration that it[s] 11 October **offer is FRAND**." Appx16 (emphasis added). And a determination that Ericsson complied with its obligation to be prepared to grant licenses on FRAND terms would also leave the foreign suits unresolved: Absent a breach of contract, U.S. courts would have no basis for imposing a remedy such as setting a license rate. *See* pp. 46-47, *infra*. Simply put, Lenovo cannot show that the U.S. action will be dispositive of the foreign proceedings.

### B.    The Possibility That the U.S. Court *Might* Find Ericsson Breached Its FRAND Commitment Cannot Support an Antisuit Injunction

In this Court, Lenovo confirms "Lenovo **has not committed** to accepting Ericsson's offer if the [district] court determines that it is consistent with Ericsson's FRAND obligations." Lenovo.Br.36 (emphasis altered). Lenovo thus cannot prevail on the theory it advanced below: that the U.S. action necessarily "will be resolved with a payment of money for rights to [Ericsson's] . . . patents" (*i.e.*, a license) that will extinguish the infringement claims underlying the South American injunctions. Appx2436. If Lenovo loses at the outset and Ericsson's (still open) offer is found to be FRAND, the foreign suits will not be resolved.

So Lenovo changes theories: It argues that the district court **might** "rul[e] that Ericsson's offer was *not* consistent with its FRAND commitment" and that such a ruling **might** be dispositive of the foreign injunctions. Lenovo.Br.29-30, 33. But

Lenovo never argued below that an antisuit injunction is available when U.S. proceedings are only potentially dispositive of foreign proceedings. Before this Court, it does not develop an argument supporting a "might-be-dispositive" legal standard. That standard is wrong. And Lenovo's theory of why this case even *might* end up being dispositive lacks merit regardless.

1.    *Lenovo Waived Any Argument That the U.S. Case Need Not Be Necessarily Dispositive of Foreign Actions*

Insofar as Lenovo argues that the "threshold inquiry for an antisuit injunction" is met whenever a U.S. lawsuit is *potentially* dispositive of foreign cases, Lenovo.Br.33, that argument is waived. Lenovo did not argue for a "potentially dispositive" standard below. *See* Appx2435-36; Appx3170-71. Before the district court, Lenovo did not dispute that the U.S. action must "*necessarily* be dispositive of the foreign" actions. Appx2813; *compare* Appx2813-17 (Ericsson opposition explaining that threshold inquiry requires "the foreign infringement action would *necessarily be resolved* by the domestic case" (emphasis added)) *with* Appx3170-71 (Lenovo reply not contesting Ericsson's articulation of that standard).

Lenovo instead argued that the U.S. proceeding "will necessarily moot the foreign actions," Appx16, because (according to Lenovo) the U.S. case "*will* be resolved with a payment of money for rights to [Ericsson's] ... patents"—*i.e.*, a license—that extinguishes any basis for the foreign suits. Appx2436. Lenovo's briefing posited no *other* outcome of the U.S. action that would dispose of the

**CONFIDENTIAL MATERIAL OMITTED ON THIS PAGE**

foreign suits.  Appx3170-71.  Nothing put the district court "on notice" that Lenovo was arguing that it was entitled to an antisuit injunction based on a mere ***possibility*** that the U.S. suit ***could*** resolve the foreign injunctive actions.  *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000).

Even on appeal, Lenovo fails to challenge the legal standard the district court applied.  Lenovo.Br.27-28.  It asserts ***factual*** errors—urging that the district court "misapprehended" "the nature of Ericsson's FRAND commitment" and "the nature of the dispute."  Lenovo.Br.27-28 (emphasis added).  But Lenovo does ***not*** argue that the district court legally erred in requiring Lenovo to show that the U.S. case will "necessarily" dispose of the South American injunctions.  Appx15-16.  Lenovo cannot challenge that legal standard for the first time on reply.  *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006).

That unchallenged legal standard disposes of Lenovo's argument about the hypothetical effect of a hypothetical finding that Ericsson breached its FRAND obligations.  Lenovo does not deny that such a ruling is merely ***one possible*** outcome of the U.S. proceeding.  (An unlikely one at that:  Ericsson's offer is equivalent to what heavyweights like Licensee have agreed to pay, and has been adjudicated FRAND for 4G technology.  *See* pp. 11-12, *supra*.)  It follows that the U.S. action will not ***necessarily*** moot the foreign proceedings.

2.     *A Mere Possible Effect on Foreign Actions Is Insufficient*

Waiver aside, the mere possibility that a U.S. suit might produce an outcome that could resolve the foreign actions is not "enough to satisfy the threshold" requirement that the U.S. suit be "dispositive" of foreign actions. Lenovo.Br.33. More than 175 years ago, the Supreme Court warned that efforts by the courts of one sovereign to "restrain proceedings in an independent foreign tribunal" are an affront to "comity" and risk "conflict" "embarrassing to the administration of justice." *Peck v. Jenness*, 48 U.S. (7 How.) 612, 625 (1849). Thus, the "general principle established '[e]arly in our history,' is that one court will not interfere with or try to restrain proceedings in another." *Compagnie des Bauxites de Guinea v. Insurance Co. of N. Am.*, 651 F.2d 877, 887 (3d Cir. 1981) (quoting *Donovan v. Dallas*, 377 U.S. 408, 412 (1964)).

Even where domestic and foreign suits involve overlapping facts or claims, the norm is concurrent jurisdiction, with "each court . . . free to proceed in its own way and in its own time, without reference to the proceedings in the other court." *Kline v. Burke Constr. Co.*, 260 U.S. 226, 230 (1922). Thus, "parallel proceedings on the same . . . claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one that can be pled as res judicata in the other." *Laker Airways*, 731 F.2d at 926. Any departure from that practice through antisuit

injunctions should occur "rarely" and must be based on "compelling circumstances." *Id.* at 927; *see BAE*, 884 F.3d at 479 ("'sparingly'").

Lenovo does not even pay lip service to those principles. A "might-be-dispositive" standard defies them. The Brazilian and Colombian injunctions here arise from "independent foreign patent right[s]" issued by foreign sovereigns and enforced only within their borders. *Canadian Filters (Harwich) Ltd. v. Lear-Siegler, Inc.*, 412 F.2d 577, 578 (1st Cir. 1969). Consequently, those countries' sovereign interests in having their decrees remain enforceable are at their zenith. *See id.; Voda*, 476 F.3d at 901; *Canon*, 508 F.3d at 602 (denying antisuit injunction where foreign action "hinge[d] on statutory rights that are unique to Costa Rica").

Lenovo would require district courts to intrude into foreign proceedings, based on a ***chance*** that the U.S. action ***might*** result in an outcome that ***could*** obviate the foreign injunctions. That would swallow the rule that "parallel proceedings . . . should ordinarily be allowed to proceed simultaneously." *Laker Airways*, 731 F.2d at 926; *see Sanofi*, 716 F.3d at 594. When parallel proceedings involve related subject matter, it is nearly always ***possible*** a ruling in one will impact another. Issuing antisuit injunctions merely because of that possibility would invite "embarrassing" intrusion on foreign proceedings, potentially for years on end—and for no good reason if the U.S. action ultimately does not prove controlling. *Peck*, 48 U.S. (7 How.) at 625.

The Ninth Circuit's decision in *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872 (2012), is not to the contrary. While Lenovo says that case involved "indistinguishable" facts, Lenovo.Br.2, 20, 28, 30, the district court properly found otherwise. Appx17. There, resolution of the U.S. action was ***necessarily*** dispositive of foreign infringement disputes: The "parties had ***agreed*** 'that the court [will] decide all the material terms of the RAND license'" encompassing the foreign patents. *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1038 (9th Cir. 2015) (emphasis added). Unlike here, there was no possibility in *Microsoft* that the district court would issue a decision that did not lead to global resolution. The district court here found that "distinction" critical. Appx17. Lenovo does not even address it. And reply is too late.

Contrary to Lenovo's suggestion, in *Microsoft*, it was critical that licenses would ultimately issue. The district court there stressed that, "at the conclusion of this matter, the court ***will have determined*** . . . what the RAND terms are for . . . a license." 871 F. Supp. 2d 1089, 1099 (W.D. Wash. 2012) (emphasis added). Based on that, the court "concluded that the pending contract action before it ***would be dispositive*** of the German patent action." 696 F.3d at 880 (emphasis altered). Nowhere did the court suggest it would have reached the same result if the parties had not consented to a binding determination of license terms encompassing the foreign patents.

36

It was **that** exercise of discretion that the Ninth Circuit affirmed, finding the district court did not "abuse [its] discretion" in granting an antisuit injunction "under the unique circumstances of th[at] case." 696 F.3d at 889; *see also* pp. 40-42, *infra* (discussing *Microsoft*). *Microsoft* thus—at most—stands for the proposition that a district court **may** issue an antisuit injunction where (among other things) the U.S. action will necessarily determine license terms that encompass patents asserted in foreign litigation. It does not suggest that a district court abuses its discretion in **denying** an antisuit injunction where, as here, that circumstance is absent. Nor does it suggest that one party can demand an injunction against foreign litigation, while simultaneously preventing the U.S. suit from being dispositive by refusing to abide by the U.S. court's determination that a particular offer is FRAND.[6]

---

[6] Lenovo's invocation of *Realtek Semiconductor v. LSI Corp.*, 946 F. Supp. 2d 998 (N.D. Cal. 2013), Lenovo.Br.30-31, is further afield. There, the court had already ruled that patent owners "breached their RAND licensing obligations," and then issued an antisuit injunction barring them from seeking exclusionary relief from the ITC. 946 F. Supp. 2d at 1010. *Realtek* thus was based on an **actual** finding of breach, not a hypothetical finding that might never occur. *Realtek* also involved parallel proceedings before a U.S. agency, not foreign courts. It thus did not implicate the sovereignty-based concerns presented by injunctions "restrain[ing] proceedings in an independent foreign tribunal." *Peck*, 48 U.S. (7 How.) at 625; *see Laker Airways*, 731 F.2d at 927 n.49 ("Failure to distinguish between the different policies informing the discretion to issue *intercourt* and *intracourt* injunctions may suggest an inappropriate rule."). And while the *Realtek* court believed a breach of FRAND obligations foreclosed patentees from obtaining injunctive relief under U.S. law, there is no evidence Brazilian and Colombian law dictate that result. *See* pp. 39-40, *infra*.

## C.   Lenovo Never Shows That a Hypothetical Finding That Ericsson Breached Its FRAND Obligations Would Dispose of the Foreign Actions

Even if the mere possibility of a dispositive ruling in the U.S. action were sufficient—it is not—Lenovo errs in asserting that "a ruling that Ericsson's offer was *not* consistent with its FRAND commitment would be dispositive of the actions in Brazil and Colombia." Lenovo.Br.29-30. Lenovo insists "a finding that Ericsson breached" its ETSI FRAND obligations necessarily "would mean Ericsson cannot pursue SEP-based injunctions against Lenovo abroad." Lenovo.Br.32. But Lenovo provides no supporting authority. And any such argument should be presented to the Brazilian and Colombian courts, not dictated to them by U.S. courts.

1.   ETSI's IP Rights Policy does not prescribe remedies at all—much less impose rules restricting injunctive relief, generally or in specific circumstances. Appx3083-84. ETSI has **rejected** imposing such limitations, abandoning a much-criticized proposal that would have barred injunctions for SEPs. Appx3089; *see* p. 7, *supra*. Instead, "the national courts of law have the **sole authority** to resolve [IP rights] disputes." ETSI, *Guide on IPRs* §4.3, https://www.etsi.org/images/files/IPR /etsi-guide-on-ipr.pdf (emphasis added). That accords with the "principle that [every] sovereign country has the competence to . . . grant the kinds of relief it deems appropriate." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 372-73 (5th Cir. 2003). Each country's courts must

38

decide, according to their respective laws, whether and when to grant injunctive relief for infringement of SEPs in that country.

Consequently, whether "a ruling against Ericsson on its offer alone would be dispositive of the propriety of injunctions ***in Brazil and Colombia***," Lenovo.Br.33 (emphasis added), turns on whether the laws of ***Brazil and Colombia*** would categorically foreclose injunctive relief in that situation. Lenovo does not try to show they would. And there is no reason for such an assumption. Civil-law countries like Brazil and Colombia make injunctions the primary (and sometimes only) remedy for infringement. *See* pp. 13-16, *supra*. In Brazil, "'primacy of the specific remedy'" requires courts to prefer injunctive relief—"the specific legal remedy outlined in [Brazil's] IP Law in cases of patent infringement"—over damages. Appx2879(¶6). Damages are "limited to past acts that could not be prevented with a preliminary injunction." Appx2879(¶6). In Colombia, too, injunctive relief is generally "the only or primary remedy" for infringement, and Colombian "damages award[s]" typically "will not fully [compensate for] the effects of the infringement." Appx2895(¶6). In both countries, "no punitive or enhanced damages" are available to deter willful infringement. Appx2879(¶6); *see* Appx2895(¶6).

Given the centrality of injunctive relief to the Brazilian and Colombian patent systems, one cannot simply assume (as Lenovo does) that those countries would deem such relief categorically unavailable, regardless of other circumstances,

39

whenever a patentee has not fully complied with an ETSI FRAND obligation at some point in time. Indeed, while Lenovo vigorously argued before the Brazilian courts that Ericsson should be denied an injunction because it purportedly violated FRAND obligations, Appx3108-14; Appx3128-29; Appx3139-40; Appx3145, the courts rejected that argument, Appx2885-87 (¶¶28-38); Appx2463-66; Appx2478-90; Appx2515-17. The Brazilian courts either did not think the alleged breach of FRAND obligations was necessarily fatal to injunctive relief under Brazilian law, or were not persuaded there was a breach in the first place. Either way, it would be inappropriate for U.S. courts to dictate to Brazilian (and Colombian) courts what remedies they may afford under their own laws, for infringement within their own territories, of patents issued by their own governments.

Lenovo's failure to make any showing that a (hypothetical) finding that Ericsson breached its ETSI FRAND obligations "would be dispositive of the propriety of injunctions in Brazil and Colombia," Lenovo.Br.33, forecloses its demand that U.S. courts intrude on those foreign proceedings. Lenovo cannot try to fill that gaping hole for the first time on reply. *See SmithKline*, 439 F.3d at 1319.

2.    Lenovo's invocation of *Microsoft*, Lenovo.Br.30, 32-33; *see also* pp. 36-37, *supra* (discussing *Microsoft*), cannot fill the gap. First, *Microsoft* involved a different contract under different law. It concerned an ITU RAND commitment assertedly governed by "Washington state contract law." 696 F.3d at 878, 884, 886-

88.[7]  It did not address the ***French-law*** ETSI contract at issue here, much less how that contract affects ***Brazilian and Colombian*** remedies.  *See* pp. 38-40, *supra*.

Second, Lenovo misapprehends *Microsoft*'s reasoning—and overlooks this Court's ***rejection*** of that reasoning.  *Microsoft* did not say that a finding that a patentee "breached" a FRAND commitment would mean the patentee "cannot pursue SEP-based injunctions . . . abroad."  Lenovo.Br.32.  It advanced, in dicta, the much different—and unsustainable—proposition that injunctive relief is categor-ically unavailable for patents subject to a FRAND commitment, ***whether or not*** the patentee breached that commitment.  That is clear from the very passage Lenovo block-quotes:

> ***[E]ven if Motorola did not breach its contract*** [setting forth its FRAND obligations], . . . injunctive relief against infringement is arguably a remedy inconsistent with the licensing commitment.

696 F.3d at 885 (emphasis added) (quoted Lenovo.Br.33); *see id.* ("[W]hether or not the district court ultimately determines that Motorola breached its [FRAND] contract . . ." (quoted Lenovo.Br.33)).  The language that Lenovo invokes thus posited that ***the FRAND commitment itself***—rather than breach of that commitment—fore-closes injunctive relief, by supposedly providing an "[i]mplicit" "guarantee that the patent-holder will not take steps to keep would-be users from using the patented

---

[7] Ericsson does not concede the ITU commitment is governed by Washington law, but the parties in *Microsoft* apparently did not contest the point.

material, such as seeking an injunction." *Microsoft*, 696 F.3d at 884 (citing *Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 913-14 (N.D. Ill. 2012)) (quoted Lenovo.Br.30); *see id.* at 877 (citing *Apple*, 869 F. Supp. 2d at 914).

This Court, however, has squarely rejected that notion—and the very authority *Microsoft* cited. *Microsoft*'s suggestion that a FRAND commitment itself bars injunctive relief for SEPs rested on the district-court decision in *Apple v. Motorola*. *See Microsoft*, 696 F.3d at 877, 884 (citing and block-quoting *Apple*, 869 F. Supp. 2d at 913-14). But this Court, on appeal in *Apple*, called out precisely the passage *Microsoft* invoked and ***rejected*** its suggestion of a "*per se* rule that injunctions are unavailable for SEPs" or "a separate rule or analytical framework for addressing injunctions for FRAND-committed patents." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1331-32 (Fed. Cir. 2014) (citing and block-quoting *Apple*, 869 F. Supp. 2d at 913-14). Lenovo's incessant invocation of *Microsoft*, *see* Lenovo.Br.2, 16-17, 24-26, 29-30, 33, 39, 44, 46-53, fails to appreciate this Court's rejection of the very language from *Microsoft* that Lenovo invokes.[8]

3.     While FRAND commitments may affect (although not categorically bar) the availability of injunctive relief for SEPs under U.S. law, that rule derives

---

[8] Lenovo's citation of *Realtek*, Lenovo.Br.31, suffers the same defect: That case relied on the since-rejected language from *Microsoft* and the *Apple* district-court decision. *See* 946 F. Supp. 2d at 1006-07.

from *American* standards for injunctive relief. In this country, injunctions are extraordinary remedies that require plaintiffs to show "'that remedies available at law, such as monetary damages, are inadequate.'" *Apple*, 757 F.3d at 1331 (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). FRAND commitments thus may counsel against injunctive relief if they "suggest that money damages are adequate to fully compensate . . . for any infringement." *Id.* at 1332. Similarly, a breach of FRAND obligations would be relevant to whether a patentee should receive equitable relief under U.S. law. Consistent with "traditional equitable principles," however, the impact would depend on the case's specific facts (*e.g.*, whether the infringer also breached FRAND obligations) and the district court's "discretion." *eBay*, 547 U.S. at 393-94 (rejecting both "categorial grant" and "categorical denial" of injunctive relief).

But any limits on injunctive relief under *U.S.* law have no bearing on the propriety of injunctive relief in *Brazil and Colombia*. In those countries, injunctions are the *preferred* remedy and routinely granted where patentees establish ongoing patent infringement. Appx2878-79 (¶¶6-8); Appx2895 (¶6). That fundamental difference fatally undermines Lenovo's position. Where the standards applicable in foreign proceedings "deviate[] from U.S. patent law," the issues in the U.S. and foreign cases "are not functionally the same" and an antisuit injunction is inappropriate. *Sanofi*, 716 F.3d at 593. In *Sanofi*, for example, this Court held a U.S. action was

43

"not dispositive" of a German arbitration—and an antisuit injunction was thus unwarranted—where the arbitrator, "[a]pplying German law," "adopted a definition of infringement that is both over- and under-inclusive compared to U.S. law." *Id.*

Here, Brazilian and Colombian standards for injunctive relief diverge significantly from U.S. law. Even if Lenovo could show that breach of FRAND commitments would categorically bar patentees from obtaining injunctions under ***U.S. injunctive standards*** (although Lenovo has not done so), it would not follow that breach of FRAND commitments categorically bars patentees from obtaining injunctions under ***Brazilian and Colombian injunctive standards***. Much less would it justify U.S. courts imposing U.S. standards abroad by barring enforcement of the foreign injunctions in foreign countries.

Lenovo may believe that Brazilian and Colombian courts should deny injunctive relief if a U.S. court finds that Ericsson breached its FRAND obligations. But that cannot support an antisuit injunction. A request to enjoin foreign proceedings based on the preclusive effect of a finding in a U.S. action "is in essence asking [the U.S. court] to find that res judicata should apply in another case, the foreign [action]." *Sanofi*, 716 F.3d at 593. But "there is no reason to believe that res judicata operates identically under [foreign] law." *Id.* at 594. If Lenovo prevails, it may present the U.S. court's findings to the foreign courts, which are "entitled to determine in the first instance whether to give the prior judicial determination

preclusive effect." *Id.* at 594.  Lenovo's attempt to deny the foreign courts that

opportunity—even before any ruling in the U.S. action—cannot be sustained.

### D.   Neither "the Balance of Ericsson's Contract Claim" Nor "Lenovo's Counterclaim" Supports Lenovo's Position

Lenovo ultimately retreats to something resembling its theory below.  Invok-

ing its counterclaim and Ericsson's conditional claim for a determination of the

FRAND rate, Lenovo declares that "the parties' dueling claims requesting a FRAND

rate for a global cross-license" will ***necessarily*** resolve the foreign injunctive

actions.  Lenovo.Br.33.  That argument fails.

1.     As Lenovo acknowledges, Ericsson's request is "contingent":  It seeks

a declaration of a global cross-license rate ***only if*** the court determines Ericsson's

October 11 offer was not FRAND.    Lenovo.Br.34; Appx16; Appx1059-60;

Appx2426.  If the court finds the offer ***was*** FRAND, the court would not determine

some ***other*** FRAND rate.  And Lenovo has not committed to accepting Ericsson's

offer even if it is FRAND.  Ericsson's contingent request thus does not show that the

U.S. action will necessarily result in a global license dispositive of the South

American suits.  *See* Appx16-17; pp. 27-29, *supra*.

2.     Nor does "Lenovo's counterclaim," Lenovo.Br.34-35, do the trick.

Lenovo filed that counterclaim on December 14, 2023—***after*** the Brazilian and

Colombian courts issued their injunctions.  Appx6-8; Appx2150-54; Appx2092-96;

Appx2883-87; Appx2534-41.  Lenovo nowhere explains why it should be allowed

to demand an injunction interfering with foreign courts' decisions based on ***later-filed*** U.S. claims.  That would invite gamesmanship:  Parties dissatisfied with foreign courts' application of their own laws could simply file later, overlapping claims in the U.S. and demand the foreign decisions be enjoined.

Regardless, Lenovo is wrong in asserting that its counterclaim will require the district court to declare a "FRAND rate for a global cross-license" ***even if*** "Ericsson's offer *did* comply with its FRAND obligations."  Lenovo.Br.33-34.  If Ericsson did not breach its FRAND obligations, the court will have no occasion to impose (different) FRAND license terms.  The declaration of a FRAND rate is at most a "remedy" for some legal wrong, 28 U.S.C. § 2201—here, a supposed breach of contractual FRAND obligations.  *See City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) ("The availability of relief under the Declaratory Judgment Act 'presupposes the existence of a judicially remediable right.'" (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)).  If Ericsson has met its contractual obligations, the court would have no basis to declare FRAND license terms—and certainly no basis to impose terms ***different*** from the FRAND terms Ericsson already offered.  Absent a breach, Lenovo is not entitled to a remedy.  *See Columbian Rope Co. v. West*, 142 F.3d 1313, 1316-17 (D.C. Cir. 1998) (dismissing declaratory-judgment request where defendant "fully performed" contract); *Settlers Crossing, LLC v. U.S.*

*Home Corp.*, 383 F. App'x 286, 288 (4th Cir. 2010) (dismissing declaratory claim absent alleged "breach of contract . . . that could lead to relief").

Lenovo essentially concedes as much. It states that "a claim for ***breach***" of FRAND obligations may require a court to "declare a FRAND rate." Lenovo.Br.35 (emphasis added). And Lenovo's counterclaim for a declaration of FRAND license terms (Count III) is expressly predicated on breach of FRAND obligations. It alleges that Ericsson "has not complied with its contractual obligations" and "failed to provide Lenovo US with FRAND terms and conditions for a license to its declared SEPs." Appx2095-96 (¶55), Appx2154 (¶86); *see* Appx2095 (¶¶52-53), Appx2153-54 (¶¶83-84) (incorporating allegations that Ericsson breached FRAND obligations). It urges that, "[a]s a result of th[os]e acts," "a judicial declaration that sets the FRAND terms and conditions for a global patent cross-license" is warranted. Appx2096 (¶¶56, 58); Appx2154 (¶¶87, 89). Lenovo's request for a declaration of FRAND terms thus has the same "contingency" as Ericsson's: Both require an antecedent finding that Ericsson did not make a FRAND offer. Absent such a finding, there is no basis for the district court to declare FRAND terms of its own. For that reason, too, Lenovo cannot show that this action necessarily will produce a global cross-license that resolves the foreign actions.

## II. ADDITIONAL CONSIDERATIONS PRECLUDE AN ANTISUIT INJUNCTION

Because Lenovo fails to meet a "threshold" requirement, this Court need go no further. But affirmance is warranted regardless. "[O]nly in the most compelling circumstances does a court have discretion to issue an antisuit injunction" against foreign suits. *Laker Airways*, 731 F.2d at 927. Lenovo does not come close to showing compelling circumstances that support an antisuit injunction here—much less circumstances that outweigh the immense toll on "international comity" its proposed injunction would inflict. *BAE*, 884 F.3d at 479.

Lenovo seeks breathtaking relief: It would prevent enforcement of Brazilian and Colombian patent remedies, with respect to Brazilian and Colombian patents, against Brazilian and Colombian companies, within Brazilian and Colombian territory. The impact on international comity is apparent. Lenovo would have U.S. courts "'police'" the use of intellectual property in foreign countries, an "'unseemly' act of 'meddling'" that "threatens 'international discord.'" *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 426, 428 (2023).

Lenovo cannot justify that intrusion. Its insistence that the ***foreign*** suits threaten the ***U.S.*** court's "jurisdiction," Lenovo.Br.40, is backward. The foreign injunctions say nothing about U.S. courts' power to adjudicate the FRAND claims here. Instead, Lenovo seeks to have a ***U.S.*** court restrict ***foreign*** courts' ability to police patent infringement within their own borders.

48

Lenovo's professed concern about ensuring the U.S. district court can decide the FRAND claims is particularly hard to swallow, given its later-filed suit asking the ***U.K. court*** to declare a FRAND rate and its "offers" to post interim payments and security ***only if*** Ericsson agrees to shift all litigation ***to the U.K.*** A party that refuses to commit to litigating in the U.S. cannot claim an entitlement to have U.S. courts enjoin litigation in other countries. Lenovo cannot justify an antisuit injunction at all, much less show that this Court should displace the district court's discretion and order an antisuit injunction itself.

## A. No Considerations Favor an Antisuit Injunction

Because antisuit injunctions may be issued "only in the most compelling circumstances," *Laker Airways*, 731 F.2d at 927, Lenovo concedes it must show truly extraordinary circumstances supporting that relief, such as a grave "threat[] [to] the district court's jurisdiction," an overriding need to "protect" important domestic "interests," or an unacceptable prospect of "vexatious" foreign suits. *BAE*, 884 F.3d at 479-80; *see* Lenovo.Br.39. Lenovo agrees it must also demonstrate that an antisuit injunction comports with "international comity." *BAE*, 884 F.3d at 479; *see* Lenovo.Br.49-50. Lenovo fails on all counts.

### 1. *The Prospect of Voluntary Settlement Does Not Constitute a Threat to the District Court's Jurisdiction*

Not every potential interaction between foreign and U.S. proceedings constitutes a jurisdictional threat justifying an antisuit injunction. Only narrow, "quite

unusual" categories suffice. *Gau Shan*, 956 F.2d at 1356. Typically, an injunction may issue only where foreign courts "attempt[] to carve out exclusive jurisdiction over the action," *China Trade*, 837 F.2d at 36, improperly disregard binding U.S. judgments, *BAE*, 884 F.3d at 480, or enjoin litigants from seeking relief in U.S. courts, *Laker Airways*, 731 F.2d at 927, 930. In *Laker Airways*, for example, the foreign court "forb[ade] Laker from prosecuting its American antitrust action" and issued an "injunction ordering Laker to take action to dismiss" its U.S. suit. 731 F.2d at 915. Antisuit relief thus is warranted only where a threat to district-court jurisdiction goes ***beyond*** the ordinary interactions inherent in "parallel" litigation. *BAE*, 884 F.3d at 480 (citing *Laker Airways*, 731 F.2d at 928 n.54).

Lenovo identifies no such threat. The Brazilian and Colombian courts have taken no action directed to U.S. courts or U.S. property rights. They have ignored no judgment of the U.S. court (there is none); nor have they prevented Lenovo from participating in U.S. proceedings. They have merely enjoined, under Brazilian and Colombian law, infringement of Brazilian and Colombian patents, by Brazilian and Colombian affiliates, within Brazil and Colombia.

Lenovo attempts to conjure a jurisdictional threat by arguing that the Brazilian and Colombian injunctions might "pressure" it into accepting Ericsson's license offer and settling the U.S. case. Lenovo.Br.40-41. But voluntary settlement is a possibility in ***any*** litigation; parties routinely face pressure to settle to "avoid

litigation costs" or "maintain ongoing commercial relationships." *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 215 (1994). That does not entitle them to injunctions to remove those pressures and avoid a settlement that could moot the case. Neither does Lenovo's commercial desire to continue selling infringing devices in Brazil and Colombia during this lawsuit.

As one court explained when rejecting an identical argument, "[a]ny purported 'pressure' on [an accused infringer] to negotiate with Ericsson regarding the parties' global licensing dispute exists between the parties and has no effect on th[e U.S. c]ourt." *Ericsson Inc. v. Apple Inc.*, No. 2:21-CV-00376-JRG, 2022 WL 19403865, at *4 (E.D. Tex. July 28, 2022). Outside factors affecting a party's "continuing interest in prosecuting its lawsuit" are not a genuine "threat" to the court's jurisdiction. *Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1212 (D.C. Cir. 1989); *see BAE*, 884 F.3d at 480 (possible "enforce[ment]" of adverse judgment in other countries did not justify antisuit injunction); *Gau Shan*, 956 F.2d at 1356 (no "threat to the jurisdiction of the United States courts" where party might gain "control" over opponent and voluntarily dismiss suit).

Lenovo ignores that permitting it to continue infringing (as it has for over a decade) would put pressure on **Ericsson**. It offers no reason for privileging the pressure it puts on Ericsson. Indeed, Lenovo's requested antisuit injunction would grant Lenovo an entitlement to **avoid** settlement by insulating it from the conse-

51

quences of ***its wrongful conduct in foreign countries***.  A more improper intrusion into foreign sovereigns' domestic affairs is hard to imagine.

Lenovo, moreover, never asserts it would ***actually*** be forced to settle.  Lenovo has ample financial resources, with revenues exceeding $61 billion last year.[9]  It offered no evidence the foreign injunctions will cause such financial distress as to compel acceptance of Ericsson's offer.  Lenovo also ignores that Colombian law required Ericsson to post a bond against potential harm to Lenovo.  *See* pp. 15-16, *supra*.  Its assertions that it ***might*** choose to settle are "no more than speculation" about what "may ensue whenever courts have concurrent jurisdiction."  *China Trade*, 837 F.2d at 37.

U.S. public policy, moreover, encourages settlement.  *See McDermott*, 511 U.S. at 215; Fed. Cir. R. 33.  Lenovo cites no authority holding that settlement pressures constitute a threat to U.S. court jurisdiction justifying an antisuit injunction.  For example, *Quaak* and *Zynga* involved foreign courts' direct interference with U.S. proceedings.  *See Quaak*, 361 F.3d at 20 (foreign court threatened "substantial penalties" for seeking discovery "essential" to U.S. case); *Zynga, Inc. v. Vostu USA, Inc.*, No. 11-CV-02959-EJD, 2011 WL 3516164, at *3 (N.D. Cal. Aug. 11, 2011) ("exceptionally broad" foreign injunction restricting use of copy-

---

[9] *Lenovo Earnings: Q3 2023/2024* (Feb. 22, 2024), https://news.lenovo.com/pressroom/press-releases/q3-fy-2023-24/.

righted works "everywhere" prevented litigant from "meaningfully adjudicating" its U.S. copyright claim). Nothing like that exists here.

2.    *The Foreign Injunctions Do Not Threaten U.S. Domestic Policy*

Lenovo fares no better by invoking a supposed U.S. "domestic policy" against an "SEP holder's pursuit of injunctions" ***in other countries***. Lenovo.Br.42. Patent law is fundamentally territorial. *See Voda*, 476 F.3d at 901. Even if one accepts Lenovo's suppositions about the availability of injunctions for SEPs under ***U.S.*** law, *but see* pp. 41-43, *supra*; pp. 54-55, *infra*, Lenovo cannot explain why U.S. policy would require dictating what remedies ***Brazil and Colombia*** may provide for infringement of their own patents within their own borders. Every "sovereign country has the competence to . . . grant the kinds of relief it deems appropriate." *Karaha*, 335 F.3d at 373. U.S. law "'does not rule the world'"—***especially*** with respect to intellectual-property rights. *Abitron*, 600 U.S. at 428 (quoting *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454 (2007)).

Injunctions play a fundamentally different role in the Brazilian and Colombian patent systems. In the U.S., injunctions are extraordinary relief; in those countries, injunctions are the primary remedy. *See* pp. 13-16, *supra*. Whatever the role of injunctions for SEPs under ***U.S.*** legal principles, that is not a command that ***other countries*** must follow the U.S. approach. That is especially true given that

53

the FRAND principles governing the SEPs here derive from an ETSI contract governed by **French law**, not U.S. law.

Lenovo misapprehends U.S. law in any event.  There is no "*per se* rule that injunctions are unavailable for SEPs." *Apple*, 757 F.3d at 1331-32; *see TQ Delta, LLC v. ZyXEL Commc'ns, Inc.*, No. 1:13-cv-02013, 2018 WL 2932728, at *4 (D. Del. June 12, 2018) (rejecting notion of "public policy" against foreign injunctive relief for FRAND-committed SEPs).  The appropriateness of an injunction depends on the facts.  Lenovo admits injunctions may be appropriate, for example, "where an infringer unilaterally refuses a FRAND royalty or unreasonably delays negotiations." *Apple*, 757 F.3d at 1332; ECF #17 at 9; *see* U.S. Dep't of Justice and U.S. Patent & Trademark Office, *Policy Statement on Remedies for Standard–Essential Patents Subject to Voluntary F/RAND Commitments* 7-8 (Jan. 8, 2013). That perfectly describes **Lenovo's conduct** over the past decade.  *See* pp. 8-12, *supra*.  While Lenovo responds that no "finding" to that effect has yet been made, Lenovo.Br.46, Lenovo bears the burden of proof here:  It must show that its proposed antisuit injunction is compelled by U.S. domestic policy.  Lenovo has not shown the South American courts have granted relief inconsistent with U.S. policy, even under Lenovo's view of that policy.

Insofar as Lenovo invokes *Microsoft* and other cases suggesting that injunctions are "'inherently inconsistent'" with FRAND obligations, Lenovo.Br.43-44,

**CONFIDENTIAL MATERIAL OMITTED ON THIS PAGE**

this Court has rejected that view. *See* pp. 41-42, *supra*. Lenovo's assertion that *TCL Communications Technology Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. 8:14-cv-341, 2016 WL 6562075, at *4 (C.D. Cal. Aug. 9, 2016), "granted an antisuit injunction against Ericsson for similar reasons," Lenovo.Br.43, misapprehends that case. The order Lenovo cites merely denied summary judgment on a breach-of-FRAND claim. While an earlier order (not cited by Lenovo) issued a nominal "anti-suit injunction," it was "based on the parties' mutual agreement" that "neither party" should pursue foreign suits, because they agreed "'the FRAND trial in th[at] case *will result* in a cross license'" "dispositive of the [f]oreign [a]ctions." 2015 WL 13954417, at *6 (C.D. Cal. June 29, 2015) (emphasis added). Here, the parties have ***not*** agreed to an injunction, the U.S. action is ***not*** dispositive of the foreign actions, and Lenovo insists on pursuing its ***own*** foreign suit in the U.K.

Nor do the Brazilian and Colombian injunctions frustrate U.S. competition policy. Lenovo admits "Lenovo and Ericsson do not compete." Lenovo.Br.49. And other smartphone manufacturers like Licensee, Appx2791, have accepted the FRAND rate that Ericsson offered Lenovo. Lenovo's decade of infringement, without paying any royalty, has given ***Lenovo*** an unfair advantage over those companies.

3.    *The Brazilian and Colombian Suits Are Not Vexatious*

Nor are the Brazilian and Colombian injunctions vexatious. Injunctions are the primary remedies for infringement in those countries. *See* pp. 13-16, *supra*.

Ericsson's pursuit of injunctions is an entirely appropriate—even necessary—step to obtain relief from Lenovo's ongoing infringement in those countries.

No factors that might signal "vexatious" litigation—such as "inequitable hardship" to the defendant, frustration of a "speedy and efficient determination of the cause," or duplication of the U.S. litigation—are present here. *Karaha*, 335 F.3d at 366. Lenovo has infringed Ericsson's patents and refused a license for over a decade. It has not agreed to accept Ericsson's offer *even if* it is FRAND. Holding Lenovo to the consequences of its infringement of foreign patents, under foreign law, in foreign countries, is not inequitable. And even if those consequences prompt Lenovo to accept Ericsson's offer, it would simply be accepting the same rate other smartphone manufacturers already pay and U.S. courts have already found to be FRAND—hardly an inequitable hardship.

Lenovo contends the foreign injunctions are unnecessary because Ericsson's injuries "could easily be compensated with money damages." Lenovo.Br.49. A promise of future compensation is cold comfort from a company that has paid nothing for over a decade. And Lenovo ignores that Brazilian and Colombian patent law deems damages an inadequate remedy and makes injunctions the primary— sometimes only—remedy for infringement. *See* pp. 13-16, 39, *supra*. Lenovo's assertions regarding its bond offer, Lenovo.Br.49, are similarly off-base: That offer

56

was conditioned on Ericsson ***abandoning*** the U.S. case that Lenovo professes to protect. *See* pp. 16-17, *supra*.

The Brazilian and Colombian proceedings do not frustrate the district court's determination of this case. Parallel patent-enforcement proceedings "do not interfere with [the U.S. court's] pending [FRAND] action," even if they might encourage Lenovo to settle "the parties' global licensing dispute." *Apple*, 2022 WL 19403865, at *4; *see* pp. 50-51, *supra*.

Finally, the Brazilian and Colombian proceedings are not duplicative of U.S. litigation.[10] Patent rights are limited to the country that granted them. *Voda*, 476 F.3d at 901. The Brazilian and Colombian proceedings thus assert infringement of Brazilian and Colombian patents within Brazil and Colombia; the U.S. proceedings do not. And while the district court may (and should) hold Ericsson's rate FRAND, it cannot ensure Lenovo pays it. To ensure compensation for Lenovo's infringement in Brazil and Colombia, Ericsson must first seek an injunction. *See* pp. 13-16, *supra*.

Far from being "on all fours with *Microsoft*," Lenovo.Br.48, this case is its antithesis. The parties in *Microsoft* ***agreed*** the U.S. court would determine FRAND license terms. *See* p. 36, *supra*. Here, Lenovo has refused to accept Ericsson's offer ***even if*** the district court finds the offer FRAND. The Brazilian and Colombian

---

[10] This factor "alone is not sufficient to justify issuance of an antisuit injunction." *Laker Airways*, 731 F.2d at 928.

proceedings are not intended to "harass" Lenovo, *Microsoft*, 696 F.3d at 886, but to protect Ericsson from Lenovo's uncompensated infringement in those countries.  In analogous circumstances, courts have held that ***issuance*** of an antisuit injunction is an abuse of discretion.  *See Canon*, 508 F.3d at 602 (collecting cases).  The district court's ***denial*** of such an injunction certainly was not an abuse of discretion.

### 4.    *Lenovo's Appeal to "Equitable Considerations" Backfires*

Far from helping Lenovo, "equitable considerations," Lenovo.Br.42, show why the antisuit injunction must be denied.  Lenovo seeks to enjoin Brazilian and Colombian proceedings in favor of U.S. proceedings, but refuses to commit to litigating in the United States.  Instead, it demands that Ericsson ***abandon the U.S. suit*** in favor of ***U.K. proceedings***.  *See* pp. 16-17, *supra*.  It refuses to accept a U.S.-court finding that Ericsson's offer is FRAND, because it hopes the ***U.K.*** court will determine a ***different*** rate.  While Lenovo decries foreign proceedings it does not like, it initiated its own foreign suit in its preferred jurisdiction, and even sought injunctive relief for alleged infringement of its own SEPs.  Appx7; *see* p. 13, *supra*.  Equity does not permit Lenovo to seek an antisuit injunction from U.S. courts against ***some*** foreign proceedings, while simultaneously seeking to prioritize ***other*** foreign proceedings over the U.S. action.  18B Wright & Miller, *Federal Practice and Procedure* § 4477 (3d ed.).

The history of this dispute likewise cuts decisively against Lenovo. Ericsson attempted to negotiate with Lenovo for over a decade. Yet Lenovo tied up negotiations for years. Ericsson made Lenovo an offer that other smartphone manufacturers have accepted and U.S. courts have found FRAND. Lenovo rejected it. The equities overwhelmingly favor Ericsson.

### B.   Lenovo Fails To Justify Its Proposed Injunction's Intolerable Effect on Comity

While no factor favors antisuit relief here, any such considerations would easily be "trumped by the doctrine of comity." *Gallo*, 446 F.3d at 994; *BAE*, 884 F.3d at 479. Comity requires "recognition" of "the legislative, executive or judicial acts of another nation," *Hilton v. Guyot*, 159 U.S. 113, 164 (1895), and "restrict[s] the extraterritorial application of sovereign power," *Karaha*, 335 F.3d at 371. Courts may differ on the precise weight given to comity, but all agree a court must at least "perform a 'detailed analysis' to determine whether the impact on international comity would be 'tolerable.'" *BAE*, 884 F.3d at 479.

Antisuit injunctions are an affront to comity, because they "effectively restrict[] the jurisdiction of the court of a foreign sovereign." *China Trade*, 837 F.2d at 35; *Laker Airways*, 731 F.2d at 927. And patent rights are "limited by the metes and bounds of the jurisdictional territory that granted the right to exclude." *Voda*, 476 F.3d at 901. Foreign courts thus have a significant interest in enforcing patents issued under their countries' laws, within their own territories. *Voda*, 476 F.3d at

901-02. The U.S., by contrast, has no interest in restricting foreign enforcement of foreign patents; "[o]ur patent system makes no claim to extraterritorial effect." *Microsoft*, 550 U.S. at 455. Disregard for foreign sovereigns' interests threatens international discord. Appx3025 (WTO disputes arising from antisuit injunctions). When patent litigants in the U.S. have sought antisuit injunctions, foreign courts have issued ***anti***-antisuit injunctions to prohibit them. Appx3007. U.S. courts have done the same when litigants have sought foreign antisuit injunctions against U.S. enforcement. *Ericsson Inc. v. Samsung Elecs. Co.*, No. 2:20-CV-00380-JRG, 2021 WL 89980, at *7 (E.D. Tex. Jan. 11, 2021).

Lenovo appeared in Brazilian proceedings and opposed injunctive relief as inconsistent with Ericsson's FRAND commitments. Appx3109; Appx3145.[11] Brazilian courts nonetheless issued the injunction. Lenovo's request for an antisuit injunction thus asks this Court to prohibit enforcement of relief Brazilian courts ordered, based on arguments Brazilian courts rejected. A more serious affront to comity is hard to imagine.

That this dispute is between private parties, Lenovo.Br.50-51 (citing *Microsoft*, 696 F.3d at 887), does not counsel otherwise. *Microsoft* extracted that notion from cases involving forum-selection clauses, where the parties ***agreed*** to proceed

---

[11] Lenovo had a right to be heard in Colombia, but declined. Appx2895-97 (¶¶7-8).

solely in the United States.  No such agreement exists here.  If anything, that the dispute is between private parties weighs ***against*** an antisuit injunction:  It underscores that "no important [U.S.] policy" demands an injunction; Lenovo is pursuing its private interests.  *China Trade*, 837 F.2d at 34; *see LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 200 (2d Cir. 2004).

Besides, comity's chief concern is not the parties' identities, but the impact on the "jurisdiction of the court of a foreign sovereign," which can no longer enforce its laws within its territory.  *China Trade*, 837 F.2d at 35; *Laker Airways*, 731 F.2d at 927.  Brazil and Colombia have an unquestionable interest in enforcing their patent laws within their borders.  Brazil's constitution establishes a "fundamental . . . exclusivity right of inventors" in Brazil.  Appx2878(¶2); *see* Brazil Fed. Law No. 9,279 (May 14, 1996), https://www.gov.br/inpi/en/services/patents/laws-and-regulations/laws-and-regulations/lpienglish.pdf.  In Colombia, too, the "cardinal patent right . . . has always been the right to exclude."  Appx2895(¶6).  Lenovo's protest that it seeks to bar only foreign ***injunctive*** relief, Lenovo.Br.53, overlooks that injunctions are the "primary" and "fundamental" remedies prescribed by Brazilian and Colombian patent law.  *See* pp. 13-16, 39, *supra*.

Ericsson initiated Brazilian and Colombian proceedings, Lenovo.Br.52-53, only after Lenovo allowed Ericsson's arbitration offer to expire.  Appx2907.  At that point, the Brazilian and Colombian proceedings were necessary to protect Ericsson

against future uncompensated infringement. Ericsson had every right to seek protection—and the Brazilian and Colombian courts had every right to grant it. "The mere filing of a suit in one forum does not cut off the preexisting right of an independent forum to regulate matters subject to its prescriptive jurisdiction." *Laker Airways*, 731 F.2d at 927.

Lenovo's repeated invocation of its bond offer, Lenovo.Br.15, 49, 52, is risible. Lenovo made that offer ***after*** Ericsson initiated foreign proceedings and conditioned it on Ericsson relinquishing significant rights—***including the right to litigate in the United States***. *See* pp. 16-17, *supra*.

## C.   Lenovo's Request That This Court Direct Issuance of an Injunction Lacks Merit

Comity and other factors cut so decisively against Lenovo—and Lenovo's burden of justifying an antisuit injunction is so high—that this Court "'can say as a matter of law that it would have been abuse of discretion for the trial court'" to issue an antisuit injunction. *United States v. Thompson-Riviere*, 561 F.3d 345, 353 n.5 (4th Cir. 2009) (quoting *Ashby v. McKenna*, 331 F.3d 1148, 1151 (10th Cir. 2003)). Lenovo has not shown anything close to the "most compelling circumstances" that would be needed to justify an antisuit injunction. *Laker Airways*, 731 F.2d at 927.

Lenovo's demand that this Court direct ***entry*** of an antisuit injunction, Lenovo.Br.38-39, is baseless. Ordinarily, "a proper analysis of the [injunction] factors should be conducted by the district court in the first instance." *Wudi Indus.*

*(Shanghai) Co. v. Wong*, 70 F.4th 183, 192 n.3 (4th Cir. 2023).  And the facts are still developing.  *See id.*  Decisions on Lenovo's Brazilian and Colombian appeals, including its FRAND-based arguments, Appx2886-88; Appx3326; Appx3128-29, are expected soon.  Lenovo's request that this Court order the extraordinary relief of an antisuit injunction—without allowing the district court to exercise its discretion or consider the evolving record—should be rejected out of hand.

## CONCLUSION

The decision below should be affirmed.

May 1, 2024                                   Respectfully submitted,


                                              /s/ Jeffrey A. Lamken

Theodore Stevenson, III                       Jeffrey A. Lamken
ALSTON & BIRD LLP                                 *Counsel of Record*
Chase Tower, Suite 2300                       Lucas M. Walker
2200 Ross Avenue                              Rayiner Hashem
Dallas, TX  75201                             Caleb Hayes-Deats
(214) 922-3400 (telephone)                    Kayvon Ghayoumi
ted.stevenson@alston.com                      MOLOLAMKEN LLP
                                              The Watergate, Suite 500
Blake H. Bailey                               600 New Hampshire Avenue, N.W.
MCKOOL SMITH, P.C.                            Washington, D.C.  20037
600 Travis Street, Suite 7000                 (202) 556-2000 (telephone)
Houston, TX  77002                            jlamken@mololamken.com
(713) 485-7300 (telephone)
bbailey@mckoolsmith.com                       Catherine Martinez
                                              MOLOLAMKEN LLP
Nicholas M. Mathews                           430 Park Avenue
Alexander J. Chern                            New York, NY  10022
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1200
Dallas, TX  75201


                         *Counsel for Appellees*

FORM 31. Certificate of Confidential Material                          Form 31
                                                                      July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 2024-1515

**Short Case Caption:** Telefonaktiebolaget LM Ericsson v. Lenovo (United States), Inc.

---

**Instructions:** When computing a confidential word count, Fed. Cir. R.
25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same
  word do not count more than once).

- For a responsive filing, do not count words marked confidential for the first
  time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments;
exhibits; and addenda.  *See* Fed. Cir. R. 25.1(d)(1)(D).

---

The foregoing document contains ___15___ number of unique words (including
numbers) marked confidential.

- [✓] This number does not exceed the maximum of 15 words permitted by
  Fed. Cir. R. 25.1(d)(1)(A).

- [ ] This number does not exceed the maximum of 50 words permitted by
  Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28
  U.S.C. § 1491(b).

- [ ] This number exceeds the maximum permitted by Federal Circuit Rule
  25.1(d)(1), and the filing is accompanied by a motion to waive the
  confidentiality requirements.

Date: 05/01/2024          Signature: /s/ Jeffrey A. Lamken

                          Name: Jeffrey A. Lamken

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 2024-1515

**Short Case Caption:** Telefonaktiebolaget LM Ericsson v. Lenovo (United States), Inc.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 13,977 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 05/01/2024            Signature: /s/ Jeffrey A. Lamken

Name: Jeffrey A. Lamken