**No. 2024-1515**

# United States Court of Appeals for the Federal Circuit

TELEFONAKTIEBOLAGET LM ERICSSON,
*Plaintiff/Counterclaim Defendant-Appellee*,

ERICSSON AB, ERICSSON, INC.,
*Counterclaim Defendants-Appellees,*

v.

LENOVO (UNITED STATES) INC., MOTOROLA MOBILITY INC.,
*Defendants/Counter-Claimants-Appellants*,

LENOVO (SHANGHAI) ELECTRONICS TECHNOLOGY CO. LTD., LENOVO BEIJING, LTD., LENOVO GROUP LIMITED, MOTOROLA (WUHAN) MOBILITY TECHNOLOGIES COMMUNICATIONS, CO., LTD.,
*Defendants.*

Appeal from the United States District Court for the Eastern District of North Carolina, No. 5:23-cv-00569, Judge Terrence W. Boyle

## NON-CONFIDENTIAL APPELLANTS' REPLY BRIEF

Greg S. Arovas
Leslie M. Schmidt
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

John C. O'Quinn
F. Christopher Mizzo
Jason M. Wilcox
William H. Burgess
Diva Hollis
Lucas Funk
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, DC 20004
(202) 389-5000

May 15, 2024

## TABLE OF CONTENTS

Reply Brief ........ 1

I. The District Court's Analysis of the "Dispositive" Prong is Legally Erroneous. ........ 4

A. Resolution of Whether Ericsson Complied with Its FRAND Obligations Is Dispositive of Whether Ericsson Can Seek Injunctions for SEPs. ........ 4

B. Ericsson Cannot Distinguish *Microsoft v. Motorola*. ........ 7

C. Ericsson's View Renders Its FRAND Pledge Meaningless. ........ 10

D. The District Court Further Erred by Disregarding the Parties' Dueling FRAND Rate-Setting Claims. ........ 12

II. This Court Should Reverse, and Order Entry of the Requested Antisuit Injunction. ........ 14

A. Ericsson's Appeals to "Comity" and "Territoriality" Disregard its Voluntary FRAND Commitment, and Contravene Precedent Regarding ASIs ........ 15

B. Ericsson's "Equities" Arguments Misstate Key Facts. ........ 21

1. Ericsson Fails to Identify Any Similarly Situated Licensee That Has Paid the Rate Ericsson Demands from Lenovo. ........ 21

2. Ericsson Misstates Procedures in Brazil and Colombia, and the Parties' Negotiation History. ........ 25

C. The Court Should Remand with Instructions to Issue the ASI. ........ 30

Conclusion ........ 32

*Note: All emphasis added unless otherwise indicated.*

**Note re: confidential material**.

Material marked confidential in the confidential version of this brief and redacted in the nonconfidential version is as follows:

Material at v refers to, or in context reveals, the identity of an Ericsson licensee.

Material at p. 22 refers to, or in context reveals, the identities of Ericsson's licensees, their sales figures, and their licensing terms.

At p. 23, the first confidentiality marking is a license term, and the second quotes from a sealed order in Brazil.

Material at pp. 25-26 concerns procedural details of a sealed proceeding in Brazil.

# TABLE OF AUTHORITIES

## Cases

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014) .................... 8

*Arunachalam v. IBM Corp.*, 989 F.3d 988 (Fed. Cir. 2021) .................... 30

*Atl. Marine Constr. Co. v. U.S. District Court*, 571 U.S. 49 (2013) .................... 20

*Bays v. City of Fairborn*, 668 F.3d 814 (6th Cir. 2012) .................... 31

*Cellco P'Ship v. Hatch*, 431 F.3d 1077 (8th Cir. 2005) .................... 31

*Cole v. Cunningham*, 133 U.S. 107 (1890) .................... 17

*Cooley v. Clifton Power Corp.*, 747 F.2d 258 (4th Cir. 1984) .................... 31

*Core Labs. LP v. Spectrum Tracer Servs., LLC*, 532 F. App'x 904 (Fed. Cir. 2013) .................... 31

*E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984 (9th Cir. 2006) .................... 30

*EEOC v. City of Altoona*, 723 F.2d 4 (3d Cir. 1983) .................... 31

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2019) .................... 19

*FTC v. H.J. Heinz Co.*, 246 F.3d 708 (D.C. Cir. 2001) .................... 31

*Gage v. Riverside Trust Co.*, 86 F. 984 (C.C.S.D. Cal. 1898) .................... 17

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476 (5th Cir. 2021) .................... 6, 13, 17, 22, 23, 24

*Huawei Techs. Co. v. Samsung Elecs. Co.*, No. 3:16-CV-2787, 2018 WL 1784065 (N.D. Cal. Apr. 13, 2018) .................... 5, 18

*In re Innovatio IP Ventures, LLC Patent Litig.*, 2013 WL 5593609 (N.D. Ill. Oct. 3, 2013) .................... 25

*Matter of Chicago, Milwaukee, St. Paul, & Pac. R.R.*,
878 F.2d 182 (7th Cir. 1989) .......... 30

*Microsoft Corp v. Motorola, Inc.*, No. C10-1823,
2013 WL 2111217 (W.D. Wash. Apr. 25, 2013) .......... 25

*Microsoft Corp. v. Motorola, Inc.*,
696 F.3d 872 (9th Cir. 2012) .......... 5-8, 10, 11, 16, 18, 21, 24

*Microsoft Corp. v. Motorola, Inc.*,
795 F.3d 1024 (9th Cir. 2015) .......... 8, 19

*Milsen Co. v. Southland Corp.*, 454 F.2d 363 (7th Cir. 1972) .......... 31

*Nippon Shinyaku Co., v. Sarepta Therapeutics, Inc.*,
25 F.4th 998 (Fed. Cir. 2022) .......... 30, 31

*NLRB v. Roywood Corp.*, 429 F.2d 964 (5th Cir. 1970) .......... 31

*Otto v. City of Boca Raton*, 981 F.3d 854 (11th Cir. 2020) .......... 31

*Patton v. Dole*, 806 F.2d 24 (2d Cir. 1986) .......... 31

*Rodriguez v. United States*, 480 U.S. 522 (1987) .......... 20

*Sanofi-Aventis Deutschland GmbH v. Genentech, Inc.*,
716 F.3d 586 (Fed. Cir. 2013) .......... 17

*Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*,
982 F.2d 633 (1st Cir. 1992) .......... 31

*TCL Commc'n Tech Holdings, Ltd v. Telefonaktiebolaget LM Ericsson*, No. 8:14-CV-341, 2018 WL 4488286
(C.D. Cal. Sept. 14, 2018) .......... 24

*TCL Commc'n Tech. Holdings v. Telefokaktiebolaget LM Ericsson*, No. 8:14-CV-341, 2015 WL 13954417
(C.D. Cal. June 29, 2015) .......... 18, 24

*TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. 8:14-CV-341, 2016 WL 6562075
(C.D. Cal. Aug. 9, 2016) .......... 19

*The Salvore*, 36 F.2d 712, 714 (2d Cir. 1929) .......................................... 17

*TQ Delta, LLC v. ZyXEL Commc'ns, Inc.*, No. 1:13-cv-2013,
2018 WL 2932728 (D. Del. June 12, 2018)........................................ 13

*Utah Licensed Bev. Ass'n v. Leavitt*,
256 F.3d 1061 (10th Cir. 2001)........................................................ 31

*Winter v. NRDC*, 555 U.S. 7 (2008)..................................................... 18

**Other Authorities**

28 U.S.C. §1651....................................................................................... 21

Fed. Cir. R. 33(a)..................................................................................... 20

Fed. R. Civ. P. 13(a)(1)(A) ..................................................................... 13

David J. Teece & Edward F. Sherry,
*A Public Policy Evaluation of RAND Decisions in the U.S. Courts*, 1 CRITERION J. ON INNOVATION 113 (2016) ............................ 24

ETSI *Guide on Intellectual Property Rights*,
https://www.etsi.org/images/files/ipr/etsi-guide-on-ipr.pdf ................ 11

Jorge Contreras, *A Brief History of FRAND: Analyzing Current Debates in Standard Setting and Antitrust Through a Historical Lens*,
80 ANTITRUST L.J. 39 (2015). ................................................................ 19

Tech HQ, Article Title [redacted]
https://tinyurl.com/Article Title [redacted] .......................................................... 22

Wikipedia, Licensee [redacted]
https://en.wikipedia.org/wiki/Licensee [redacted] ........................................ 22



Confidential Material Redacted

## REPLY BRIEF

A court's power to protect its proceedings by enjoining *private parties before the court* from pursuing interfering litigation elsewhere is longstanding. Precedent holds that ASIs are particularly appropriate—indeed, essential—in the standards context to protect adjudication of FRAND claims from holdup tactics like Ericsson's. This case fits a familiar pattern. The major risk of standard-setting is conferring holdup leverage on SEP holders like Ericsson, merely because their patents may be incorporated in a standard. SSOs like ETSI address that risk by requiring worldwide, enforceable, contractual FRAND commitments, in exchange for incorporating SEPs into the standard. That solution only works if FRAND commitments can be reliably enforced in court. The solution does not work if SEP holders can *eliminate any prospect of court enforcement* by launching worldwide injunction campaigns to force rushed "settlements" at inflated rates in violation of their contracts.

Ericsson does not dispute that it is doing exactly that with its injunctions in Brazil and Colombia. Lenovo's requested ASI would not order any foreign court or government to do anything, nor would it prevent Ericsson from litigating its foreign suits on the merits; it would only bar

Ericsson from seeking or enforcing *injunctions*. In similar circumstances, court after court—in the U.S. and elsewhere—has issued ASIs. Why not here?

Ericsson's answer repeats the district court's error of believing "dispositive" means necessarily producing a signed license. Ericsson conflates FRAND offers (which it uses as shorthand for compliance with its FRAND obligations) with FRAND rates, and ignores that compliance with its FRAND obligations is a gating issue for its entitlement to seek injunctions. The question whether Ericsson has complied with FRAND is undisputedly before the district court, and the answer to that question is dispositive: if Ericsson has not complied with FRAND, it cannot seek injunctions. No more is needed to reverse.

The bulk of Ericsson's brief tries to avoid that result by spinning a tale unmoored from reality. According to Ericsson, it is entitled to seek whatever relief a court will permit, because patents are "territorial," ASIs amount to "policing" the world, Ericsson's "offer" is FRAND, and Ericsson's admitted efforts to circumvent court adjudication of its FRAND commitment are about nothing more than "voluntary settlement." Ericsson's "territorial" arguments ignore its choice to encumber its worldwide

SEP portfolio with a contractual, enforceable, French-law-governed FRAND commitment and to ask a U.S. court to decide whether it complied with those contractual obligations. Its world-policing argument ignores precedent and mischaracterizes the relief requested here, which is limited to asking Ericsson to withdraw its injunctions, not its infringement suits. Ericsson's falsely suggests that all of its licensees, including those similarly situated to Lenovo, have agreed to pay Ericsson's demanded rate. And Ericsson relies in part on assertions about licenses it has not produced in discovery in this case. Ericsson's "voluntary settlement" framing simply denies the holdup problem that courts, governments and commentators have long recognized as acute in the standards context and warranting an ASI under the circumstances of this case.

Finally, the Court should reject Ericsson's plea for remand rather than reversal. In similar circumstances, this Court and other courts of appeals routinely instruct district courts to issue injunctions. Ericsson gives no reason for a different result. Ericsson simply wants more delay to circumvent its FRAND pledge and force a settlement at holdup rates. The Court should remand with instructions to issue the injunction.

## I. The District Court's Analysis of the "Dispositive" Prong is Legally Erroneous.

Ericsson no longer disputes that, under the ASI test, the parties in this case and the foreign proceedings are functionally the same. *See* OpeningBr.26-27. In defending the district court's analysis of the "dispositive" prong, Ericsson repeats the court's error of equating "dispositive" with "produce *a license*." RedBr.28. Ericsson contends that if the case does not end with a *signed license*, then "the parties would be left where they started," and nothing dispositive has happened. *Id.* Ericsson adds that the prospect of anything other than a signed license is effectively a waived argument for an erroneous "might be dispositive" standard. RedBr.31-32. Ericsson twists Lenovo's argument to avoid answering it. Simply put, resolution of this case will necessarily resolve whether Ericsson's injunctions are permissible under its contractual obligations: It is therefore dispositive.

### A. Resolution of Whether Ericsson Complied with Its FRAND Obligations Is Dispositive of Whether Ericsson Can Seek Injunctions for SEPs.

As explained, OpeningBr.28-33, and as Lenovo argued below, Appx2435-2437; Appx3170-3171, the question whether Ericsson has complied with its contractual obligation to make FRAND *offers* is a gating

issue that is alone *dispositive* of Ericsson's right to seek injunctions. If Ericsson has not complied with its FRAND obligations, then Ericsson cannot seek injunctions against Lenovo for alleged infringement of SEPs. *Huawei Techs. Co. v. Samsung Elecs. Co.*, No. 3:16-CV-2787, 2018 WL 1784065, at *8 (N.D. Cal. Apr. 13, 2018) ("[T]he *availability of injunctive relief* for [Ericsson's] SEPs *depends on* the breach of contract claims."); *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 882-85 (9th Cir. 2012). Thus, this case—as Ericsson pleaded it—will be "dispositive" of Ericsson's ability to seek injunctions against Lenovo based on SEPs. That does not depend on whether the litigation produces a signed license.[1]

The point is fundamental, and Ericsson's only direct response is to contend "any such argument should be presented to the Brazilian and Colombian courts," and the answer "turns on … the law of Brazil and Colombia." RedBr.38-39 (emphasis omitted). Ericsson repeats that patents are "territorial," RedBr.29, 53, and claims an entitlement to exploit

[1] Lenovo never argued otherwise. Appx3170 (Lenovo reply: "Ericsson's claim that '[t]he only way for Lenovo to dispose of foreign patent infringement actions is to sign a license' is contrary to the law."); *see also* Appx2435-2437; Appx3170-3171. Ericsson's arguments about "waiver," RedBr.32-33, and "mere possible effect on foreign actions," RedBr.34-37, thus rely on a mistaken premise.

an alleged Brazilian- and Colombian-law preference for injunctions. *E.g.*, RedBr.43, 53. But regardless of the forum, Ericsson contracted away its purported right to seek injunctive remedies absent compliance with its FRAND obligations: As *Microsoft* explained in rejecting a similar argument, Ericsson's position completely ignores the SEP holder's FRAND commitment. In *Microsoft*, as here, the contract "encompasse[d] … all of [the SEP holder's] standard-essential patents worldwide." 696 F.3d at 884. And when a U.S. court enforces the contractual FRAND commitment with respect to foreign patents, "the U.S. court *is not enforcing* [foreign] *patent law*, but, rather, *the private law of the contract between the parties*." *Id.* Ericsson does not dispute that its FRAND commitment is enforceable in district court—indeed, *Ericsson* was the one who filed the lawsuit purportedly seeking such an adjudication.

With respect to Ericsson's "territorial" argument, *Microsoft* explained "[a]lthough patents themselves are not extraterritorial, there is no reason a party may not freely agree to reservations or limitations on rights that it would have under foreign patent law (or any other rights that it may have under foreign law) in a contract enforceable in U.S. courts." 696 F.3d at 884. *Microsoft* continued:

> Courts should give effect to freely made contractual agreements. [SEP holder] made promises to the [SSO] to license its standard-essential patents worldwide to all comers. In exchange, it received the benefit of having its patents implicated in the standards. [SEP holder] could have withheld the promise at the price of having the [SSO] avoid its patents when setting standards, but chose not to.

*Id.* at 885.

So too here. In exchange for including its SEPs in the 5G standard, Ericsson freely made a contractual promise to comply with its FRAND obligations, including making FRAND offers and granting FRAND licenses, under the ETSI Intellectual Property Rights Policy. As Ericsson admits, "the construction, validity, and performance" of its obligations under the ETSI policy "is governed by *French* law," Appx1009(¶30), RedBr.6-7, not Brazil, or Colombia, or wherever Ericsson prefers to sue next. Here, as in *Microsoft*, the contract is undisputedly enforceable in district court, where Ericsson chose to file first. That is enough to reverse.

### B. Ericsson Cannot Distinguish *Microsoft v. Motorola*.

Ericsson has no persuasive answer for *Microsoft*'s reasoning. *First*, Ericsson observes that *Microsoft* involved a different standard and a Washington-state-law contract, RedBr.40-41 & n.7, but does not explain how that matters. In *Microsoft*, as here, the substance of the FRAND commitment was the same. *Microsoft*'s reasoning did not depend on state

law specifics—only that there was a contractual FRAND commitment, applicable to the SEP holder's worldwide portfolio, and enforceable in U.S. courts. 696 F.3d at 885.

*Second*, Ericsson is wrong to contend that this Court "reject[s]" *Microsoft*'s reasoning. RedBr.40-41, a theme Ericsson repeats throughout. RedBr.36-37, 42, 54-55. As explained, OpeningBr.31, *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1331-32 (Fed. Cir. 2014), rejects only a "*per se* rule that injunctions are unavailable for SEPs." None of Lenovo's arguments depend on any such rule, and neither does *Microsoft*. OpeningBr.31, 45-46. Ericsson admits, that *Microsoft* referred only "in dicta" to *arguments* about tension between injunctions and FRAND pledges, RedBr.41, but nonetheless treats *Microsoft* as applying a "per se rule" that this Court "rejected." Ericsson plainly misreads *Microsoft*.

*Finally,* Ericsson contends that *Microsoft* must have equated "dispositive" with "produce a license." RedBr.36. It did not. Ericsson quotes nothing from the 2012 *Microsoft* decision affirming the ASI. Instead, it crop-quotes a later 2015 decision for statements made at a bench trial *after* the ASI issued and whose significance was disputed even in 2015. RedBr.36 (quoting *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1038

(9th Cir. 2015) (*Microsoft II*) (referring to "June 12, 2012 status conference")). And it crop-quotes the district court's ASI decision to omit important context. RedBr.36. The full passage is the following:

> [A]t the conclusion of this matter, the court will have determined **(1)** whether Microsoft is entitled to a worldwide RAND license for Motorola's standard essential patents, including the European Patents, **(2)** whether Microsoft has repudiated its rights to such a license, <u>**(3)** whether Motorola may seek injunctive relief against Microsoft with respect to its standard essential patents</u>, and **(4)** in the event Microsoft is entitled to such a license, what the RAND terms are for such a license.
>
> Based on the issues before it, the court finds that this action is <u>dispositive of whether a German court may issue an injunction against Microsoft</u> for infringement of the European Patents.

871 F. Supp.2d 1089, 1099-1100 (W.D. Wash. 2012). Item #3—"Whether Microsoft may seek injunctive relief"—is sufficient to support the conclusion that "this action is dispositive of whether a German court may issue an injunction against Microsoft." Ericsson quotes only item #4 and suggests that the Ninth Circuit's affirmance (which did not mention it) somehow depended on that statement. It did not.

In any event, Ericsson conflates compliance with its obligations with FRAND *licenses*. As explained, the two are distinct. OpeningBr.31-32. Regardless, Lenovo has agreed to be bound by a judicial declaration

of FRAND terms and conditions for a cross-license—which Lenovo's counterclaim requests and which Ericsson contingently requests. OpeningBr.36 (citing record); *infra* §I.D. Even under Ericsson's strained reading, *Microsoft* is indistinguishable.

### C. Ericsson's View Renders Its FRAND Pledge Meaningless.

Ericsson denies that its FRAND pledge has any relevance to its ability to seek injunctions, but fails to support that premise. FRAND pledges would be meaningless if SEP holders could seek injunctions without regard for compliance. Under Ericsson's view, even if Ericsson demanded royalties amounting to 100% of the value of a smartphone, or refused to license its SEPs at all, Ericsson would be free to seek injunctions around the world against anyone who practiced the standard. FRAND pledges exist to prevent precisely that conduct. Under Ericsson's view, FRAND means only whatever Ericsson can force someone else to accept. Nothing supports that proposition.

Ericsson notes that the ETSI policy does not specify what remedies flow from a SEP holder's violation of its FRAND commitment. RedBr.38-39. That does not mean no remedies exist, or that a country's alleged preference for injunctions trumps Ericsson's contractual pledge to limit

the rights it would otherwise have under its patents. *Microsoft*, 696 F.3d at 885.

Ericsson crop-quotes the ETSI *Guide on Intellectual Property Rights*, RedBr.38, but the *Guide* explicitly "does not replace the ETSI IPR Policy [Ericsson's FRAND commitment] which takes precedence in all cases." *Guide* at 1 (Foreword), https://www.etsi.org/images/files/ipr/etsi-guide-on-ipr.pdf.The passage Ericsson cites (quoted in full below) means only that *ETSI itself* disclaims authority to resolve disputes:

> ETSI members should attempt to resolve any dispute related to the application of the IPR Policy bilaterally in a friendly manner.
>
> Should this fail, the members concerned are invited to inform the ETSI GA in case a friendly mediation can be offered by other ETSI members and/or the Secretariat.
>
> However, it should be noted that once an IPR (patent) has been granted, in the absence of an agreement between the parties involved, the national courts of law have the sole authority to resolve IPR disputes.

*Id.* §4.3. That does not mean Ericsson can disregard its contractual pledge encumbering its SEPs. Nor does Ericsson dispute that Lenovo is a third-party beneficiary of its pledge. *E.g.*, Appx4-5; Appx1054(¶202).

### D. The District Court Further Erred by Disregarding the Parties' Dueling FRAND Rate-Setting Claims.

The foregoing is sufficient to reverse. But *even if* the Court accepts Ericsson's suggestion that its obligation to make FRAND *offers* does not limit its ability to seek injunctions, the parties' dueling FRAND rate-setting claims would be dispositive of Ericsson's ability to seek injunctions. OpeningBr.33-38. Ericsson and Lenovo *both* filed claims asking the district court to declare a FRAND rate for a global cross-license. Ericsson does not dispute Lenovo's showing that the district court misread the authorities it cited and wrongly equated FRAND rate-setting with "draft[ing] agreements for the parties," Appx17, as opposed to enforcing the agreements they already made. Nor does Ericsson dispute that a claim for breach of a FRAND pledge often requires the court to decide a FRAND rate.

*First*, Ericsson observes that *its* request for FRAND rate-setting is "contingent" on finding that Ericsson's offer was not FRAND. RedBr.45. True, but irrelevant, as it ignores that Lenovo's counterclaim request for FRAND rate-setting was *not* contingent. Even if Ericsson complied with its FRAND obligations, the court must resolve Lenovo's counterclaim.

*Second*, Ericsson contends that because Lenovo's counterclaim was filed after the Brazilian and Colombian injunctions issued, this Court must ignore the counterclaim to avoid "gamesmanship." RedBr.45-46. But Lenovo's counterclaim was *compulsory*, *see* Fed. R. Civ. P. 13(a)(1)(A), sought the *same relief* as Ericsson's complaint's contingent request, and was filed a mere two months after Ericsson's original complaint. The only gamesmanship is Ericsson's "contingent" pleading to avoid full adjudication of its FRAND obligations.

*Third*, the rest of Ericsson's argument conflates FRAND *rates* with FRAND *offers*. RedBr.46-48. Ericsson is contractually required both to make FRAND *offers* and to grant FRAND *licenses*. Courts universally distinguish between the two. OpeningBr.31-32 (citing *TQ Delta, LLC v. ZyXEL Commc'ns, Inc.*, No. 1:13-cv-2013, 2018 WL 2932728, at *2 (D. Del. June 12, 2018) observing UK court's ruling in *Unwired Planet* that "a patent holder does not breach FRAND obligations by offering a license at higher than FRAND rates unless the rate is 'significantly' above the true FRAND rate."); *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 487-88 (5th Cir. 2021) (observing distinction between finding "offers were not a breach of FRAND" and finding "offers actually were

FRAND"); Appx2959 (*Ericsson v. Apple* district court case observing distinction). Ericsson is simply wrong to lump both together as "FRAND obligations," (*e.g.*, RedBr. 46-47) and assert that if its *offer* is FRAND, then that is the end of the matter. Precedent holds otherwise. At a minimum, thus, the district court erred as a matter of law at the threshold, and the decision must be reversed.

## II. This Court Should Reverse, and Order Entry of the Requested Antisuit Injunction.

If the Court agrees that the "dispositive" prong is met, it should remand with instructions to issue the injunction. The record is fully developed on the remaining ASI factors, and the issues are not complicated. Ericsson *does not dispute* that its foreign injunctions are *intended* to pressure Lenovo into settlement before any court can determine whether Ericsson has complied with its FRAND obligations. That is the classic "vexatious" holdup tactic that has led U.S. and foreign courts to issue antisuit injunctions to protect the domestic court's jurisdiction. It is settled law that antisuit injunctions against private parties in a contract dispute pose no significant threat to comity. That is particularly true where, as here, the domestic suit was filed first, and the antisuit injunction would only limit the enjoined party's ability to enforce certain injunctions, while

otherwise permitting full litigation on the merits. Time is of the essence, and further delay would only lend this Court's support to Ericsson's scheme.

Ericsson primarily responds with "breath[less]" rhetoric. RedBr.48. It blasts antisuit injunctions as *per se* offensive to comity, amounting to U.S. courts "policing" the world and "dictating" to foreign governments how to run their patent systems. It spins a distorted tale of the facts (mainly with citations to its own complaint)—baselessly suggesting its licensing demand *is* FRAND, while going to extraordinary lengths to prevent any court from adjudicating whether that is so. Ericsson concludes with an unsupported plea for remand rather than reversal, so it can run out the clock further. This Court should instruct the district court to issue the injunction; Ericsson fails to show otherwise.

### A. Ericsson's Appeals to "Comity" and "Territoriality" Disregard its Voluntary FRAND Commitment, and Contravene Precedent Regarding ASIs.

The second half of Ericsson's brief is mostly a broadside attack on antisuit injunctions. It repeats that patents are "territorial," that Brazil and Colombia favor injunctions, and that an antisuit injunction here would have "U.S. courts 'police' the use of intellectual property in foreign

countries," RedBr.48, or otherwise "dictate" to foreign courts. RedBr.4, 23, 38, 40, 53. That theme runs throughout Ericsson's attempt to deny that its foreign injunctions threaten the district court's jurisdiction, to vexatiously thwart its voluntary contractual obligations, to insist that an ASI would offend comity. RedBr.49-62. Ericsson briefs this appeal as if it simply owns foreign patents it believes Lenovo is infringing, and enforcement depends solely on individual countries' patent remedies.

Yet, as *Microsoft* and other courts have explained, the prospect of an ASI is the result of Ericsson's voluntary choices during standard-setting. Ericsson ignores that in exchange for including its SEPs in the standard, Ericsson freely encumbered its entire worldwide SEP portfolio with a pledge—enforceable in court under French law—to make offers and grant licenses on FRAND terms. *Microsoft*, 696 F.3d at 884-85. Ericsson did not have to make that choice. Nor did it have to file its lawsuit in the district court. But having freely committed to an undisputedly enforceable contract, and submitting to the district court's jurisdiction, it has no basis to complain about the prospect of an ASI. "Courts should give effect to freely made contractual agreements" such as this. *Microsoft*, 696 F.3d at 885. What Ericsson seeks is a bait-and-switch: to get the

benefits of saying it will license on FRAND terms, but to coerce supra-FRAND rates by seeking *ex parte* injunctions in jurisdictions willing to grant them. This Court should not countenance such behavior.

Despite its rhetoric, Ericsson does not actually dispute the "well-settled" proposition "that U.S. courts have the power to enjoin parties from pursuing litigation before foreign tribunals." *Sanofi-Aventis Deutschland GmbH v. Genentech, Inc.*, 716 F.3d 586, 591 (Fed. Cir. 2013); *see also The Salvore*, 36 F.2d 712, 714 (2d Cir. 1929); *Gage v. Riverside Trust Co.*, 86 F. 984, 994, 999 (C.C.S.D. Cal. 1898) (enjoining pursuit of UK proceedings). No one proposes to "dictate" or "police" any foreign country, court, or government. The requested injunction is directed solely to *Ericsson*, the private party who voluntarily encumbered its patents, and who invoked the district court's jurisdiction in the first place. *See* Appx2412-2414 (proposed ASI). The Supreme Court rejected similar rhetoric to Ericsson's more than 100 years ago. *Cole v. Cunningham*, 133 U.S. 107, 121 (1890) ("[T]he injunction is not directed to the courts of the other state, but simply to the parties litigant; and, although the power should be exercised with care, and with a just regard to the comity which ought to prevail among co-ordinate sovereignties, yet its existence cannot

at this day be denied."). More specifically, the proposed ASI here is narrowly tailored to Ericsson's pursuit of *injunctions* based on alleged SEPs. Appx2412-2414. It does not affect litigation of the merits in any court (of infringement, validity, or anything else), nor does it affect non-SEPs in any way. *See Microsoft*, 696 F.3d at 889 (affirming similarly "tailored" ASI); *Huawei*, 2018 WL 1784065, at *11-12 (time-limited ASI directed only to foreign injunctions "presents a negligible impact on comity").

It is true in general that injunctions are "extraordinary" relief, and should not be granted lightly. RedBr.20; *Winter v. NRDC*, 555 U.S. 7, 24 (2008). But in the standard-setting context, ASIs are often appropriate to respond to the extraordinary problem of SEP-holders like Ericsson launching global injunction campaigns to thwart adjudication of FRAND claims. *See, e.g.*, *Microsoft*, 696 F.3d at 875 (affirming ASI); *Huawei*, 2018 WL 1784065, at *9-11 (issuing ASI, explaining threat posed by foreign injunctions); *TCL Commc'n Tech. Holdings v. Telefokaktiebolaget LM Ericsson*, No. 8:14-CV-341, 2015 WL 13954417 (C.D. Cal. June 29, 2015) (issuing ASI).

As explained, American and foreign courts and agencies have repeatedly recognized the anticompetitive holdup threat posed by SEP-

holders seeking injunctions. OpeningBr.42-45, 4-7. Standards give every SEP-holder leverage over an entire industry, based on the value of the entire standard. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1209 (Fed. Cir. 2019). FRAND pledges exist to alleviate that risk. OpeningBr.6-7. The FRAND concept was created in the 1940s, and adopted by SSOs in the 1950s to guard against violations of the antitrust laws. Jorge Contreras, *A Brief History of FRAND: Analyzing Current Debates in Standard Setting and Antitrust Through a Historical Lens*, 80 ANTITRUST L.J. 39, 43-44 (2015).

Injunction campaigns like Ericsson's threaten the integrity of FRAND pledges and standard-setting, by pressuring the enjoined party to agree to a supra-FRAND settlement before any court can adjudicate contract claims based on the FRAND pledge. *Microsoft II*, 795 F.3d at 1046 (injunctions suggest "the real motivation was to induce [defendant] to agree to a license at a *higher-than-[F]RAND rate.*"); *TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. 8:14-CV-341, 2016 WL 6562075, at *4 (C.D. Cal. Aug. 9, 2016) (injunctions "initiated … to effectively force [defendant] to actually submit to terms that a reasonable fact-finder could find were not FRAND."). None of those

decisions depend on a *per se* rule that injunctions are unavailable for SEPs. Ericsson does not otherwise suggest they are wrong; it simply ignores or denies the well-documented holdup threat while inviting the Court to do the same.

For similar reasons, Ericsson's "voluntary settlement" slogan, *e.g.*, RedBr.49-53, should not be taken seriously. Ericsson cites this Court's Rule 33 as showing that "U.S. public policy … encourages settlement," and suggests any "financial distress" short of outright bankruptcy should be ignored. RedBr.52. This Court's rules "encourage[]" parties "to discuss settlement and to attempt settlement prior to the conclusion of merits briefing." Fed. Cir. R. 33(a). They do not endorse international injunction campaigns to evade contractual obligations. Ericsson twice repeats that its October 2023 demand is a "final" offer, RedBr.5, 11, meaning it is not open to any meaningful "discussions" of "settlement." And regardless, "encouraging settlement," is one objective among many, not to be pursued "at all costs." *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987). U.S. policy also holds parties to their contracts "[i]n all but the most unusual cases," *Atl. Marine Constr. Co. v. U.S. District Court*, 571 U.S. 49,

66 (2013); *Microsoft*, 696 F.3d at 885, and empowers courts to issue injunctions to protect their proceedings. *E.g.*, 28 U.S.C. §1651. Just so here.

### B. Ericsson's "Equities" Arguments Misstate Key Facts.

In contending that equities weigh against an ASI, RedBr.58-59, Ericsson relies on the factual tale in its statement of the case. RedBr.5-18. That is misleading at best, and most of Ericsson's record citations (those between Appx1001 and Appx1061) are to its complaint, not to evidence.

#### 1. Ericsson Fails to Identify Any Similarly Situated Licensee That Has Paid the Rate Ericsson Demands from Lenovo.

Ericsson repeatedly insinuates that its "offer" to Lenovo is FRAND. Yet Ericsson makes those statements in defense of its attempt to coerce settlement on its terms (whether FRAND or not) before any court can probe the truth of that proposition.

To contend its offer is FRAND, Ericsson says that two companies "pay many millions of dollars" to Ericsson, RedBr.8, allegedly at rates "equivalent" to the rate it demands from Lenovo. RedBr.10; *see also* RedBr.33 ("equivalent to what heavyweights … have agreed to pay"); RedBr.55 ("other smartphone manufacturers … have accepted the FRAND rate that Ericsson offered Lenovo."). Ericsson has never produced those licenses in discovery in this case, so should not make

assertions about their contents here. Ericsson's evidence of "equivalent" rates is *literally* conclusory—Ericsson's hired expert (Mills) summarized "*the results of* my license analysis" from another case, without providing the analysis, let alone the underlying licenses. Appx2790-2792.

If that were not suspicious enough, public information suggests Ericsson's conclusions are inflated. [redacted] allegedly paid either [redacted] per [redacted] per 5G device...," which Ericsson says is equivalent to "1.0% with a $4.00 cap." Appx2791. But in 2023, [redacted] sold [redacted] million smartphones. *See* Tech HQ, [redacted] https://tinyurl.com/[redacted] At [redacted] per [redacted], that is [redacted] per smartphone—far less than the 1.0% or $4.00 "equivalent" Ericsson asserts. [redacted] is not among Lenovo's competitors, Appx2453(¶10), and sells on the order of [redacted] million phones per year since 2019. *See* Wikipedia, [redacted] https://en.wikipedia.org/wiki/[redacted] That is well below the threshold to trigger the rate Ericsson relies on. Appx2792.

Ericsson also misleads when it insinuates any court has blessed the rate it demands from Lenovo. Ericsson cites the *HTC* litigation, RedBr.12, which is inconclusive at best. The Fifth Circuit observed that


Confidential Material Redacted

several "larger mobile device manufacturers, like Apple and Huawei, received *significantly more favorable licensing agreements"* than Ericsson's purported FRAND offer. 12 F.4th at 482. The court also observed that Ericsson countered with evidence "that those companies were *not similarly situated to HTC*." *Id.* at 488. HTC may not have been "similarly situated" to the "larger mobile device manufacturers," but Lenovo is. Appx2453(¶10). Lenovo, moreover, had a **Term** cross license to a significant portion of Ericsson's portfolio—which Ericsson does not dispute, *see* RedBr.10, and which the *HTC* litigation does not account for.

Ericsson likewise misleads when it suggests that the Brazilian and Colombian tribunals considered whether Ericsson's demand was FRAND. RedBr.14. The Brazilian injunction order states explicitly that Ericsson's submission "**quote re: procedure**" and makes no mention of "FRAND." Appx2465. The Colombian injunction is silent on the point, too, and was entered *ex parte*—without hearing from Lenovo. Appx2541. Ericsson omits, moreover, that it filed briefs in Brazil and Colombia denying that **(a)** FRAND considerations are relevant to

either tribunal's analysis, or **(b)** they limit a SEP holder's ability to seek injunctions.[2]

Ericsson's misleading statements to support its demanded rate show the lack of merit in its opposition. And they underscore the danger that an affirmance would pose here. Patent owners' initial licensing offers are often found to be unreasonable when tested in court. In the *TCL* litigation, *Ericsson* demanded a 3% royalty, then 2%, then 1.5% for its U.S. 4G SEPs, but the court determined that a FRAND rate was 0.45%. *TCL Commc'n Tech Holdings, Ltd v. Telefonaktiebolaget LM Ericsson*, No. 8:14-CV-341,, 2018 WL 4488286, at *3, *52 (C.D. Cal. Sept. 14, 2018), *vacated on other grounds*, 943 F.3d 1360, 1363-64 (Fed. Cir. 2019). In the *Microsoft v. Motorola* litigation, the court determined that FRAND rates were less than 1% of what the SEP holder initially demanded. David J. Teece & Edward F. Sherry, *A Public Policy Evaluation of RAND*

---

[2] This refers to briefs Ericsson's November 21, 2023 brief in Brazil (§§90-94), its March 11, 2024 brief in Brazil (§24), and its undated submission in Colombia titled *Notice of Appeal Brought Against Ruling No. 1399956 of 30 November and Ruling No. 145875 of 12 December 2023* (§§2.1b-c, 2.2b). Like the "April 9" Lenovo filing Ericsson references (RedBr.15; *see infra* p.26 & n.3), these briefs are not in the district court record. They are pleadings of which the Court can take judicial notice if need be, and which Lenovo will provide if the Court desires.

*Decisions in the U.S. Courts*, 1 CRITERION J. ON INNOVATION 113, 119 & n.42 (2016) (discussing *Microsoft Corp v. Motorola, Inc.*, No. C10-1823, 2013 WL 2111217 (W.D. Wash. Apr. 25, 2013)). In *In re Innovatio IP Ventures, LLC Patent Litig.*, the court set a FRAND rate of 9.56 cents per unit, less than 3% of the SEP holder's demands for $3.39 to $36.90 per unit. 2013 WL 5593609, at *3, *12 (N.D. Ill. Oct. 3, 2013). When SEP holders like Ericsson evade judicial review of their licensing demands, they threaten the integrity of the standard-setting process through a bait-and-switch, and raise the prices of standard-compliant products for everyone.

### 2. Ericsson Misstates Procedures in Brazil and Colombia, and the Parties' Negotiation History.

Ericsson's misleading factual assertions extend to the procedures applied in Brazil and Colombia, and the parties' conduct in licensing. For instance, Ericsson labels an "April 9" brief Lenovo filed in Brazil as a request for "delay." RedBr.15. The brief is Lenovo's opposition to Ericsson's request for **procedure** on **issue** Rather than adjudicating the merits, Ericsson wanted a proceeding based only on

procedure to a person and a person who works with person. Lenovo opposed on due process grounds, not "delay."[3]

Ericsson's characterization of Colombian proceedings is similarly misleading. RedBr.15-16. The Colombian Superintendence of Industry and Commerce is not a "court." *Compare* RedBr.16 ("a Colombian court"), *with* Appx2530(¶3) (Colombian counsel's declaration: the SIC "is an administrative office of the executive branch of power, which is the administrative regulator" that "also holds special judicial powers"). Its proceedings are indeed "secret." *Compare* RedBr.15 ("Lenovo again incorrectly labels the proceedings 'secret.'"), *with* Appx2532(¶8) ("The *ex parte* injunction proceedings are held in secret. Although a defendant may request to be admitted as a party and for access to the judicial file, the SIC or court can issue the writ or decree before it receives such a request … or before the defendant can access the file."). The injunctions here were issued before Lenovo's counsel could even obtain access to the case. Appx2541(¶¶15-16).

[3] The brief is not in the record and was not the basis of the district court's decision. If this Court views Ericsson's characterization as relevant, or otherwise desires to see the brief or take judicial notice, Lenovo will provide it.

Ericsson also accuses Lenovo of stalling negotiations "for two years" over terms of a non-disclosure agreement. RedBr.11. Ericsson stalled by raising meritless complaints about Lenovo's legitimate concerns. Among other things, Ericsson refused to allow for reasonable mechanisms to Lenovo's suppliers (with indemnification obligations) see certain confidential information. *E.g.*, Appx2917(¶4). And nothing supports Ericsson's assertion that its initial draft was "industry standard," that Lenovo was responsible for "two years" of delay, or that Lenovo reserved any right "to sue Ericsson in China at any time." RedBr.11. Rather, Ericsson's conduct confirms that lack of an NDA was not the reason for its failure to make an offer for 5G SEPs: its October 11, 2023, offer came without the cover of an NDA. Lenovo negotiated in good faith to reach agreement on an NDA, and Ericsson's response to Lenovo's 2023 edits (Appx2869(¶8); Appx2918-2920) was a lawsuit four months later.

Ericsson misleads when it suggests it made a 5G offer to Lenovo around 2018. RedBr.10 ("After the 5G standard was finalized in June 2018, Ericsson included its 5G SEPs in negotiations with Lenovo."). Its only citations are to similar allegations in its complaint, Appx1013, Appx1019—which cite no evidence and which Lenovo denies in relevant

part (Appx2058(¶76)), and to a news article saying nothing about Ericsson's negotiations with Lenovo. Appx3059-3060.

Finally, Ericsson's discussion of UK proceedings is yet further misdirection. RedBr.1-2, 13-17, 19, 30, 49, 55, 58. For instance, Ericsson equates its Brazilian and Colombian injunctions with Lenovo's request for an injunction in the UK. They are not the same. As Lenovo made clear, the injunction Lenovo seeks (for which a hearing is set for May 20-22) will only bite *if* and *for so long* as Ericsson is maintaining injunctions against Lenovo. The requested UK injunction would leave Ericsson free to continue to operate while the terms of a FRAND license are resolved by the UK court or the district court here—provided only that Ericsson affords the same opportunity to Lenovo by withdrawing its injunctions in Brazil and Colombia. Appx3435-3436. Only if that relief is denied does Lenovo request a preliminary injunction to restore reciprocity with the injunctions Ericsson maintains in Brazil and Colombia. *Id.* Ericsson also faults aspects of Lenovo's offer of security, RedBr.16, but ignores Lenovo's later communication and its ASI briefing, which make clear that Lenovo would proceed in the Eastern District of North Carolina with rate setting, and *not* condition any bond on proceeding in the UK. *E.g.*, Appx2631-2632

(Lenovo December 26, 2023 letter); Appx2423 ("To be clear, Lenovo is willing to proceed in this Court (or in the UK) to have a global FRAND cross-license rate determination, and it has told Ericsson and the UK court as much."); Appx3435-3436 (Lenovo notice).

More fundamentally, Ericsson is wrong to contend that Lenovo in any sense "seek[s] to push aside U.S. courts in favor of its own preferred forum." RedBr.1-2. As Lenovo's filings make clear, Lenovo wants a court to determine a FRAND rate for Ericsson's 5G SEPs. Ericsson sued in the US, making a contingent request for rate-setting. Lenovo sued in the UK for rate-setting (an approach Ericsson has endorsed in the past when its interests were different, *see* OpeningBr.11-12). Lenovo seeks to enforce Ericsson's FRAND pledge in two courts willing to do so. Ericsson seeks to avoid its FRAND obligation by thwarting litigation in *both* fora, and would now play one against the other. Lenovo's need to pursue its UK action arises from Ericsson's attempt to coerce settlement on non-FRAND terms before the US courts can determine anything. In all events, nothing about Lenovo's action is inconsistent with any obligations that Lenovo has undertaken—not so for Ericsson, which is what this appeal is about.

### C. The Court Should Remand with Instructions to Issue the ASI.

In a single concluding paragraph, RedBr.62-63, Ericsson asks this Court to remand rather than reverse. Ericsson gestures vaguely at "discretion" and "developing" "facts," (*id.*), but identifies nothing specific. That "skeletal," "undeveloped" argument is waived. *Arunachalam v. IBM Corp.*, 989 F.3d 988, 999 (Fed. Cir. 2021). It is also meritless. The record on Lenovo's ASI request is fully developed, the district court's legal errors require reversal, and time is of the essence. Other than denying that the district court erred, Ericsson does not seriously dispute any of this.

In similar circumstances, courts of appeals have rejected arguments like Ericsson's and remanded with instructions to issue the injunction—including antisuit injunctions. *See Nippon Shinyaku Co., v. Sarepta Therapeutics, Inc.*, 25 F.4th 998, 1009 (Fed. Cir. 2022) (antisuit injunction: "[w]e reverse the decision of the district court, and we remand for entry of a preliminary injunction" requiring withdrawal of IPRs); *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 995 (9th Cir. 2006) (reversing and remanding for entry of antisuit inunction "barring Andina from proceeding" with litigation in Ecuador); *Matter of Chicago,*

*Milwaukee, St. Paul, & Pac. R.R.*, 878 F.2d 182, 186 (7th Cir. 1989) (reversing and remanding for antisuit injunction).[4]

The court should do the same here, particularly because time is of the essence. In *Nippon Shinyaku*, this Court accepted an expedited appeal, and issued the injunction in time for the enjoined party to withdraw its IPRs before the PTAB's deadline for final written decisions. In *Am. Eutectic Welding Alloys Sales Co. v. Rodriguez*, 480 F.2d 223, 229 (1st Cir. 1973), the First Circuit remanded "with instructions to issue a preliminary injunction forthwith," recognizing that "[i]f plaintiffs are to win anything but a [Pyrrhic] victory, they must receive relief without further delay."

---

[4] *See also, e.g.*, *Core Labs. LP v. Spectrum Tracer Servs., LLC*, 532 F. App'x 904, 911 (Fed. Cir. 2013) (reversing denial of injunction, remanding with instructions to enter injunction); *FTC v. H.J. Heinz Co.*, 246 F.3d 708, 727 (D.C. Cir. 2001) (same); *Otto v. City of Boca Raton*, 981 F.3d 854, 872 (11th Cir. 2020) (same); *Utah Licensed Bev. Ass'n v. Leavitt*, 256 F.3d 1061, 1077 (10th Cir. 2001) (same); *Cellco P'Ship v. Hatch*, 431 F.3d 1077, 1085 (8th Cir. 2005) (same); *Milsen Co. v. Southland Corp.*, 454 F.2d 363, 369 (7th Cir. 1972) (same); *Bays v. City of Fairborn*, 668 F.3d 814, 825 (6th Cir. 2012) (same); *NLRB v. Roywood Corp.*, 429 F.2d 964, 970-71 (5th Cir. 1970) (same); *Cooley v. Clifton Power Corp.*, 747 F.2d 258, 260 (4th Cir. 1984) (same); *EEOC v. City of Altoona*, 723 F.2d 4, 5 (3d Cir. 1983) (same); *Patton v. Dole*, 806 F.2d 24, 26 (2d Cir. 1986) (same); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 644 (1st Cir. 1992) (same).

The same is true here. A simple remand would aid Ericsson's delay tactics. Ericsson identifies no genuine issues warranting further proceedings. This court should reverse.

## CONCLUSION

The Court should reverse, and order the district court to enter Lenovo's requested antisuit injunction.

May 15, 2024

Respectfully submitted,

*/s/ John C. O'Quinn*

John C. O'Quinn
F. Christopher Mizzo
Jason M. Wilcox
William H. Burgess
Diva Hollis
Lucas Funk
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, DC 20004
(202) 389-5000

Greg S. Arovas
Leslie M. Schmidt
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

## RULE 25.1(e)(2) CERTIFICATE OF CONFIDENTIAL MATERIAL

In this brief, **39** unique words are marked confidential, and a motion to waive the 15-word limit has been filed under Fed. Cir. R. 25.1(d)(3).

/s/ *John C. O'Quinn*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

This brief complies with the type-volume limitations of the Federal Rules of Appellate Procedure and the Rules of this Court. The brief contains **6288** words.

/s/ *John C. O'Quinn*

## CERTIFICATE OF SERVICE

On May 15, 2024, the non-confidential version of this brief was filed by CM/ECF, and the non-confidential and confidential versions were served by e-mail to the following counsel for appellees, under the parties' agreement to accept electronic service:

Nicholas Mathews (nmathews@mckoolsmith.com)
Alexander J. Chern (achern@mckoolsmith.com)
Blake Bailey (bbailey@mckoolsmith.com)
Kevin P. Hess (khess@mckoolsmith.com)
Mitch Verboncoeur (mverboncoeur@mckoolsmith.com)
Matthew P. McGuire (matt.mcguire@alston.com)
Thomas G. Walker (thomas.walker@alston.com)
John D. Haynes (john.haynes@alston.com)
Katherine M. Donald (katie.donald@alston.com)
Theodore Stevenson (ted.stevenson@alston.com)

/s/ *John C. O'Quinn*