# United States Court of Appeals for the Federal Circuit

---

**TELEFONAKTIEBOLAGET LM ERICSSON,**
*Plaintiff/Counterclaim Defendant-Appellee*

**ERICSSON AB, ERICSSON, INC.,**
*Counterclaim Defendants-Appellees*

**v.**

**LENOVO (UNITED STATES), INC., MOTOROLA MOBILITY LLC,**
*Defendants/Counter-Claimants-Appellants*

**LENOVO (SHANGHAI) ELECTRONICS TECHNOLOGY CO. LTD., LENOVO BEIJING, LTD., LENOVO GROUP LIMITED, MOTOROLA (WUHAN) MOBILITY TECHNOLOGIES COMMUNICATION CO., LTD.,**
*Defendants*

---

2024-1515

---

Appeal from the United States District Court for the Eastern District of North Carolina in No. 5:23-cv-00569-BO-RJ, Judge Terrence William Boyle.

---

Decided: October 24, 2024

---

JEFFREY A. LAMKEN, MoloLamken LLP, Washington, DC, argued for plaintiff/counterclaim defendant-appellee and counterclaim defendants-appellees. Also represented by KAYVON GHAYOUMI, RAYINER HASHEM, CALEB HAYES-DEATS, LUCAS M. WALKER; CATHERINE MARTINEZ, New York, NY; BLAKE H. BAILEY, McKool Smith, P.C., Houston, TX; ALEXANDER JEFFERSON CHERN, NICHOLAS M. MATHEWS, Dallas, TX; THEODORE STEVENSON, III, Alston & Bird LLP, Dallas, TX.

JOHN C. O'QUINN, Kirkland & Ellis LLP, Washington, DC, argued for defendants/counter-claimants-appellants. Also represented by WILLIAM H. BURGESS, LUCAS HENRY FUNK, DIVA R. HOLLIS, CHRISTOPHER MIZZO, JASON M. WILCOX; GREG AROVAS, LESLIE M. SCHMIDT, New York, NY.

---

Before LOURIE, PROST, and REYNA, *Circuit Judges*.

PROST, *Circuit Judge*.

Lenovo asked the U.S. District Court for the Eastern District of North Carolina to issue an antisuit injunction prohibiting Ericsson from, among other things, enforcing injunctions that Ericsson had obtained in Colombia and Brazil.[1] The district court denied Lenovo's request, and Lenovo appeals. We vacate the district court's denial and remand.

---

[1] For simplicity's sake, "Lenovo" refers, collectively or individually, to appellants Lenovo (United States), Inc., Motorola Mobility LLC, and any relevant subsidiaries or affiliates thereof; "Ericsson" refers, collectively or individually, to appellees Telefonaktiebolaget LM Ericsson, Ericsson AB, and Ericsson, Inc.; and, unless context indicates otherwise, the "parties" refer to Lenovo and Ericsson.

## BACKGROUND

### I

This dispute concerns the 5G wireless-communication standard developed by the European Telecommunications Standards Institute ("ETSI")[2]—and, particularly, patents declared to be essential to complying with that standard (standard-essential patents or "SEPs").

ETSI develops technical standards that ensure interoperability among different companies' products. Because SEPs, by definition, *must* be practiced in order to comply with a given standard, SEP holders "wield significant power over [standard] implementers during licensing negotiations." *TCL Commc'n Tech. Holdings Ltd. v. Telefonaktiebolaget LM Ericsson*, 943 F.3d 1360, 1364 (Fed. Cir. 2019); *see also Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1209 (Fed. Cir. 2014) (observing that SEP holders could potentially "inhibit widespread adoption of [a] standard" by "demand[ing] excessive royalties after companies are locked into using [the] standard").

To address SEP-related concerns, ETSI has an Intellectual Property Rights ("IPR") policy under which SEP holders declare that they are "prepared to grant irrevocable licen[s]es" to their SEPs on "fair, reasonable[,] and non-discriminatory ('FRAND') terms and conditions." J.A. 2137–38 (quoting ETSI IPR policy cl. 6.1); J.A. 1009–10 (same). The parties refer to this declaration as a "FRAND commitment," and we do the same. Lenovo and Ericsson are both ETSI members, and both have made a

---

[2] More specifically, development of the 5G standard occurred through ETSI's participation in the Third Generation Partnership Project.

FRAND commitment.[3] The parties agree that the FRAND commitment is a contract, governed by French law, that they can enforce against the other. They also agree that the FRAND commitment includes an obligation to negotiate in good faith over licenses to SEPs.[4]

## II

Lenovo and Ericsson have, for some time now, attempted to agree on a global cross-license to SEPs of the other, which would include Ericsson's 5G SEPs.[5] With an agreement remaining out of reach, they took legal action—both here and abroad.

On October 11, 2023, Ericsson made what it calls a "final licensing offer" to Lenovo and, that same day, filed the instant suit against Lenovo. Appellee's Br. 11. Ericsson's complaint alleges that Lenovo infringed four of Ericsson's U.S. 5G SEPs and breached its FRAND commitment at least by failing to negotiate in good faith. The complaint also seeks a declaration that Ericsson has complied with *its* FRAND commitment regarding its offer to Lenovo. And, if Ericsson's offer is found to be inconsistent with its FRAND commitment, the complaint

---

[3] A FRAND commitment "may be made subject to the condition that those who seek licen[s]es agree to reciprocate." *See* J.A. 2137 (quoting ETSI IPR policy cl. 6.1). The parties represent that their respective FRAND commitments are conditioned on such reciprocity. *See* J.A. 2138 (Lenovo); J.A. 1010 (Ericsson).

[4] At least one way an SEP holder can satisfy this good-faith-negotiating obligation is by making an offer at a rate that is actually FRAND. In other words, if an SEP holder has already made such an offer, this "negotiating" obligation requires no more of the SEP holder.

[5] In referring to a party's SEPs, we assume that they are subject to the FRAND commitment but express no opinion on whether they are, in fact, standard-essential.

asks the district court to determine a FRAND rate for a global cross-license between the parties.

Two days later, on October 13, 2023, Lenovo sued Ericsson in the United Kingdom, asking the court there to determine FRAND terms for a global cross-license between the parties. Lenovo would later, on December 15, 2023, ask that court for an injunction prohibiting Ericsson from infringing one of Lenovo's U.K. 5G SEPs.

Ericsson, for its part, initiated proceedings against Lenovo in Colombia and Brazil on November 20 and 21, 2023, respectively. Ericsson alleged that Lenovo infringed its Colombian and Brazilian 5G SEPs, and it sought a preliminary injunction in each country prohibiting infringement of those respective patents. It secured injunctions in both countries—in Brazil on November 27, 2023, and in Colombia on December 13, 2023.

On December 14, 2023—after the Colombian and Brazilian injunctions against Lenovo were entered—Lenovo asserted counterclaims in the district-court suit. Lenovo's amended counterclaims, filed the next day, roughly mirror the claims in Ericsson's complaint; they allege that Ericsson infringed four of Lenovo's U.S. 5G SEPs and breached its FRAND commitment at least by failing to negotiate in good faith. The counterclaims also seek a "judicial declaration that sets the FRAND terms and conditions for a global patent cross-license" between the parties. J.A. 2154.

III

On December 29, 2023, Lenovo moved the district court to enter an antisuit injunction prohibiting Ericsson from, among other things, enforcing its Colombian and Brazilian injunctions.

The district court, in denying Lenovo's motion, began by setting forth the three-part analytical framework—drawn largely from the Ninth Circuit's opinion in *Microsoft*

*Corp. v. Motorola, Inc.*, 696 F.3d 872 (9th Cir. 2012)—that it would apply to Lenovo's foreign antisuit-injunction request. Under this framework, there is a first, "threshold" requirement: the parties and issues must be the same in both the domestic and foreign suits, and the domestic suit must be dispositive of the foreign action to be enjoined. *See Telefonaktiebolaget LM Ericsson v. Lenovo (United States), Inc.*, No. 5:23-cv-569, 2024 WL 645319, at *6 (E.D.N.C. Feb. 14, 2024) ("*District Court Opinion*") (citing *Microsoft*, 696 F.3d at 882). Second, the domestic court considers whether at least one of the antisuit-injunction factors applies, including "whether the foreign litigation would (1) frustrate a policy of the forum issuing the [antisuit] injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's *in rem* or *quasi in rem* jurisdiction; or (4) where the proceedings prejudice other equitable consideration[s]." *See id.* (citing *Microsoft*, 696 F.3d at 882). Third, the domestic court considers the antisuit injunction's impact on comity. *See id.*

The district court concluded that the instant suit was not dispositive of the foreign action, and it therefore denied the requested antisuit injunction without reaching the second and third parts of the analysis.[6] In part because of how it understood *Microsoft*, the court reasoned that, to be dispositive, the domestic suit would have to result in a global cross-license between the parties. *See id.* at *8–9. In the court's view, however, the instant suit would not necessarily lead to this result. For example, although Ericsson had asked the district court to set a FRAND rate for a global cross-license, that request was contingent upon Ericsson's offer being found inconsistent with its FRAND commitment in the first place. So, the court reasoned, if it

---

[6] The district court also determined that the parties in the domestic and foreign suits are the same for purposes of the antisuit-injunction analysis. *Id.* at *7. That determination is undisputed in this appeal.

determined that Ericsson's offer was *consistent* with its FRAND commitment, then the court would have no occasion to resolve Ericsson's request to set a rate for a global cross-license. *See id.* at *8. Further, the court noted, Lenovo had not stipulated to agree to Ericsson's offer even if the offer was determined to be consistent with Ericsson's FRAND commitment. *See id.* As to Lenovo's *counterclaim* seeking a declaration of a FRAND rate for a global cross-license, while the court acknowledged it—and even seemed to characterize it as *not* contingent—the court nonetheless maintained its conclusion that the instant suit would not necessarily lead to a global cross-license between the parties. *See id.*

Lenovo timely appealed the district court's denial of its motion for an antisuit injunction. We have jurisdiction under 28 U.S.C. § 1292(c)(1).

## Discussion

### I

We review a district court's decision on whether to issue an antisuit injunction under the regional circuit's law. *Sanofi-Aventis Deutschland GmbH v. Genentech, Inc.*, 716 F.3d 586, 590–91 (Fed. Cir. 2013). The Fourth Circuit reviews such decisions for abuse of discretion. *See BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 479 (4th Cir. 2018) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 939 (4th Cir. 1995)); *see also Pendleton v. Jividen*, 96 F.4th 652, 656 (4th Cir. 2024) (preliminary and permanent injunctive relief generally). "A ruling that rests on an error of law is necessarily an abuse of discretion." *Pendleton*, 96 F.4th at 656.

Courts that have analyzed foreign-antisuit-injunction requests have used—at least in substance—the general framework as articulated in the Ninth Circuit's *Microsoft* opinion. *See, e.g.*, *1st Source Bank v. Neto*, 861 F.3d 607, 613 (7th Cir. 2017); *Paramedics Electromedicina*

*Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 652, 654–55 (2d Cir. 2004). This is what the parties agreed that the district court should use, and what the district court did in fact use. Again, this framework has three parts: *first*, a threshold requirement that the parties and issues be the same as between the domestic and foreign suits, and that the domestic suit be "dispositive of the [foreign] action to be enjoined"; *second*, consideration of whether one of the antisuit-injunction factors applies, including "whether the foreign litigation would (1) frustrate a policy of the forum issuing the [antisuit] injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's *in rem* or *quasi in rem* jurisdiction; or (4) where the proceedings prejudice other equitable considerations"; and *third*, consideration of "whether the [antisuit] injunction's impact on comity is tolerable." *Microsoft*, 696 F.3d at 881–82 (cleaned up).[7]

Our analysis, therefore, uses the framework set forth in *Microsoft*—though, again, we will resolve only the first, threshold requirement in that framework. And, to the

---

[7] Although the Fourth Circuit has not explicitly set forth the precise framework it would use to analyze a foreign-antisuit-injunction request, *cf. BAE*, 884 F.3d at 479, for reasons the Fourth Circuit has noted, any difference in competing frameworks is immaterial for purposes of this appeal. That is because: (1) the primary difference among them concerns the weight given to comity, *id.*—a part of the analysis that the district court deemed unnecessary to resolve, and which we likewise do not resolve; and (2) the various frameworks require, as a threshold matter, that the parties and issues be the same as between the domestic and foreign suits, *id.* at 479 n.15—a requirement that contemplates whether the domestic suit is "dispositive" of the foreign action, *see, e.g.*, *Sanofi*, 716 F.3d at 591, and which is the only part of the overall analysis we resolve in this appeal.

extent that courts differ in their *application* of this threshold requirement, absent more specific guidance from the Fourth Circuit, we are guided (in this appeal) in large part by *Microsoft* itself, which involved similar facts and issues—namely: SEPs, a commitment like the FRAND commitment here, and a foreign SEP-based injunction.

## II

The key dispute here is whether the instant suit is dispositive of the Colombian and Brazilian actions to be enjoined.

Lenovo says that it is. Specifically, Lenovo maintains that Ericsson's FRAND commitment precludes Ericsson from pursuing SEP-based injunctive relief unless it has *first* complied with the commitment's obligation to negotiate in good faith over a license to those SEPs. Therefore, the argument goes, whether Ericsson has complied with that obligation—an issue before the district court—is dispositive of Ericsson's ability to pursue its Colombian and Brazilian injunctions. *See, e.g.*, Appellant's Br. 29–30.

For the reasons below, we agree with Lenovo and conclude that the "dispositive" requirement is met here. Because *Microsoft* is central to that conclusion, we begin by recounting that case. We then address, in view of *Microsoft*, the parties' competing positions and the district court's reasoning. We finally confirm why the "dispositive" requirement is met here, which necessitates vacating the district court's denial and remanding, given that its denial rested solely on a contrary conclusion.

### A

In *Microsoft*, an SEP holder (Motorola) had made a commitment similar to the ETSI FRAND commitment here. *See Microsoft Corp. v. Motorola, Inc.*, 871 F. Supp. 2d

1089, 1093–94 (W.D. Wash. 2012).[8] After Motorola offered to license its SEPs to Microsoft on certain terms, Microsoft sued Motorola in district court, alleging that Motorola had breached its commitment by proposing unreasonable terms. Microsoft also sought a declaration of entitlement to a license to Motorola's SEPs on RAND terms. *Id.* at 1094–95, 1099 n.12.

More than six months after Microsoft's initial complaint against Motorola, Motorola initiated a separate proceeding in Germany. In the German proceeding, Motorola alleged that Microsoft infringed two of Motorola's European SEPs, and it sought an injunction prohibiting infringement of those patents. *Id.* at 1096 & n.8. In advance of the German court's anticipated decision, Microsoft moved the district court for an antisuit injunction "only to enjoin[] Motorola from enforcing any injunctive relief it may receive" in the German proceeding as to the SEPs at issue. *Id.* at 1096.

The district court granted Microsoft's motion and issued the requested antisuit injunction. The court had already decided that Motorola's RAND commitment was a contract enforceable by Microsoft. *Id.* at 1098. It also noted that Microsoft (through a separate motion) had "squarely placed before th[e] court the issue of whether injunctive relief is an appropriate remedy for infringement" of Motorola's SEPs. *Id.* at 1099. In analyzing the "dispositive" requirement, the court observed that

> at the conclusion of this matter, the court will have determined (1) whether Microsoft is entitled to a worldwide RAND license for Motorola's [SEPs] . . . , (2) whether Microsoft has repudiated its rights to such a license, (3) *whether Motorola*

---

[8] The district court's and Ninth Circuit's opinions in *Microsoft* referred to the commitment with the acronym "RAND" (reasonable and non-discriminatory).

> *may seek injunctive relief against Microsoft with respect to its* [*SEPs*], and (4) in the event Microsoft is entitled to such a license, what the RAND terms are for such a license.

*Id.* (emphasis added). The court then concluded: "Based on the issues before it, . . . this [suit] is dispositive of whether a German court may issue an injunction against Microsoft for infringement of the European [SEPs]." *Id.* at 1099–1100; *see also id.* at 1100 (reiterating, in the next sentence, that "[i]ssuance of injunctive relief with respect to the European [SEPs] is an issue squarely before this court"). It further specified that its antisuit injunction would be "limited to enjoining Motorola from enforcing any injunctive relief that it may receive" in the German proceeding as to the SEPs at issue; it would "in no way enjoin[] Motorola from pursuing the German [proceeding] and receiving monetary damages (or any other non-injunctive relief)" or "prohibit[] further proceedings in Germany." *Id.* at 1100.[9]

On appeal, the Ninth Circuit affirmed the antisuit injunction. As to the "dispositive" requirement, the court affirmed the district court's determination that the contract issues before the district court "could resolve the German patent claims." *See Microsoft*, 696 F.3d at 883. Specifically, the court saw no legal error in "[t]he district court's conclusions that Motorola's RAND [commitment] . . . governs in some way what actions Motorola may take to enforce its [SEPs]." *Id.* at 884. The court, elaborating on the RAND commitment at issue, opined that "[i]mplicit in such a sweeping promise is, at least arguably, a

[9] Although the district court made these statements with reference to a temporary restraining order ("TRO") it had previously entered, *id.*, because the court converted its TRO into its ultimate antisuit injunction, *id.* at 1103–04, the statements apply equally to that injunction.

guarantee that the patent-holder will not take steps to keep would-be users from using the patented material, such as seeking an injunction, but will instead proffer licenses consistent with the commitment made." *Id.*

Ultimately, on the "dispositive" requirement, the Ninth Circuit concluded that "the district court did not abuse its discretion in determining that Microsoft's contract-based claims, including its claim that the RAND commitment precludes injunctive relief, would, if decided in favor of Microsoft, determine the propriety of the enforcement by Motorola of the injunctive relief obtained in Germany." *Id.* at 885. And, like the district court, the court specified that the antisuit injunction "le[ft] Motorola free to continue litigating its German patent claims against Microsoft as to damages or other non-injunctive remedies to which it may be entitled. Indeed, depending on the outcome of the district court litigation, Motorola may well ultimately be able to enforce the German injunction too." *Id.* at 889.

B

With *Microsoft* in mind, we turn now to the parties' positions and the district court's reasoning on the "dispositive" requirement.

Lenovo maintains that Ericsson's FRAND commitment precludes Ericsson from pursuing SEP-based injunctive relief unless it has *first* complied with the commitment's obligation to negotiate in good faith over a license to those SEPs. Thus, in Lenovo's view, the "dispositive" requirement is met, because whether Ericsson *has* complied with its good-faith-negotiating obligation is an issue that (1) is before the district court—both via Ericsson's claims and Lenovo's counterclaims; and (2) will, if decided in Lenovo's favor (i.e., that Ericsson has *not* so complied), dictate the impropriety of Ericsson's pursuing SEP-based injunctive relief. *See, e.g.*, Appellant's Br. 29–30.

Initially, Ericsson argues that Lenovo waived (or forfeited) this particular position on the "dispositive" requirement by not raising it before the district court. *See* Appellee's Br. 31–33. Ericsson says that the *only* basis Lenovo gave the court for meeting that requirement was that the instant suit would necessarily result in a global cross-license between the parties. *See id.* We disagree. In Lenovo's motion for an antisuit injunction, it argued *both* that (1) "Ericsson has placed its compliance with [its FRAND] commitments, *and thus, its ability to seek injunctive relief* based on patents subject to those commitments, squarely before th[e] court"; and (2) "[*m*]*oreover*, both parties acknowledge that the outcome of this contractual dispute will be the payment of money, thus mooting any basis for injunctive relief." J.A. 2435 (emphasis added) (cleaned up); *see* J.A. 2436 (similar). Lenovo's reply also disputed "that the only way for [it] to dispose of foreign patent infringement actions is to sign a license." J.A. 3170 (cleaned up).[10] We therefore reject Ericsson's waiver argument.

On the merits, Ericsson maintains that the district court correctly concluded that, to meet the "dispositive" requirement, the instant suit must necessarily result in a global cross-license between the parties. Ericsson's position appears to rely on two main arguments—the first implicit, the second explicit. The first is that, in order to

---

[10] Further, in both district-court briefs, Lenovo relied on the *Huawei* case, which concluded that, because "the availability of injunctive relief for each party's SEPs depends on the breach of contract claims," "the contractual umbrella over the patent claims dictates" that the "dispositive" requirement was met. *See Huawei Techs. Co. v. Samsung Elecs. Co.*, No. 3:16-cv-2787, 2018 WL 1784065, at *8 (N.D. Cal. Apr. 13, 2018) (Orrick, J.) (cleaned up) (quoted at J.A. 2436–37); *see also* J.A. 3170 (citing *Huawei*, 2018 WL 1784065, at *6–9).

meet the "dispositive" requirement, it is necessary for the domestic suit to resolve the *entire* foreign proceeding—not simply an injunction in that proceeding. *See* Appellee's Br. 28, 36–37. The second is that the domestic suit must *necessarily*—not just potentially—lead to the relevant resolution of the foreign action to be enjoined. Put another way: in Ericsson's view, this resolution cannot depend merely on the *potential* that one party's view of the facts or law prevails in the domestic suit. *See id.* at 34–35.

Ericsson's and the district court's interpretation of what it takes to meet the "dispositive" requirement rests on a misunderstanding of *Microsoft*. They both maintain that, in *Microsoft*, "*it was critical that licenses would ultimately issue*." *Id.* at 36 (emphasis added); *see District Court Opinion*, 2024 WL 645319, at *8 ("The meaningful distinction [from *Microsoft*] is that holding the parties to their obligations in the ETSI [IPR] policy will not necessarily result in a global cross-license that resolves the foreign patent actions.").

Yet we see nothing in the *Microsoft* district-court opinion that treated as "critical" the fact that the suit before it would result in a license. To be sure, the court articulated the issues that it "will have determined" at the conclusion of the suit before it, which included *both* "whether Motorola may seek injunctive relief against Microsoft with respect to its [SEPs]" *and* "in the event Microsoft is entitled to a [worldwide RAND] license, what the RAND terms are for such a license." *Microsoft*, 871 F. Supp. 2d at 1099. It then stated that, "[b]ased on the issues before it," the domestic suit met the "dispositive" requirement. *Id.* at 1099–1100. So, these passages standing alone are perhaps ambiguous as to which of the issues was central to the court's "dispositive" conclusion. Other portions of the opinion, however, make clear that it was the injunction-availability issue—not the "will result in a license" one—that mattered to that conclusion. For example, in the very next sentence, the court reiterated

that "[i]ssuance of injunctive relief with respect to the European [SEPs] is an issue squarely before this court." *Id.* at 1100. And it later confirmed that its antisuit injunction was "limited to the issue directly before it—*whether injunctive relief was permissible*"; indeed, Motorola was permitted to move forward with the rest of the German proceeding. *Id.* (emphasis added).[11] In contrast, the court gave relatively little attention to the fact that the suit before it would result in a license.

The same is true of the Ninth Circuit's affirmance in *Microsoft*. That court's discussion of the "dispositive" requirement focused on how Motorola's RAND commitment affected its ability to seek SEP-based injunctive relief. *See* 696 F.3d at 884 (seeing no legal error in "[t]he district court's conclusions that Motorola's RAND [commitment] . . . governs in some way what actions Motorola may take to enforce its [SEPs]"); *see also id.* ("Implicit in such a sweeping promise is, at least arguably, a guarantee that the patent-holder will not . . . seek[] an injunction, but will instead proffer licenses consistent with

[11] The remainder of the district court's analysis likewise focused on the injunction-availability issue. *See id.* (expressing a concern over inconsistent judgments as to that issue); *id.* at 1101 (reasoning that "an anti-suit injunction implicates comity only so far as necessary to preserve this court's ability to adjudicate the duplicative dispute over the propriety of injunctive relief" and that, "*upon adjudication of the duplicative issue*, [*it*] *will remove the anti-suit injunction* and the parties will follow [its] determination of the parties' rights and obligations" regarding Motorola's RAND commitment and SEPs (emphasis added)); *id.* at 1103 ("By issuance of an anti-suit injunction, this court is in no way stating that Motorola will not at some later date receive injunctive relief, but only that it must wait *until this court has had the opportunity to adjudicate that issue*." (emphasis added)).

the commitment made."). And it ultimately concluded, on the "dispositive" requirement, that "the district court did not abuse its discretion in determining that Microsoft's contract-based claims, *including its claim that the RAND commitment precludes injunctive relief, would, if decided in favor of Microsoft, determine the propriety of the enforcement by Motorola of the injunctive relief obtained in Germany*." *Id.* at 885 (emphasis added). We see nothing—and Ericsson identifies nothing—in the court's opinion suggesting that its affirmance depended on the domestic suit resulting in a license.

With this misunderstanding corrected, *Microsoft* leads us to reject Ericsson's arguments regarding what it takes to meet the "dispositive" requirement. As to Ericsson's argument that the domestic suit should resolve not *just* an injunction, but instead the *entire* foreign proceeding (e.g., by resulting in a license), that was not necessary in *Microsoft*. As discussed above, there was no indication in either *Microsoft* opinion that the conclusion on the "dispositive" requirement depended on the domestic suit resulting in a license. In fact, Motorola was permitted to move forward with the rest of the foreign proceeding while the antisuit injunction was in place—an incongruous result if what *really* mattered was that the domestic suit was going to settle the patent war once and for all (e.g., by resulting in a license). And, as to Ericsson's argument that the relevant foreign-action resolution cannot depend merely on the *potential* that one party's view of the facts or law prevails in the domestic suit, *Microsoft* again instructs otherwise. The Ninth Circuit was clear on this point; it concluded that "the district court did not abuse its discretion in determining that Microsoft's . . . claim that the RAND commitment precludes injunctive relief[] would, *if decided in favor of Microsoft*, determine the propriety of

the enforcement by Motorola of the injunctive relief obtained in Germany." *Id.* (emphasis added).[12]

Although the guidance we draw from *Microsoft* suffices to reject Ericsson's arguments, we note that these arguments are inconsistent with other precedent as well. For example, in *Medtronic* (cited favorably in the Ninth Circuit's *Microsoft* opinion), Medtronic sought an antisuit injunction prohibiting a company called CRC from seeking foreign injunctions on its foreign patents. *See Medtronic, Inc. v. Catalyst Rsch. Corp.*, 518 F. Supp. 946, 947–48, 953–55 (D. Minn. 1981). Medtronic's position was that a contract between it and CRC prevented CRC from enforcing its patents in that way. The district court determined that this breach-of-contract issue was "dispositive" for purposes of an antisuit-injunction inquiry: "[I]f the [contract] is found to bar CRC from seeking injunctive relief, CRC's foreign requests for injunctive relief are improper and they can be enjoined. The issue is the same and resolution of the issue would be dispositive of the foreign requests for injunctive relief." *Id.* at 955 (cleaned up). Further, the antisuit injunction that the court entered was limited to "prevent[ing] CRC from obtaining injunctive relief"; it "in no way interfere[d] with

---

[12] Ericsson also makes much of its view that, in *Microsoft* (and unlike here), the injunction-availability issue concerned whether SEP-based injunctions could *ever* be appropriate in the RAND/FRAND context. *See* Appellee's Br. 37, 41–42. Even assuming Ericsson is right about that, it would be a distinction without a difference for purposes of rejecting Ericsson's arguments about what it takes to meet the "dispositive" requirement. The relevant similarity between *Microsoft* and this case would remain: an issue in the domestic suit that, if resolved in the antisuit-injunction movant's favor, would dictate the impropriety of a party pursuing SEP-based injunctive relief.

the patent infringement and validity actions in the foreign courts, nor . . . with any damages awards." *Id.* at 955–56.

More recently, the district court in *Huawei* entered an antisuit injunction prohibiting enforcement of foreign injunctions on foreign SEPs. There, the parties (Samsung and Huawei) had both made FRAND commitments under ETSI's IPR policy. *See Huawei*, 2018 WL 1784065, at *1. Samsung sought an antisuit injunction prohibiting Huawei from enforcing foreign injunctions that Huawei had obtained on its foreign SEPs. The court determined that the "dispositive" requirement was met because both parties had presented it with a breach-of-contract claim "based on the other's alleged failure to abide by its commitments to ETSI," and "the availability of injunctive relief for each party's SEPs depend[ed] on" the breach-of-contract claims. *Id.* at *8. Further, the court's antisuit injunction was limited; it prohibited Huawei only from enforcing the foreign injunctions (Huawei could still pursue damages), and it was entered to give the court "an opportunity to evaluate the propriety of injunctive relief for the parties' SEPs." *See id.* at *12; *see also id.* at *10.

Accordingly, the district court legally erred when it reasoned that, to be dispositive, the domestic suit must necessarily result in a global cross-license. We conclude that the "dispositive" requirement can be met even though a foreign antisuit injunction would resolve only a foreign injunction (and not the *entire* foreign proceeding), and even though the relevant resolution depends on the *potential* that one party's view of the facts or law prevails in the domestic suit.

C

We now consider whether the "dispositive" requirement is met in this case. We conclude that it is.

Again, Lenovo maintains that Ericsson's FRAND commitment precludes Ericsson from pursuing SEP-based injunctive relief unless it has *first* complied with the

commitment's obligation to negotiate in good faith over a license to those SEPs. If Lenovo is correct on this contract-interpretation issue, then the suit before the district court would meet the "dispositive" requirement, since whether Ericsson *has* complied with its good-faith-negotiating obligation is an issue before the district court. For the reasons below, we conclude that Lenovo is correct on this contract-interpretation issue.

Although the district court did not reach this contract-interpretation issue, "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 104–05 (4th Cir. 2020) (quoting *Singleton v. Wulff*, 428 U.S. 106, 121 (1976)). Considerations guiding that discretion include: "(1) whether both parties had ample opportunity to develop facts pertaining to the issue; (2) whether the issue is primarily a question of law; (3) whether the issue was briefed and argued on appeal; (4) whether the proper outcome is beyond doubt, rendering a remand pointless; and (5) whether a discretionary remand to the district court for consideration of the . . . issue in the first instance would produce injustice for a party." *Id.* at 105 (cleaned up); *see also Veterans4You LLC v. United States*, 985 F.3d 850, 857–58 (Fed. Cir. 2021) (similar). And, although this appeal is interlocutory, "[j]urisdiction of the interlocutory appeal is in large measure jurisdiction to deal with all aspects of the case that have been sufficiently illuminated to enable decision by the court of appeals without further trial court development." 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3921.1, p. 25 & n.6 (3d ed. 2012); *see also Doe v. Sundquist*, 106 F.3d 702, 707 (6th Cir. 1997) (acknowledging the typical abuse-of-discretion review of decisions on preliminary injunctions, but noting that "[t]he sort of judicial restraint that is normally warranted on interlocutory appeals does not prevent us from reaching clearly defined issues in the interest of judicial economy").

In view of these considerations, we deem this contract-interpretation issue appropriate for our resolution in this appeal. The parties have joined issue on this subject in their briefing before us, and neither party has suggested that, instead of resolving this issue in this appeal, we must leave it to the district court in the first instance. Nor has either party persuasively argued that any outstanding factual issue would affect the proper interpretation. Further, as we explain below, we have little doubt that the interpretation we adopt is proper, and we believe judicial economy is best served by resolving the issue now.[13]

On this issue, we conclude that a party that has made an ETSI FRAND commitment must have complied with the commitment's obligation to negotiate in good faith over a license to its SEPs before it pursues injunctive relief based on those SEPs. Given the SEP-related concerns underlying the FRAND commitment, if the FRAND commitment means anything of substance, it must mean that an SEP holder that has made such a commitment cannot just spring injunctive actions against other standard implementers without having first complied with *some* standard of conduct. That standard of conduct, we conclude, must be—at a minimum—the very one imposed by the FRAND commitment's good-faith-negotiating obligation.

Other courts that have spoken on this issue—whether on FRAND (or RAND) commitments generally or the ETSI FRAND commitment specifically—have viewed the issue similarly. *See, e.g.*, *Unwired Planet Int'l Ltd. v. Huawei Techs. Co.* [2020] UKSC 37, [72] (U.K. Supreme Court observing that "the operation of the ETSI regime requires

---

[13] Although the FRAND commitment is governed by French law, neither party has identified any specific aspect of French law that would compel an interpretation different from the straightforward one we adopt.

the SEP owner to offer a FRAND licen[s]e . . . as [a] precondition[] of the grant of an injunction"); *id.* at [61]; *Huawei*, 2018 WL 1784065, at *8 (discussing the ETSI FRAND commitment and noting that "the availability of injunctive relief for each party's SEPs depends on the breach of contract claims"); *Realtek Semiconductor Corp. v. LSI Corp.*, 946 F. Supp. 2d 998, 1008 (N.D. Cal. 2013) (holding that the SEP holders "breached their contractual obligations . . . by seeking injunctive relief against [the implementer] before offering [it] a license");[14] *see also* Adam Mossoff, *Patent Injunctions and the FRAND Commitment: A Case Study in the ETSI Intellectual Property Rights Policy*, 38 Berkeley Tech. L.J. 487, 508 (2023) (noting that the Court of Justice of the European Union has "affirmed the right of SEP owners to request and receive injunctive remedies for infringement of their patents when the SEP owner is negotiating a FRAND-compliant license in 'good faith'"); *id.* at 512 (observing that courts "have issued injunctions for ongoing infringement of SEPs when . . . the SEP owner has offered a license on FRAND terms or is negotiating in good faith to a FRAND-compliant license").[15]

---

[14] Although the *Realtek* court's breach-of-contract holding was "limited to the situation" before it—i.e., where the SEP holders "did not even attempt to offer a license, on [RAND] terms or otherwise, until after seeking injunctive relief," *id.*, we see no principled reason why the result should be different if the SEP holder, before pursuing SEP-based injunctive relief, had made an offer but had otherwise not complied with its good-faith-negotiating obligation (e.g., had made only an offer with outlandish terms).

[15] Our conclusion—i.e., that an ETSI FRAND-committed party must have complied with the commitment's obligation to negotiate in good faith over a

Ericsson disputes this interpretation of the FRAND commitment, but it fails to demonstrate any authority that has explicitly endorsed a contrary interpretation. And its arguments against this interpretation are unpersuasive. For example, Ericsson argues that ETSI has rejected a rule that would categorically bar SEP-based injunctions. *See* Appellee's Br. 38 (citing Mossoff, *supra*, at 503). But the interpretation we adopt does not categorically bar such injunctions[16]—it just conditions their pursuit on, at a minimum, the SEP holder having *first* complied with the good-faith-negotiating obligation imposed by the FRAND commitment itself.[17] Ericsson also observes that other ETSI materials provide that "the national courts of law have the sole authority to resolve [IPR] disputes." Appellee's Br. 38 (emphasis omitted) (quoting ETSI, *Guide on IPRs* § 4.3[18]). In context, however, this statement

---

license to its SEPs before pursuing injunctive relief based on those SEPs—rests on how we interpret the FRAND commitment. We note additionally, however, that such a conclusion fits well within the general common-law principle, recognized in at least this country, that "one seeking equitable relief [e.g., an injunction] must do equity and come into court with clean hands." *See, e.g.*, *Primerica Life Ins. Co. v. Woodall*, 975 F.3d 697, 699 (8th Cir. 2020); *see also* 11A Wright & Miller § 2946, p. 106 ("A principle closely related to the clean-hands maxim is that before plaintiff will be permitted to invoke the aid of a court of equity, plaintiff must do equity.").

[16] In the FRAND context, we have previously declined to adopt a rule that would categorically bar SEP-based injunctions. *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1331–32 (Fed. Cir. 2014).

[17] We express no opinion in this appeal as to whether or what other conditions might exist.

[18] https://www.etsi.org/images/files/IPR/etsi-guide-on-ipr.pdf.

simply disclaims any ultimate responsibility of ETSI to resolve IPR disputes. And it otherwise is unilluminating as to what the *contract* Ericsson agreed to (i.e., its FRAND commitment) requires.

Ericsson's main pushback is that the Colombian and Brazilian tribunals should be deciding this contract-interpretation issue, as opposed to the district court or this court. *See* Appellee's Br. 38 (maintaining that this issue "should be presented to the Brazilian and Colombian [tribunals], not dictated to them by U.S. courts"); *id.* at 39–40, 42–45. Initially, we note that, to the extent this argument is intended to show that an antisuit injunction here is inappropriate under any circumstances, it would seem to prove quite a bit. As the Ninth Circuit explained in *Microsoft* when addressing a similar concern,

> the mere fact that different jurisdictions answer the same legal question differently does not, without more, generate an intolerable comity problem. If that were the case, then there could virtually never be a foreign anti-suit injunction: Parallel proceedings in different jurisdictions would have to be permitted to proceed any time the two jurisdictions had different rules of law, which is almost always the case.

696 F.3d at 888. In any event, we think this argument is better considered as part of the second or third parts of the foreign-antisuit-injunction framework, which the district court has yet to reach. The argument simply has less to do with the "dispositive" requirement. The FRAND commitment *itself* is the same as between the instant suit and the Colombian and Brazilian proceedings, and just because tribunals in those countries might differ on their resolution of the same issues—e.g., whether that commitment precludes pursuing injunctive relief without the good-faith-negotiating obligation having first been complied with—does not mean that the issues are not the

same for purposes of the threshold requirement in the foreign-antisuit-injunction framework.

Ericsson finally argues, in a similar vein, that the "dispositive" requirement is not met because the Colombian and Brazilian injunctions "arise from independent foreign patent rights issued by foreign sovereigns and enforced only within their borders." Appellee's Br. 35 (cleaned up). The issue here, however, is not just one of patent rights; it is one of *contract*. Ericsson entered into a contract that affects how it may enforce certain of its patents. "When that contract is enforced by a U.S. court, the U.S. court is not enforcing [foreign] patent law but, rather, the private law of the contract between the parties." *Microsoft*, 696 F.3d at 884; *see also id.* at 883 (discussing *Medtronic*, 518 F. Supp. at 955).

* * *

In sum, we conclude that the "dispositive" requirement of the foreign-antisuit-injunction framework is met here. That is because (1) the ETSI FRAND commitment precludes Ericsson from pursuing SEP-based injunctive relief unless it has *first* complied with the commitment's obligation to negotiate in good faith over a license to those SEPs; and (2) whether Ericsson has complied with that obligation is an issue before the district court. Accordingly, if the court determines that Ericsson has not complied with that obligation, that determination will dictate the impropriety of Ericsson's pursuing its SEP-based injunctive relief.[19]

---

[19] Lenovo also has a different theory for how the "dispositive" requirement is met. It maintains that its counterclaim asking the district court to set the FRAND terms for a global cross-license between the parties demonstrates that the instant suit will result in such a

None of this is to say that Lenovo will ultimately demonstrate itself entitled to its requested antisuit injunction.[20] Although both parties ask us to definitively resolve that question—Lenovo saying we should outright direct entry of the antisuit injunction; Ericsson saying we should conduct the rest of the analysis ourselves and affirm the district court's denial—we decline both requests. Such entitlement (or not) is dedicated to the district court's discretion in the first instance and will, if the requested antisuit injunction is to be entered, require analysis of the remaining parts of the foreign-antisuit-injunction framework—an analysis that has yet to be undertaken. Here, however, in denying Lenovo's request, the district court stopped its analysis at the first, threshold part based solely on what we conclude was legal error. We must therefore vacate that denial and remand.

## CONCLUSION

For the foregoing reasons, we vacate the district court's denial of Lenovo's antisuit-injunction request and remand for further proceedings.

---

license, thus meeting the "dispositive" requirement. *See* Appellant's Br. 33–38; Appellant's Reply Br. 12–13. Ericsson, however, offers several arguments as to why Lenovo's theory fails. *See* Appellee's Br. 45–47. Although the district court acknowledged Lenovo's counterclaim, *see District Court Opinion*, 2024 WL 645319, at *8, its reasoning for deeming that counterclaim insufficient to meet the "dispositive" requirement is not entirely clear to us. Nothing in this opinion should be read to foreclose the court from further considering that theory in the event it becomes relevant.

[20] Further, our opinion and disposition here in no way suggest a view as to whether, on the facts, Ericsson has or has not complied with its good-faith-negotiating obligation.

**VACATED AND REMANDED**

COSTS

No costs.